Law Offices of Robert K. Wright
Robert K. Wright (SBN 73235)
rkwlaw@earthlink.net
301 North Lake Avenue, Suite 700
Pasadena, CA. 91101
Telephone: (626) 796-2664
Fax: (626) 796-1601

NELSON & McCULLOCH LLP
Kevin McCulloch (*pro hac vice*)
kmcculloch@nelsonmcculloch.com
155 East 56th Street
New York, New York 10022
Telephone: (212) 355-6050
Fax: (646) 308-1178

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICKSON PRODUCTIONS, INC. and JIM ERICKSON,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>  KRAIG R. KAST,<br><br>    *Defendant*. | Case No. 5:13-CV-05472-HRL<br><br>ECF Case<br>Electronically Filed<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Time: 10:00 a.m.<br>Date:  October 14, 2014<br>Judge:  Hon. Howard R. Lloyd<br>Courtroom: 2 (5th Floor)<br><br>Complaint Filed:  March 12, 2012<br>Case Transferred: December 3, 2012 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

**PLEASE TAKE NOTICE** that upon this Notice of Motion for Partial Summary Judgment, the accompanying Memorandum of Law and supporting Declaration of Kevin P. McCulloch, and upon all pleadings and proceedings herein, Plaintiffs Jim Erickson and Erickson Productions, Inc., by and through their undersigned attorneys, will and do hereby move this Court, before the Honorable Howard R. Lloyd, at the United States District Courthouse for the Northern District of California in San Jose, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 2, on Tuesday October 14, 2014 at 10:00 a.m. for an order granting partial summary judgment against Defendant Kraig Kast ("Defendant" or "Kast") in this action for pleading and maintaining frivolous and baseless defenses that Defendant and his counsel know have no factual basis or evidentiary support and have been asserted for improper purposes, including to cause unnecessary delay and needlessly increase the cost of this litigation.

For the reasons stated herein, Plaintiffs request that the Court enter an order pursuant to Federal Rule of Civil Procedure 56 granting Plaintiffs partial summary judgment on Plaintiffs' claims of direct, contributory, and vicarious copyright infringement (Docket No. 1, Counts I and II) against Defendant Kast and denying with prejudice Kast's renewed "Fair Use" defense.

Dated: September 2, 2014

Respectfully submitted,

  s/ Kevin McCulloch
NELSON & McCULLOCH LLP
Kevin P. McCulloch (*pro hac vice*)
155 East 56th Street
New York, New York 10022
Tel: (212) 355-6050
kmcculloch@nelsonmcculloch.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................1

TABLE OF AUTHORITIES ..................................................................................2

INTRODUCTION ...................................................................................................1

PROCEDURAL BACKGROUND OF THE NEW YORK
    ACTION ......................................................................................................2

PROCEDURAL BACKGROUND OF THE
    CALIFORNIA ACTION .............................................................................5

SUMMARY OF ARGUMENT ...............................................................................6

ARGUMENT ...........................................................................................................7

I.     APPLICABLE LEGAL STANDARD. .......................................................... 7

II.    PLAINTIFFS ARE ENTITLED TO SUMMARY
     JUDGMENT ON THEIR COPYRIGHT INFRINGEMENT
     CLAIMS AGAINST DEFENDANT KAST. .................................................. 8

    A.    Elements of Plaintiffs' Copyright Claims. ................................................... 8

    B.    The Record Establishes Plaintiffs Own Registered Copyrights
        In The Photos And That The Photos Were Copied And
        Published Without Permission On The Atherton Trust Website. ................. 9

    C.    Kast Is Liable For Direct, Contributory, And Vicarious
        Copyright Infringement. ............................................................................ 10

        1.    Kast Was Responsible For All Content on the Atherton Website. ....................... 10

        2.    Kast Copied the Erickson Photos from the Wells Fargo Website. ....................... 11

        3.    Kast Was Responsible for the Decision to Publish the Website........................... 12

III.   DEFENDANT'S ALLEGED "FAIR USE" DEFENSE IS
     FRIVOLOUS. .............................................................................................. 14

    A.    Purpose and Character of Use. ................................................................... 15

    B.    Nature of the Copyrighted Work. .............................................................. 17

    C.    The Portion Used. ....................................................................................... 17

    D.    Effect on Potential Market For or Value of the Copyrighted
        Work. .......................................................................................................... 17

CONCLUSION......................................................................................................20

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th
Cir. 2001) .................................................................................................... 11, 18

4

*Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913 (2d
Cir. 1994) .................................................................................................... 22

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................ 11

6

*Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666
(S.D.N.Y. 2011) .......................................................................................... 21

7

8

*Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569 (1994) ........................ 18

9

*Celotex v. Catrett*, 477 U.S. 317 (1986) ..................................................... 10

10

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ................................. 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340
(1991) ......................................................................................................... 11

11

12

*Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932) .......................................... 21

13

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471
U.S. 539 (1985) .......................................................................................... 19, 22

14

15

*Hustler Magazine v. Moral Majority Inc.*, 796 F.2d 1148
(9th Cir. 1986) ............................................................................................ 20

16

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591
F. Supp. 2d 1098 (N.D. Cal. 2008) ............................................................ 10, 11

17

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511
(9th Cir. 1993) ............................................................................................ 22

18

19

*Marcus v. Rowley*, 695 F.2d 1171 (9th Cir. 1983) ..................................... 19

20

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574
(1986) ......................................................................................................... 10

21

*Monge v. Maya Magazine, Inc.*, 688 F.3d 1164 (9th Cir.
2012) ........................................................................................................... 17

22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th
Cir. 2007) .................................................................................................... 12

23

24

*Playboy Enters., Inc. v. Webbworld*, 991 F. Supp. 543
(N.D. Tex. 1997) ......................................................................................... 22

25

*Sega Enters. Ltd. v. MAPHIA*, 857 F. Supp. 679 (N.D. Cal.
1994) ........................................................................................................... 22

26

*Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959 (9th Cir.
1990) ........................................................................................................... 10

27

28

*Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417
    (1984) ................................................................................................ 11, 21, 22

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ............................................. 10

*Worldwide Church of God v. Philadelphia Church of God,*
    *Inc.*, 227 F.3d 1110 (9th Cir. 2000) ................................................. 20, 21

**Statutes**

17 U.S.C. § 106 .................................................................................... 11, 22

17 U.S.C. § 107 .................................................................................... 17, 18

17 U.S.C. § 107(4) ...................................................................................... 21

17 U.S.C. § 410(c) ...................................................................................... 12

17 U.S.C. § 501 .......................................................................................... 11

17 U.S.C. § 504(c)(2) .................................................................................... 9

**Other Authorities**

3 Nimmer on Copyright § 8.08 [A][5] [a], 8–131-32
    (2008) ....................................................................................................... 22

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................... 10

Fed. R. Civ. P.11(b) ...................................................................................... 9

Plaintiffs Erickson Productions, Inc. ("Erickson Productions") and Jim Erickson ("Erickson") (collectively "Plaintiffs"), by and through undersigned counsel, hereby submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 56(a) for partial summary judgment against Defendant Kraig Kast ("Kast").

Specifically, Plaintiffs seek summary judgment on their claims of direct, contributory, and vicarious copyright infringement (Docket No. 1 ("Compl."), Counts I and II) against Defendant Kast and denying with prejudice Kast's renewed "Fair Use" defense.

## INTRODUCTION

Plaintiffs' complaint alleges that Defendant Kast copied three (3) of Plaintiffs' photographs (referred to herein as the "Photos") without permission and then published them (or allowed/caused them to be published) on a website for an entity called Atherton Trust. (Compl. ¶¶ 18, 29-33 & Exs 1-3.) The infringing website was designed by a company called Only Websites, Inc. ("Only Websites") that Defendant Kast personally hired and worked with during website development. *Id.* ¶ 30.

There is no dispute that the Atherton Trust website included unauthorized copies of Plaintiffs' Photos that were copied from the website of Wells Fargo Wealth Management Marketing ("Wells Fargo"), a legitimate Erickson customer. (*See* Compl. Exs. 1-3; Hughes Decl. ¶¶ 15-16.) In fact, three entire pages of the Atherton Trust website were copied nearly verbatim from the Wells Fargo website, including the three subject Photos owned by Plaintiffs.

On July 12, 2011, after discovering that the Atherton Trust website featured unlicensed copies of Plaintiffs' Photos, counsel for Plaintiffs contacted Defendant Kast to demand that he immediately cease and desist the unauthorized use of Plaintiffs' copyrighted images and remove them from the Atherton Trust website. *See* McCulloch Decl. Ex. A. In response, Defendant Kast disclaimed any knowledge that Only Websites had copied the photos from the Wells Fargo site, instead claiming that he had instructed Only Websites to purchase images "from authorized

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

image services[.]"  *See* McCulloch Decl. Ex. B at 3.  When challenged on this point by evidence that directly contradicted his version of events, Kast made clear that he intended to attempt to avoid liability by improperly hiding behind the corporate structure of Atherton Trust:  "You are invited to waste your time and money, even if you get a charging order [to file suit] you will not collect anything because of the way this company is structured."  *Id.* at 1.  Kast then cut off all further communications and refused to cooperate with Plaintiffs in any respect.  Kast's refusal to cooperate left Plaintiffs with no choice other than to file suit in Federal Court.

## PROCEDURAL BACKGROUND OF THE NEW YORK ACTION

Given that the infringing website explicitly indicated that Atherton Trust operated in New York, maintained agents or employees in New York, and had clients in New York (*see* Compl. Exs. 1-3; McCulloch Decl. Ex. C), Plaintiffs chose to file their lawsuit in the Southern District of New York.  Plaintiffs asserted claims against Atherton Trust, Kast, and Only Websites.

After Plaintiffs served the summons and complaint on Kast, he responded by claiming that he intended to try to avoid liability by "simply shut[ting] down this company [so] you and Erickson will get nothing."  McCulloch Decl. Ex. D.  Kast also made it very clear that he intended to intentionally drive up the costs of litigation in order to try to force Plaintiffs to abandon their righteous claims, stating:  "My guess is it will cost Jim Erickson a minimum of $500,000 [to litigate, so] even if he wins, it will be for no monetary gain."  *Id.*  Kast also threatened to take steps to damage Plaintiffs' business, including by organizing "a boycott of Erickson video and photo products."  *Id.*

True to his word, <u>Defendant Kast has attempted at every turn to needlessly multiply these proceedings in order to drive up the costs of litigation</u>.

Proceeding *pro se* in the New York action, Kast filed multiple motions to dismiss seeking, among other things, to (i) dismiss the case for failure to state a claim; (ii) dismiss the case for lack of personal jurisdiction; (iii) transfer the case to the Central District of California;

(iv) dismiss the case on the grounds of "malicious prosecution"; and (iv) dismiss the case on the grounds that Kast was immune from liability due to the corporate structure of Atherton Trust and his supposed position as the managing trustee.  Kast also requested that the case be dismissed with prejudice because, according to Kast, Defendant Atherton Trust "ceased doing business" and was "dissolved" on April 5, 2012, nearly a full year after Atherton Trust received notice of Plaintiffs' claims against it.  Kast also asked the New York court to issue a "permanent injunction against Plaintiff and Plaintiff's attorneys to prohibit distribution, by any means, their allegations related to this frivolous and damaging complaint."

Despite the frivolous nature of most of these arguments, Plaintiffs were required to submit extensive briefing in response to Kast's repetitious submissions.  *See* McCulloch Decl. Ex. E (S.D.N.Y. Docket Sheet) at Nos. 5; 15; 16; 19; 20.  In these filings, Plaintiffs repeatedly advised Kast that Atherton Trust was a corporate entity and thus was not permitted to appear in the action *pro se* and thus, unless Kast fulfilled his duties as managing trustee and retained counsel for Atherton, Plaintiffs intended to move for entry of default against Atherton Trust.

On September 24, 2012, after Kast ignored Plaintiffs' repeated notices, Plaintiffs obtained a certificate of default from the Clerk of the Southern District of New York against both Atherton Trust and Only Websites and then filed for entry of a default judgment against those defendants.  (S.D.N.Y. Dkt. No. 8.)  On October 19, 2012, Judge Gardephe entered an Order to Show Cause against these defendants compelling them to show cause as to why default judgment should not be entered.  (S.D.N.Y. Dkt. No. 12.)  Despite receiving notice of this order, Kast chose to ignore the issue and did not retain counsel for Atherton Trust and thus Atherton Trust failed to make an appearance at the hearing.

At the hearing on Plaintiffs' motion for default judgment, Judge Gardephe ruled that Defendants Atherton Trust and Only Websites were in default and entered an order to that effect

on November 28, 2012.  (S.D.N.Y. Dkt. No. 18.)  In addition, although he agreed that most of Kast's arguments were frivolous, Judge Gardephe requested additional briefing on the personal jurisdiction question regarding Kast's personal ties to New York.  (S.D.N.Y. Dkt. No. 17.)  After an additional round of briefing, Judge Gardephe ultimately determined that, even though Atherton Trust's website indicated that the company operated in and had ties with New York, there was insufficient basis for asserting personal jurisdiction over Kast individually and thus dismissed the claims against him.  (S.D.N.Y. Dkt. No. 31.)

During the hearing on the Order to Show Cause, Judge Gradephe also requested additional briefing on the issue of damages related to the defaulting Defendants.  (S.D.N.Y. Dkt. No. 18.)  Plaintiffs submitted their additional briefing on December 3, 2012.  (S.D.N.Y. Dkt. Nos. 20 & 21.)  Again, Atherton Trust did not file any response.

On October 22, 2013, almost a year after entry of default judgment, Judge Gardephe referred the damages issue to Magistrate Judge Fox who requested another round of briefing. (S.D.N.Y. Dkt. No. 35.)  Plaintiffs filed the requested damages memorandum and supporting evidence on November 12, 2013.  (S.D.N.Y. Dkt. Nos. 36-39.)

On December 3, 2013, after more than 18 months had passed without Atherton Trust making any appearance in the S.D.N.Y. litigation and despite the fact that Kast provided numerous sworn statements contending that Atherton Trust had been permanently dissolved, Atherton Trust (miraculously) entered an appearance through counsel and now has filed a motion to set aside the order of default judgment.  (S.D.N.Y. Dkt. No. 42.)

Despite the fact that Kast was well aware of the Order to Show Cause issued more than a year before, he failed to secure counsel for Atherton Trust to prevent default.  Instead, he purposefully "dissolved" Atherton Trust in a transparent attempt to try to insulate assets and avoid liability.  Then, well over a year later, Kast apparently "rescind[ed] the cancellation" of

Atherton Trust, according to records produced by Kast in discovery, due "to incorrect information provided from an attorney that the Trust should be cancelled."  *See* McCulloch Decl. Ex. F (K338).  In other words, Kast allowed Atherton Trust to default by failing to retain counsel despite the fact that the corporate records indicate that the Trust already had retained counsel regarding the matter.  On this record, it is clear that Kast intentionally dissolved Atherton Trust in the hopes of avoiding liability and then only "rescinded" the dissolution of the Trust many months later in order to challenge the default order and force Plaintiffs to file yet another round of briefing in the Southern District of New York on an issue that was fully briefed nearly two years ago now.

This and other filings reveal that Kast has engaged in tactics intended to cause significant delays and needlessly drive up the costs of this litigation.  Kast's tactics have wasted the time and resources of both Plaintiffs and two District Courts.

### PROCEDURAL BACKGROUND OF THE CALIFORNIA ACTION

Based on Kast's submissions in the New York litigation, Plaintiffs refiled their claims against Kast in the Central District of California.  Shortly thereafter, Kast's new counsel advised Plaintiffs that, contrary to his filings in New York, Kast actually resides in the Northern District of California and thus he intended to seek to transfer the case to this District.  Rather than waste more time and resources, Plaintiffs stipulated to transferring the case to this District.

After the case was transferred to this District, Kast filed an Answer that included no additional factual allegations and yet asserted 17 "Affirmative Defenses."  (Dkt. No. 18.)  On December 19, 2013, Plaintiffs' counsel sent a letter advising opposing counsel that Kast's alleged defenses failed to meet basic pleading requirements and, thus, requesting that Kast amend his answer in order to avoid the need to file a motion to strike.  *See* McCulloch Decl. Ex. G.  Defendant's counsel agreed to file amended pleadings and did so on January 14, 2014. (Dkt. No. 22 ("Amended Answer").)

Once again, however, Kast's Amended Answer included numerous "Affirmative Defenses" that failed to meet the requisite pleading standards and had no possible basis in the law or facts and thus fell short of the duties imposed under Federal Rule of Civil Procedure 11(b).  Plaintiffs thus were forced to move to strike Kast's defenses under Rule 12(f).

After reviewing the briefing and hearing argument on the matter, the District Court granted Plaintiffs' motion in part, striking all but one of Kast's defenses.  (*See* Dkt. No. 45.)  The District Court specifically struck Kast's "fair use" defense because "Kast's allegations, even if deemed true, do not support a plausible fair use defense."  (*Id.* at 7.)  As the Court noted, Kast did not dispute that "the subject photos were used for Atherton Trust's commercial website that was visible to the public during its development" and thus could not claim refuge in the fair use safe harbor.  (*Id.*)  Nevertheless, the Court granted Kast leave to amend this defense.

On May 7, 2014, Kast filed yet another "First [sic] Amended Answer" that once again alleged that Kast's unauthorized copying and use of Plaintiffs' photos, even if unauthorized, was not infringing because it is protected under the "fair use" doctrine.  (Dkt. No. 48 at 7, ¶¶ 11-13.)  The additional factual allegations offered in support of this renewed defense do not provide any possible basis to apply the fair use doctrine in this case.  In addition, Kast's allegations have been discredited in discovery.

## SUMMARY OF ARGUMENT

The record conclusively establishes that Kast is liable for both direct and secondary (vicarious and contributory) copyright infringement.  Because Erickson's copyrights in the photos at issue were registered with the Copyright Office prior to the commencement of the infringements, Plaintiffs are entitled to recover an award of statutory damages under Section 504 of the Copyright Act for each infringement.  *See* 17 U.S.C. § 504(c)(2).

Despite the undeniable facts, Kast's latest Amended Answer once again claims that the "fair use" defense should apply here.  For the reasons set forth herein, this defense is entirely

1    baseless and has been asserted merely to multiply these proceedings.  Defendant and his counsel

2    lack a good faith basis for pleading and continuing to maintain this defense.

3        For the reasons stated herein, Plaintiffs request that, pursuant to Rule 56, the Court grant

4    partial summary judgment against Defendant Kast on Count I and II of Plaintiffs' complaint and

5    deny with prejudice Kast's "fair use" defense.

6                                    **ARGUMENT**

7    **I.    APPLICABLE LEGAL STANDARD.**

8        Summary judgment is appropriate if "there is no genuine dispute as to any material fact

9    and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion

10   for summary judgment, the moving party "bears the initial responsibility for informing the

11   district court that there is an absence of evidence to support the nonmoving party's case."

12   *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving party must then "present some

13   evidence establishing each element of [his] claims on which [he] would bear the burden of proof

14   at trial."  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (quotations

15   omitted). A party opposing summary judgment must come forward with specific evidence to

16   show a disputed issue of fact, "conclusory allegations unsupported by factual data as are

17   insufficient to defeat a summary judgment motion."  *Louis Vuitton Malletier, S.A. v. Akanoc

18   Solutions, Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008) (citing *Taylor v. List*, 880 F.2d

19   1040, 1045 (9th Cir. 1989)).

20       The Court's role is to determine "whether the non-moving party's specific facts, coupled

21   with disputed background or contextual facts, are such that a reasonable jury might return a

22   verdict for the non-moving party."  *Id.* (quotation omitted).  Conversely, "where a rational trier

23   of fact could not find for the non-moving party based on the record as a whole, there is no

24   'genuine issue for trial.'"  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574,

25   587 (1986)).  If the evidence offered by Defendant "is merely colorable, or is not significantly

1  probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

2  249-50 (1986).

3  **II.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COPYRIGHT INFRINGEMENT CLAIMS AGAINST DEFENDANT KAST.**

4

5       **A.   Elements of Plaintiffs' Copyright Claims.**

6          The Copyright Act provides copyright owners certain "exclusive rights," including:

7  "(1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon

8  the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by

9  sale [.]"  17 U.S.C. § 106.  "'Anyone who violates any of the exclusive rights of the copyright

10  owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use

11  of the copyrighted work in one of the five ways set forth in the statute, 'is an infringer of the

12  copyright.'"  *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984) (quoting 17

13  U.S.C. § 501).

14          To prevail on their direct copyright infringement claim (Count I), Plaintiffs must

15

16  establish (1) ownership of a valid copyright and (2) that Defendant violated any of their

17  exclusive rights in the copyrighted Photos.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499

18  U.S. 340, 345 (1991); *Louis Vuitton*, 591 F. Supp. 2d at 1104.

19          Contributory infringement "requires (1) knowledge of another's infringement and (2)

20

21  either (a) material contribution to the infringement or (b) inducement of the infringement."

22  *Louis Vuitton*, 591 F. Supp. 2d at 1106.  A defendant is liable for contributory infringement "if

23  the defendant engages in personal conduct that encourages or assists the infringement" activity.

24  *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001).

25          "Vicarious copyright infringement requires (1) the right and ability to supervise the

26

27  infringing conduct and (2) a direct financial interest in the infringing activity."  *Louis Vuitton*,

28  591 F. Supp. 2d at 1110 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)).

"Whereas contributory infringement is based on tort law principles of enterprise liability and imputed intent, vicarious infringement's roots lie in the agency principles of respondeat superior." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

**B.    The Record Establishes Plaintiffs Own Registered Copyrights In The Photos And That The Photos Were Copied And Published Without Permission On The Atherton Trust Website.**

There is no dispute that Jim Erickson created and owns all copyrights in the Photos and has registered his copyrights in the Photos with the U.S. Copyright Office. *See* Hughes Decl. ¶¶ 5-14, Exs. A-C. Under the Copyright Act, these certificates of registration provide *prima facie* evidence of a validly registered copyright. *See* 17 U.S.C. § 410(c). Kast's Amended Answer does not allege any basis for challenging Erickson's ownership of the Photos or the validity of the registrations, and the record does not support any potential challenge by Kast.

There also is no serious dispute that the three subject Photos were used on the Atherton Trust website. *See* Compl. ¶¶ 35-50; Exs. 1-3. Each of these three photos appeared on the Atherton Trust website that was viewable by the public. Indeed, that is how Plaintiffs discovered the unauthorized use at issue here. The fact that Erickson's Photos were copied and used on the Atherton Trust website also is reflected in the screen captures attached to Plaintiffs' July 2011 takedown letter to Defendant Kast (*see* McCulloch Decl. Ex. A), which also were attached as Exhibits 1-3 to Plaintiffs' Complaint.

Because copying and publication of Plaintiffs' Photos is established in the record, the burden falls to Defendant to offer proof of a "license" to use the subject Photos. Defendant, however, failed to offer any possible basis for finding a license or permission was ever granted to Defendant. Erickson Productions also confirmed that no license was ever granted to Kast (or anyone else for that matter) to use the Photos on the Atherton Trust website. Hughes Decl. ¶ 17.

Defendant was unable to proffer any possible evidence of a license or permission because, as the record proves, he copied the photos without permission from the website of

Erickson Production's legitimate client, Wells Fargo.  Indeed, a simple comparison of the screen captures from the Atherton Trust and the Wells Fargo website makes clear that Kast not only copied Erickson's three Photos but also substantial additional content from the Wells Fargo website.  *See* Hughes Decl. ¶¶ 15-16.

The record establishes that Plaintiffs own registered copyrights in the three subject Photos and that these copyrighted works were copied and published without permission on the Atherton Trust website.  This is all that is necessary to establish infringement of Plaintiffs' copyrights.

### C.   Kast Is Liable For Direct, Contributory, And Vicarious Copyright Infringement.

Kast's Amended Answer does actually not dispute that the copying and use of Erickson's Photos on the Atherton Trust website occurred or that such uses occurred without permission. Instead, Kast contends that he is not liable for direct infringement because he was not responsible for the copying of the Photos and, in a desperate attempt to avoid liability, also alleges that any unauthorized copying should be deemed a "fair use" merely because the Atherton Trust website was not operational or were not yet published to a "live" website.  Both of these arguments are baseless and contradicted by all evidence in the record.

### 1.   Kast Was Responsible For All Content on the Atherton Website.

First, e-mail correspondence produced by Kast in discovery establishes that Kast was personally responsible for the content of the Atherton Trust website and personally copied the Erickson Photos from the Wells Fargo website and sent them to his website developer.  For instance, Kast stated in one of his initial e-mails to Only Websites in December 2010 that he was requesting a website that was "similar" to the Wells Fargo website.  *See* McCulloch Decl. Ex. H (K09-K011) at 3.  Subsequent e-mails from that same time confirm that, as requested by Kast, Only Websites designed the Atherton Trust based on the Wells Fargo site and then Kast made

changes to the Wells Fargo design.  *See* McCulloch Decl. Ex. I (K045).

The e-mail exchanges between Kast and Only Websites also repeatedly reflect that Kast was personally responsible for the "content" of the Atherton Trust website.  *See* McCulloch Decl. Ex. J (K049-K050) at 1.  In fact, Kast's agreement with Only Websites states that the "**Client agrees to provide content and other material**" for the website design and provides that "**Client is responsible for obtaining copyright releases and licenses on all photographs it sends to Provider**."  McCulloch Decl. Ex. K (K033-K036) at 1, 2.  A representative of Only Websites also advised Kast that "[t]he contract clearly states that all photos on the website are the responsibility of the owner of the website."  *See* McCulloch Decl. Ex. L (K332).

This evidence directly contradicts Kast's sworn representations to the SDNY claiming that Only Websites was responsible for the content of the infringing website.  The evidence conclusively shows that Kast not only had considerable input into content but actually had full control over and was solely responsible for the content of the website.

## 2.  Kast Copied the Erickson Photos from the Wells Fargo Website.

Although Kast has failed (or refused) to produce all of his correspondence with Only Websites, the communications he has produced leave no doubt that Kast personally copied Erickson's Photos from the Wells Fargo website.  Indeed, Kast admitted in an e-mail to Only Websites on March 21, 2012 that he personally copied the content from the Wells Fargo website, including Plaintiffs' Photos, and sent that content to Only Websites to use in the development of the Atherton Trust website:

> The photos were part of a package that Clayton asked me to send to OW [Only Websites] which were examples of the types of websites that were used in my industry segment.  I sent Rocket several examples of sites one of which was the Wells Fargo Private bank ["WFPB"] site which became the base prototype for the Atherton site.  The WFPB sample site had three photos on it.

McCulloch Decl. Ex. M (K333-K337) at 1.

Records maintained by Only Websites identified as "call logs" also confirm that, on

December 27, 2010, Kast explicitly instructed Only Websites to use "the content throughout the site as on the following page in the Wells Fargo site."  McCulloch Decl. Ex. N ("OW Call Log") at 5.  And the call log from January 28, 2011 confirms that Kast himself delivered the photo and text content to Only Websites.  *Id.* at 6-7.  Following that call, Only Websites noted that "what [Kast] wants [is] very specific and detailed like the Wells Fargo site."  *Id.* at 7.

Kast also claimed in his sworn statements in the SDNY action that he "instructed" Only Websites to purchase licenses to use photos on the Atherton website.  The documents produced by Kast, however, do not show that he ever gave any such instructions to Only Websites.  In fact, the record actually shows that Kast himself personally selected photos from licensing companies, like Corbis, and personally purchased any licenses for such photos.  *See* McCulloch Decl. Ex. O (K155-K158).  <u>There is no evidence in the record that anyone other than Kast was responsible for selecting content for the website or that he ever instructed Only Websites to purchase licenses for any photos to be used on the website</u>.

From these records, there can be no serious dispute that Kast was the person who copied the Erickson Photos from the Wells Fargo website and provided them to Only Websites.  This evidence discredits Kast's numerous sworn statements in the SDNY action where he repeatedly denied any knowledge or involvement in the actual copying of the Photos.

This evidence conclusively establishes that Kast is liable for direct infringement of Plaintiffs' copyrights because he personally copied the Photos from the Wells Fargo website and transferred those files to Only Websites.  Kast also had actual knowledge of the copying and materially contributed to the unlicensed use of the Photos on the Atherton Trust website and thus he also is liable for contributory infringement.

### 3.   <u>Kast Was Responsible for the Decision to Publish the Website.</u>

Kast also argues in his Amended Answer that Only Websites mistakenly made a developmental site available to the public without his approval or knowledge.  Once again, the

evidence contradicts and discredits this contention.  As Only Websites explained to Kast, he was responsible for reviewing all content on the website prior to it being published and the website would not go "live" until Kast approved doing so.  *See* McCulloch Decl. Ex. N. (OW Call Log) at 2.  The call log also shows that Kast directly participated in these rounds of edits, including on March 1, 2011, before the Atherton website was launched and made available to and viewable by the public.  *Id.* at 8-9.

Kast also was aware that the developmental site was available at http://www.onlywebsites.com/1/atherton/ and thus obviously knew that the Atherton Trust website available at www.atherton.com was a "live" site accessible by the public.  *Id.* at 5.

The documents produced by Kast further confirm that he personally made the decision to publish the Atherton website.  In approximately February 2011, Kast began to complain to Only Websites that delays in completing the website were costing him money.  *See* McCulloch Decl. Ex. P (K167).  For this reason, Kast instructed Only Websites to publish the website even though the design was not finished.  As Kast himself stated in an e-mail dated June 8, 2011 that: **"The project was rushed out on March 31st because it was so late and it was hurting my opportunity to earn revenue from the state court system otherwise, I would not have launched until the site was finished.**"  McCulloch Decl. Ex. Q (K199-K200) at 1.  The OW call log also confirms that Kast exercised direct control over decisions regarding whether and when to publish the website.  *See* OW Call Log at 5 ("Our target launch was Feb. 1st now I will have to slip it to Feb. 15.").

These records conclusively establish that Defendant Kast had direct involvement and knowledge of the launch of the website, and indeed exercised personal control over the launch decision.  This evidence thus establishes that Kast had sufficient control over the website launch and work of Only Websites to be liable for both contributory and vicarious infringement.

This evidence also makes clear that Kast's renewed "fair use" defense is frivolous.

## III.   DEFENDANT'S ALLEGED "FAIR USE" DEFENSE IS FRIVOLOUS.

The basic facts are uncontested, including that Plaintiffs' three Photos were copied from the Wells Fargo website without permission and, at the very least, used in the development of the Atherton Trust website which is undoubtedly a commercial entity.  Despite these facts, Kast's Amended Answer asserts that the unauthorized copying of Plaintiffs' photos should be deemed a "fair use" because, according to him, the photos merely "appeared on a developmental web site that could not be found or used by the public because it had no metatags which are necessary for search engines to find a web site."  (Dkt. 48 7, ¶ 12.)  Defendant's entire "fair use" defense hangs on his claim that "the web site was not operational and available to the public because the web site lacked metatags, it was still a 'work in progress' and it did not function."  (*Id.*)

These allegations are contradicted by the record and, in any case, fundamentally misunderstand the law of fair use.

The Copyright Act provides that, even if a copyrighted work is used without permission, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107. Thus, the fair use is an affirmative defense that "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair."  *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).  The Copyright Act directs courts to determine whether an unlicensed use is "fair use" based on the following non-exclusive factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

### A.      Purpose and Character of Use.

The first factor "focuses on whether the new work merely replaces the object of the original creation or instead adds a further purpose or different character.   In other words, this factor asks 'whether and to what extent the new work is 'transformative.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (quoting *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).

The Amended Answer does not allege that the uses of Plaintiffs' photographs at issue were "transformative" or that the uses involved "purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research."   Defendant also has abandoned his prior position that the unauthorized uses should be deemed fair because the Atherton Trust website "was wholly non-commercial."   Defendant was forced to abandon this frivolous argument because, as Plaintiffs' motion to strike noted, the record is clear that Plaintiffs' photos were copied from the website of a multi-national bank (Wells Fargo) by a commercial website designer (Only Websites) that was paid by a customer (Kast) to design and build a website for a property and wealth management company (Atherton Trust).   In other words, not one of the businesses or persons involved in this case were using the images to report the news, educate the public, conduct any research, or perform any other public service.   On the contrary, every party involved in this case was motivated entirely by profits and commercial gain.   Atherton Trust retained Only Websites to build a website that plainly was designed to attract clients.   Indeed, Atherton Trust's website advertised that it "provides wealth management services to high net worth individuals."   *See* Compl. Ex. 2.   Similarly, Only Websites was in the business of building websites for its customers in order to earn profits.   The Amended Answer does not allege that

any party involved in this case acted for any reason other than to make profits.

After reviewing this same issue on Plaintiffs' motion to strike, the Court explicitly noted that Kast's own "allegations appear to corroborate plaintiff's contention that the subject photos were used in the same context as they were used on Wells Fargo's website," which was unquestionably a commercial use.  (Dkt. No. 45 at 6.)   This is significant because, as the Ninth Circuit repeatedly has held, this factor is "strong indicia of no fair use."  *Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir. 1983).

Although Kast disputes his role in the illegal copying and whether the website was functional, he does not deny that the images were copied from the Wells Fargo website without permission and thus Plaintiffs were never paid any license fees for the use of the subject photos in the development of the Atherton Trust website.  These circumstances negate any possible fair use defense.   Regardless of whether there is any merit to Defendant's arguments regarding whether the website was a "live" website viewable by the public, there still is *no possible basis* for him to assert a "fair use" defense.

In considering the first fair use factor, the Supreme Court has instructed that "the crux" of the inquiry is "whether the user stands to profit from exploitation of the copyrighted material <u>without paying the customary price</u>."  *Harper & Row Publishers, Inc. v. N.ation Enters.*, 471 U.S. 539, 562 (1985) (emphasis added).  In this case, Plaintiffs allege that the images in question were copied illegally from the Wells Fargo website in order to avoid paying the "customary price" for a usage license.  Thus, even if Defendant were correct that the subject photos were used only in a "developmental" phase of the website, <u>this allegation still does not provide a basis for a fair use defense</u> because Defendant does not allege (and cannot deny) that Erickson Productions would not have granted free use of its images by Kast or Atherton Trust even if the subject photos were intended to be used strictly as "placeholders" in the website development

1   process and never would have been viewed by the public.  *See* Hughes Decl. ¶¶18-19.

2          Kast does not deny this because, as Defendant and his counsel know full well, Erickson

3   still charges license fees even for "composite" or "layout" uses of Erickson's photos, that is, in

4   contexts where the photos will never be viewed by the "public" at large.  *Id.*  Erickson still

5   requires licenses and still charges licensing fees for such "internal" uses, which is Erickson's

6   right as the exclusive copyright holder.

7          **B.     Nature of the Copyrighted Work.**

8          The copyrighted works at issue here are photographs created by Plaintiff Erickson and his

9   copyrights in the subject photos have been registered with the U.S. Copyright Office.  *See*

10  Hughes Decl. ¶¶ 5-14, Exs. A-C.  Defendant does not deny that these works are creative and

11  deserving of copyright protection.

12         **C.     The Portion Used.**

13         As a comparison of the Wells Fargo and Atherton Trust websites demonstrates, the

14  Atherton Trust website copied the entire portion of each Erickson photo as it appeared on the

15  Wells Fargo website.  *Compare* Compl. Exs. 1-3 *with* Exs. 4-6.  That Defendant copied the entire

16  portion of each photo also militates against protecting such copying as a fair use.  *See Worldwide*

17  *Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000)

18  ("While 'wholesale copying does not preclude fair use *per se*,' copying an entire work 'militates

19  against a finding of fair use.'" (quoting *Hustler Magazine v. Moral Majority Inc.*, 796 F.2d 1148

20  at 1155 (9th Cir. 1986)).

21         **D.     Effect on Potential Market For or Value of the Copyrighted Work.**

22         Defendant's contention that the fair use defense applies because the unlicensed copying

23  of Plaintiffs' photos allegedly "had no effect on the market value" of the photos fundamentally

24  misunderstands the nature of the required inquiry.  The relevant question under the fourth factor

25  is not merely whether the infringements diminished the future "market value" of Plaintiffs'

works, but instead whether there was an impact on <u>either</u> "the potential market for <u>or</u> value of the copyrighted work." 17 U.S.C. § 107(4) (emphasis added).  Because Plaintiffs charge a fee even for internal uses, *see* Hughes Decl. ¶¶18-19, the infringements impacted "the <u>potential</u> market for" Plaintiffs' images.

Defendant's latest pleading does not deny that Plaintiffs would have charged a fee even for "internal" or "layout" uses of these photos during the development of the Atherton Trust website.  As such, Defendant's pleadings fail to provide facially plausible grounds for applying a fair use defense.

Even if Defendant's pleading had included such an allegation, the law still would not support a fair use defense because "[t]he owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property."  *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932); *accord Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 682 (S.D.N.Y. 2011) ("'The law of the United States is a copyright owner may sit back, do nothing and enjoy his property rights untrammeled by others exploiting his works without permission.'" (quoting testimony of David Nimmer)); *See Sony Corp.*, 464 U.S. at 450  ("Even copying for noncommercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have."); *id.* ("The copyright law does not require a copyright owner to charge a fee for the use of his works.... It is not the role of the courts to tell copyright holders the best way for them to exploit their copyrights"); *Worldwide Church of God*, 227 F.3d at 1119 (holding that even not-for-profit uses still affected potential market value or value of copyrighted works).

There simply is no case law to support Defendant's claim that a commercial entity's unauthorized use of a third-party's intellectual property is not infringing so long as the unauthorized use is intended to be "internal" only.  On the contrary, the unauthorized copying

occurred the moment that the photos were <u>downloaded or copied</u> from the Wells Fargo website without permission.  Liability for infringement arises regardless of whether the Defendant also subsequently <u>uploaded or published</u> the photos because the Copyright Act vests exclusive control over both the right to "reproduce" and "display" a creative work in the author.  *See* 17 U.S.C. § 106.

Therefore, publishing photos to a "live" or functioning website that is publicly accessible is not necessary to give rise to a claim for infringement; rather, merely downloading copyrighted material without permission is infringing even if the party copying the material subsequently uses the material only for personal or internal uses.  *See MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993) (holding that copying occurs when a computer program is transferred from a permanent storage device to a computer's random access memory); *Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 922 (2d Cir. 1994) (finding that researchers at for-profit laboratory infringed by photocopying copyrighted scholarly articles); *Sega Enters. Ltd. v. MAPHIA*, 857 F. Supp. 679, 687 (N.D. Cal. 1994) (finding infringement when individuals downloaded copies of video games "to avoid having to buy video game cartridges"); *Playboy Enters., Inc. v. Webbworld*, 991 F. Supp. 543, 551 (N.D. Tex. 1997) (finding the unauthorized reproduction of images on a computer server to violate plaintiff's copyright); Melville Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT § 8.08 [A][5] [a], 8–131-32 (2008) ("[T]he input of a work into a computer results in the making of a copy, and hence, that unauthorized input infringes the copyright owner's reproduction right.").

Defendant's attempt to raise the fair use in this context also ignores that such a defense is precluded where, "if the challenged use 'should become widespread, it would adversely affect the potential market for the copyrighted work.'" *Harper & Row Publishers*, 471 U.S. at 568 (quoting *Sony Corp.*, 464 U.S. at 451).  In this case, the challenged use involved the unlicensed

1  copying of Plaintiffs' photographs by third parties for use on a website (or at least in developing

2  the website).  Defendant's contention that the fair use doctrine applies in this context means that

3  Defendant contends that, by law, anyone should and can copy Plaintiffs' photos without

4  permission or a license so long as they don't subsequently republish them on a live website.

5       Defendant's position is absurd.  Applying the fair use doctrine in this case would not only

6  destroy Plaintiffs' business, it would effectively undermine the entire stock photography

7  industry.  Even accepting Kast's contention that Plaintiffs' photos were copied and used merely

8  as "placeholders" and were never intended to be displayed on Atherton Trust's public website,

9  the fact remains that Plaintiffs' photos were copied from the Wells Fargo website rather than

10  through legitimate licensing channels.  The fact that the infringers illegally copied Plaintiffs'

11  photos in order to avoid the expense of purchasing a legitimate license (which is required even

12  for "comp" or "placeholder" usage licenses) necessarily precludes a fair use defense.

### CONCLUSION

Defendant's "Fair Use" affirmative defense cannot prevail on any possible theory and lacks a basis in law or facts.  Plaintiffs thus respectfully request that the Court enter summary judgment in their favor and against Defendant on their copyright infringement claims (Counts I and II) and on the question of whether Defendant's infringements were protected as a "fair use" under the Copyright Act.

Dated:  September 2, 2014
        New York, New York

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

 s/ Kevin P. McCulloch
NELSON & McCULLOCH LLP
Kevin P. McCulloch (*pro hac vice*)
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
kmcculloch@nelsonmcculloch.com

-and-

Law Offices of Robert K. Wright
Robert K. Wright (SBN 73235)
rkwlaw@earthlink.net
301 North Lake Avenue, Suite 700
Pasadena, CA 91101
Telephone: (626) 796-2664
Fax: (626) 796-1601

*Attorneys for Plaintiffs*