Paul W. Reidl (SBN 155221)
paul@reidllaw.com
Law Office of Paul W. Reidl
241 Eagle Trace Drive
Half Moon Bay, CA 94019
(650) 560-8530

*Attorney for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICKSON PRODUCTIONS, INC. and JIM ERICKSON, | Case No. 5:13-CV-05472-HRL |
| *Plaintiffs,* | **Hearing Date:** October 7, 2014 |
| v. | **Time:** 10:00 a.m. |
| **KRAIG R. KAST,** | **Courtroom:** 2, 5th Floor |
| *Defendant.* | **Judge:** Hon. Harold R. Lloyd |

# DEFENDANT'S OPPOSITION TO PLAINTIFFS'

# MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ……………………………………………… ii

TABLE OF AUTHORITIES ……………………………………….. iii

I.    STATEMENT OF THE ISSUES TO BE DECIDED …………..………… 2

II.    STATEMENT OF FACTS ……………………………………… 3

III.   SUMMARY OF ARGUMENT ………………………………… 3

IV.   ARGUMENT ……………………………………………… 4

    A.    Plaintiffs' Memorandum Does Not Comply with the Local Rules … 4

    B.    Plaintiffs' Motion is Not Supported by Admissible Evidence ……… 5

        1.    The Hughes Declaration Should Not be Considered ……… 6

        2.    Certain Exhibits to the Declaration of Plaintiff's
               Counsel, Mr. McCulloch, Should Not Be Considered ……… 7

        3.    Summary ……………………………………… 9

    C.    Even if the Court Credits Plaintiffs "Evidence,"
        it Does Not Establish Liability on Any Claim ……………………… 9

        1.    Direct Infringement (Claim 1) ……………………… 10

            a.    There is no Evidence to Support a Verdict of
                Direct Copying by Mr. Kast ………………………… 10

            b.    Assuming that the Court Finds That the Admissible
                Evidence Establishes a Prima Facie Case of
                Direct Copying by Mr. Kast, the Fact is Genuinely
                Disputed …………………………………………… 13

        2.    Contributory Infringement (Claim 2) ……………………….. 13

            a.    There is no Evidence to Support a Verdict of
                 Contributory Infringement ……………………..…… 14

b.      Assuming that the Court Finds That the Admissible
Evidence Establishes a Prima Facie Case of
Contributory Infringement  Mr. Kast, the Fact is
Genuinely Disputed …………………………………   16

3.      There is no Evidence to Support a Verdict of Vicarious
Infringement (Claim 3) …………………………………   17

D.      Assuming that the Court Finds That Summary Judgment for
Defendant is Inappropriate, the Court Should Deny the Motion for
Summary Judgment on the Fair Use Defense ………………………   18

V.      CONCLUSION …………………………………………………………...   21

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

*A & M Records, Inc. v. Napster, Inc.*, 239 F. 3d 1004 (9th Cir. 2001) ……………...   17

*Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179 (9th Cir. 1988) ………….   2

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994) …………………………   20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ……………………………………   5

*County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148 (9th Cir 2001) ………..   12

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) …………………………….   17

*Fisher v. Dees,* 794 F.2d 432 (9th Cir. 1986) …………………………………….   20

*Ford Motor Co. v. Auto Supply Co., Inc.,* 661 F.2d 1171 (8th Cir. 1981) …………...   8

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259 (9th Cir. 1996) ………………   17

*Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539 (1985) ………   18

*Horphag Research Ltd. v. Garcia,* 475 F.3d 1029 (9th Cir. 2007) …………………   5

*Independent Towers of Washington v. Washington,* 350 F.3d 925 (9th Cir. 2003) ….   5

*In re Oracle Corp Securities Litigation,* 627 F.3d 376 (9th Cir. 2010) …………….   5

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal. 2008) ………………………………………………………………………   17

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ………   13, 17

*Orr v. Bank of America,* 285 F.3d 764 (9th Cir. 2002) ………………………………   8

*Perfect 10, Inc. v. Visa International Services Ass'n*, 494 F.3d 788 (9th Cir. 2007) ..   13,17

*Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1512 (9th Cir. 2002) ……………   10

*Sweats Fashions Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560 (Fed. Cir.1987) …   5

**Statutes**

17 U.S.C. § 107 ……………………………………………………………………...   18

**Rules**

Fed.  R. Civ. P. 56 (c) …………………………………………………...   2, 5

Fed R. Evid. 803 (6) …………………………………………………   8

Fed. R. Evid. 1006 …………………………………………………...   8

Local Rule 7.4 …………………………………………………………   4

Local Rule 56-1 ……………………………………………………...   4

**Ninth Circuit Civil Jury Instructions**

§17.0 …………………………………………………………………   10

§17.20 ………………………………………………………………...   17

§17.21 ………………………………………………………………...   13

1    Defendant Kraig R. Kast ("Kast") submits this memorandum in opposition to Plaintiffs'

2    motion for summary judgment.

3    Plaintiffs' memorandum is long on hyperbole and short on accuracy.  Like the fictional

4    Borg in Star Trek, Plaintiffs have relentlessly pounded away at their theme that "resistance is

5    futile:" Mr. Kast is "conclusively" liable, he has abused the judicial process by defending

6    himself, and he should have saved everyone a lot of time and trouble at the outset by writing

7    gigantic check to Plaintiffs and their counsel for his crime.  Plaintiffs recycle the same arguments

8    and documents they used in the New York case, in their complaint in this case, in their motion to

9    strike affirmative defenses and in their settlement conference statement.  They add to that a

10   healthy dollop of *ad hominem* attacks on Mr. Kast, and expect the Court to agree that Mr. Kast is

11   a villain who should be punished for having the temerity to stand up to Plaintiffs and refusing to

12   pay them hundreds of thousands of dollars that he does not have for his transgression.

13   Nowhere is this more apparent than Plaintiffs' slanted summary of the New York

14   litigation.  Plaintiffs spend 5 pages blasting Mr. Kast for defending himself but fail to mention

15   that Mr. Kast *immediately* instructed Only Websites to remove the photos from the

16   developmental website and they were removed within 24 hours of his receipt of Plaintiffs'

17   demand letter.  (Kast Decl. ¶ 11)(Docket No. 54); *see* Plaintiffs' Memorandum at 1:22-2:25.

18   ("Pl. Mem.").[1]  Plaintiffs never mention that **all** of these proceedings stem from Plaintiff's troll-

19   like conviction that Mr. Kast is a multi-millionaire who can and should pay them $450,000 out of

20   //

21   //

22   ───────────────

[1]    The only purpose of the lengthy discussion of whether New York was a proper venue is
23   to attack Mr. Kast for his alleged obstructionism.  This is nothing more than sour grapes because
     the New York Court agreed with Mr. Kast that the case belonged in California.  This made
24   perfectly good sense since **all** of the parties reside in this District.  New York was convenient
     only to Plaintiffs' counsel, Mr. McCulloch, because he lives there.

petty cash (he knows otherwise) and that they were going to pursue him relentlessly until he wrote them the big check. (Kast Decl.1 ¶ 17)(Docket No. 54).  In short, Mr. Kast stood up to the bully and the bully does not like it.

These *ad hominem* attacks are all a diversion, however.  Other than setting the tone of Plaintiffs' memorandum they have nothing to do with the merits of the case – except to illustrate how Plaintiffs have played fast and loose with the facts.

In order to prevail on this motion, Plaintiffs must show through **admissible evidence** that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *Beyene v. Coleman Security Services, Inc.*, 854 F. 2d 1179, 1181-1182 (9th Cir. 1988). Plaintiffs have not done so; indeed, their "evidence" is largely inadmissible and completely circumstantial.  It falls far short of what is required for summary judgment.  For all the reasons set forth below, Plaintiffs' motion should be denied. In fact, Mr. Kast believes that the evidence taken as a whole is so compellingly in his favor that he has also moved for summary judgment of non-infringement (Docket No. 54).

## I.     STATEMENT OF ISSUES TO BE DECIDED

The Court must decide the following issues:

1.     Should Plaintiffs' memorandum be accepted even though it does not comply with the local rules?

2.     Should the "Declaration" of Jesse Hughes be accepted even though it was not executed and, if so, in whole or in part?

3.     Are the Exhibits attached to the Declaration of Plaintiffs' counsel, Mr. McCulloch, properly authenticated and, in the case of the Only Websites "Call Log" (Exhibit N) also inadmissible as hearsay and an unsupported summary?

//

//

4.      Does the admissible evidence establish a prima facie case of direct infringement and, if so, is there a genuine issue of material fact precluding the granting of summary judgment?

5.      Does the admissible evidence establish a prima facie case of contributory infringement and, if so, is there a genuine issue of material fact precluding the granting of summary judgment?

6.      Does the admissible evidence establish a prima facie case of vicarious infringement and, if so, is there a genuine issue of material fact precluding the granting of summary judgment?

7.      Does the admissible evidence establish that there is no genuine issue of material fact on the Fair Use Defense and that Plaintiffs are entitled to judgment on it as a matter of law?

## II.      STATEMENT OF FACTS

The facts are as set forth in Defendant's motion for summary judgment at 7:22–10:8. (Docket No. 54).  These are supported by the Declaration of Kraig R. Kast and the Exhibits attached thereto (Docket No. 54)("Kast Decl. 1"), which are incorporated herein by reference, and the Second Declaration of Mr. Kast being filed with this motion ("Kast Decl. 2").

## III.      SUMMARY OF ARGUMENT

Plaintiffs have no direct evidence to support their claim of infringement.  They offer no testimony of any percipient witness.  Instead, they have cobbled together a case based on documents that are inadmissible as improperly authenticated, hearsay or both.  Their memorandum purports to interpret these documents in a way that is plainly wrong and that stems solely from the arguments of counsel not the testimony of any percipient witness.  This confusing jumble of argument and inadmissible evidence is further masked by the failure to

1   provide a statement of facts as required by the Local Rules of this Court.  The Court is not

2   required to unravel this chaos and make Plaintiffs' case for them.

3        In short, Plaintiffs are asking the Court to grant judgment in their favor based on their

4   lawyer's interpretation of a handful of documents and without any testimony from any witness

5   who was actually involved in the alleged infringement.

6        Plaintiffs simply do not make a prima facie case on any of their claims and, therefore, the

7   burden never shifts to Mr. Kast.  But if the Court found that a prima facie case had been made

8   with admissible evidence, the testimony of Mr. Kast as the only percipient witness of record puts

9   counsel's interpretation of the documents into genuine dispute. Since Mr. Kast has also moved

10  for summary judgment and Plaintiffs have failed to come forward with their own evidence to

11  prove their claims, the Court can and should grant his motion for summary judgment because

12  Plaintiffs simply do not have the evidence to genuinely dispute his testimony.

13       When considered solely from the perspective of Mr. Kast, there is sufficient basis for

14  denying the motion on the fair use defense and allowing the jury to decide the issue.

15  **IV.   ARGUMENT**

16       **A.    Plaintiffs' Memorandum Does Not Comply with the Local Rules**

17       This District has very specific and sensible rules for motions.  Local Rule 7.4 requires a

18  party to provide a statement of relevant facts.  It also requires a statement of issues to be decided.

19  Neither is included in Plaintiffs' memorandum.

20       These sensible rules essentially require the parties to provide a roadmap that will assist

21  busy Judges in understanding the facts and issues. Plaintiffs have failed to provide that roadmap

22  for the Court. It is difficult to imagine a motion where that is more important than a summary

23  judgment motion, and it is particularly important here in light of Local Rule 56-1 which prohibits

24  the filing of a separate statement of undisputed facts.  Reading Plaintiffs' memorandum, it is

25

1    impossible to glean which specific facts they believe to be material and not genuinely disputed,

2    and what evidence establishes them.

3            The Ninth Circuit has made it clear that Judges are not required to sift through motions

4    and make the party's case for them.  *See, e.g., In re Oracle Corp. Securities Litigation,* 627 F.3d

5    376, 385 (9th Cir. 2010) ("It behooves litigants, particularly in a case with a record of this

6    magnitude, to resist the temptation to treat judges as if they were pigs sniffing for truffles"

7    (citation omitted)); *Independent Towers of Washington v. Washington,* 350 F.3d 925, 929 (9th

8    Cir. 2003) ("When reading [Plaintiff's] brief, one wonders if [Plaintiff], in its own version of the

9    "spaghetti approach," has heaved the entire contents of a pot against the wall in hopes that

10   something would stick. We decline, however, to sort through the noodles in search of

11   [Plaintiff's] claim.").  Accordingly, Plaintiffs' memorandum should not be considered and the

12   motion denied.

13           **B.      Plaintiffs' Motion is Not Supported by Admissible Evidence**

14           Federal Rule of Civil Procedure 56 (c) requires that a summary judgment motion be

15   supported by admissible evidence.  The admissible evidence must establish that the case

16   presented to the jury would have only one outcome; and that is a judgment in favor of the

17   movant.  In other words, it must establish that there are no genuine issues of material fact that

18   require a trial. Fed. R. Civ. P. 56 (a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Sweats*

19   *Fashions Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1562-1563 (Fed. Cir.1987). The

20   burden is on the moving party to demonstrate the absence of a genuine issue of material fact by

21   showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex,*

22   477 U.S. at 325; *Horphag Research Ltd. v. Garcia,* 475 F.3d 1029, 1035 (9th Cir. 2007).

23           Other than Plaintiffs who can testify to their ownership of the copyright, there are only

24   two possible witnesses who know the facts that led to Plaintiffs' demand letter; Mr. Kast and

1   Only Websites.[2]  Plaintiffs do not offer the testimony of either in support of their motion; they

2   cannot because they did not take any depositions in the case.  Because Only Websites is located

3   in Utah and Mr. Kast resides in this District, he is the only witness who can be compelled to

4   testify at the trial.  Thus, the only testimony of a percipient witness that is properly of record is

5   from Mr. Kast.  Plaintiffs must therefore show that Mr. Kast's testimony at trial would not

6   change the outcome; despite his testimony the trial would result inexorably in liability.  If they

7   do not, this motion must be denied.

8           **1.      The Hughes Declaration Should Not be Considered**

9           Plaintiffs submit in support of their motion a document (with Exhibits) that purports to be

10   a declaration of Jesse Hughes.  It should not be considered by the Court because it is not

11   executed, nor can it be in the form it was submitted because it is dated June 9, 2014 – nearly

12   three months before the motion was filed.  It has no evidentiary value whatsoever and Plaintiffs

13   should not be permitted to file a new declaration with a new date that post-dates the filing date of

14   the motion (obviously, Mr. Hughes cannot go back in time and execute a declaration dated three

15   months ago.)[3]

16           If the Court accepts the unsigned declaration as admissible evidence, it should not

17   consider the first two sentences of paragraph 16 because they are hearsay.  Therein, Mr. Hughes

18   purports to testify to the contents of documents (web site "screen captures") that are not exhibits

19   to his declaration.  His declaration does not lay any foundation to establish their authenticity:

20   _____

21   [2]      Plaintiffs have already obtained a judgment of copyright infringement against Only
Websites in the New York litigation.  Their motion for an award of $450,000 in statutory
damages is pending.  (Kast Decl. 1  ¶ 17)(Docket No. 54).

22   [3]      The self-serving statements in paragraphs 17-18 of the unsigned declaration are germane
only to damages and not to liability.  In any case, the small amount of money involved illustrates

23   the silliness of the present case because Plaintiffs' never offered to license the photos to Mr.
Kast.  (Kast Decl. 2 ¶ 6).  To the contrary, they made it clear from the outset that they were not

24   interested in "small ball" --  they have insisted on a monetary payment of 100 times what they
claim they would have charged for a license.

25

how they were made, when they were captured and who captured them.  Because they are allegedly from the Atherton Trust web site, they cannot be business records of Plaintiffs.  He simply asserts that the documents he saw outside the courtroom contain Plaintiffs' photos.  This testimony is inadmissible hearsay.[4]

## 2. Certain Exhibits to the Declaration of Plaintiff's Counsel, Mr. McCulloch, Should Not Be Considered.

Although purporting to be based on personal knowledge, the declaration of Plaintiff's counsel, Mr. McCulloch, does not authenticate or in any way make admissible most of the documents attached to it.  More importantly, a close reading of Plaintiffs' memorandum quickly discloses that Mr. McCulloch is doing far more than simply purporting to authenticate documents – *he is interpreting them and testifying about their meaning.*  (*See, e.g.*, Pl. Mem. at 10:20-11-10, 11:6-27, 1l:28-12:5). But he is not the witness; he has no personal knowledge of the events to which he purports to testify.  The only people with personal knowledge are Mr. Kast and certain individuals at Only Websites.   All Mr. McCulloch can do is provide lawyer's argument about the documents.  That is an insufficient basis for discharging Plaintiffs' burden because Mr. McCulloch's speculation about the meaning of the documents is not testimony on which a jury could find for Plaintiffs.  If Mr. McCulloch believed that he could brow beat Mr. Kast into confessing to something he didn't do during cross-examination, the time to have done that was during a deposition; the Court cannot assume that his trial skills are so profound that he would inexorably wring a confession out of Mr. Kast at trial.

---

[4]    Plaintiffs' memorandum cites to paragraphs 15 and 16 of the Hughes declaration for the proposition that Mr. Kast also copied "substantial additional content from the Wells Fargo website."  (Pl. Mem. at 10:2-3.)   This is another example of counsel testifying in the memorandum because Mr. Hughes' declaration never makes this statement, nor could he because it is hearsay.  There is no basis in his declaration that would permit him to testify about the contents of the Wells Fargo website or the Atherton Trust website.

1    Mr. McCulloch also purports to authenticate certain documents.  He lacks the capacity to

2    do so.  The specific Exhibits are discussed below:

3    - **Exhibits H–M, O-Q.**  These purport to be documents produced in discovery by

4    Mr. Kast.  Mr. McCulloch cannot authenticate them nor can he testify to their

5    contents because he has no personal knowledge of them.  He could have taken

6    Mr. Kast's deposition and had them authenticated, but he did not.  His statement

7    that the Exhibits were "produced in this action by counsel for Kast" is

8    insufficient to authenticate the documents properly. Federal Rule of Evidence

9    901(b)(1) provides that documents can be authenticated by a witness with

10    knowledge. This means that the declarant must be a person through whom the

11    exhibit could be admitted into evidence. *Orr v. Bank of America*, 285 F.3d 764,

12    774 (9th Cir. 2002).  These Exhibits should not be considered because Mr.

13    McCulloch is not competent to authenticate them.  He is Plaintiffs' counsel. He

14    was not the author of any of these Exhibits and has no personal knowledge of

15    them. Because his declaration fails to authenticate these  Exhibits  they  are

16    inadmissible on this motion. Id. at 777-778.

17    - **Exhibit N.**   The same can be said for Exhibit N.  This purports to be Only

18    Websites' "call log" that Mr. McCulloch obtained from them.[5]  It is relied-on

19    heavily in the liability portion of the memorandum. (Pl. Mem. at 11:28-12:5,

20    13:1-22).  Mr. McCulloch cannot authenticate it because he has no personal

21    knowledge of it; he does not know who made it, how it was made, how it was

22    ─────────────────

23    [5]    The header on the Exhibit shows that the document was faxed to Mr. McCulloch by
Daniel Todd of Only Websites on June 29, 2012, which was after Only Websites had been sued
in New York by Plaintiffs. See McCullough Declaration Exhibit E (showing the date of the filing
of the lawsuit).  Under the circumstances, it is entirely likely that Mr. Todd prepared this
specifically for Plaintiffs' use in this litigation.

1    kept, and whether it is accurate.  The entries are also rank hearsay and of no

2    evidentiary value whatsoever.[6]  The statements attributed to Mr. Kast and Only

3    Websites in this document are plainly out of Court statements offered by

4    Plaintiffs for the truth of the matter asserted therein. [7]

5    At bottom, Mr. McCulloch lacks the capacity to authenticate the forgoing documents.  He

6    has no personal knowledge of them.  He cannot testify about them.  They are unauthenticated

7    hearsay and not admissible on this motion.

8    **3.    Summary**

9    Without this "evidence," Plaintiffs cannot even begin to prove a prima facie case of

10   infringement and the burden of rebuttal never shifts to Mr. Kast.  The motion should also be

11   denied for this reason.

12   **C.    Even if the Court Credits Plaintiffs "Evidence,"**

13   **it Does Not Establish Liability on Any Claim**

14   There was a reason why Defendant cited to the Ninth Circuit Civil Jury Instructions in its

15   motion for summary judgment (Docket No. 54); these reflect how the Court would be required to

16   instruct the jury if there is a trial.  When measured by that standard, and assuming that all of

17

18   _____

     [6]    The Exhibit is obviously an incomplete document since certain of the Exhibits attached to

19   Mr. Kast's Declaration are not reflected in it and it ends in March 2011 when it is not disputed
     that there were communications between Only Websites and Mr. Kast through and beyond

20   August 2011.  (See Kast Decl. 1, Exhibits 6-8)  They also do not include Mr. Kast's
     communications with his principal contact on the project, Mr. Mortenson.  (Kast Decl. 1 ¶
     10)(Docket No. 54).  These are further reasons why the Court should not consider the "Call

21   Log."

22   [7]    To the extent that this Exhibit is a summary of communications, a summary is only
     admissible under Fed. R. Evid. 1006 if it is based on admissible evidence and the opposing party

23   was given an opportunity to examine the underlying evidence. The first prong of Rule 1006 can
     be satisfied by competent testimony sufficient to satisfy the business records exception. Fed. R.
     Evid. 803 (6); *Ford Motor Co. v. Auto Supply Co., Inc*., 661 F.2d 1171, 1175-1176 (8th Cir.

24   1981). As outside counsel, Mr. McCullough is not competent to so testify, and no testimony has
     been offered to establish any of the elements of Rule 1006 or Rule 803 (6).

25

Plaintiffs' "evidence" is admissible, Plaintiffs have failed to satisfy the elements of proof required for a judgment of infringement.

### 1. Direct Infringement (Claim 1)

As stated in the Ninth Circuit's Civil Jury Instructions § 17.0:

> One who [reproduces] [prepares derivative works from] [distributes] [performs][displays] a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

### a. There is no Evidence to Support a Verdict of

### Direct Copying by Mr. Kast

Plaintiff asserts that Mr. Kast "personally copied the Erickson Photos from the Wells Fargo website and sent them to [Only Websites]." (Pl. Mem. at 10:21-22). To support this conclusion, Plaintiffs cite to Exhibits H, I, J, K and M, and N of Mr. McCulloch's Declaration. (Id. at 10:25-11:8).

None of these documents constitutes direct evidence of copying by Mr. Kast. None of the e-mails contain the photos as attachments. None of them contain an instruction to use Plaintiffs' photos in the web site. (Such an instruction does not even appear in the inadmissible "call log" which purportedly logged the communications between Mr. Kast and Only Websites.) There is nothing but the speculation of counsel to "prove" that Mr. Kast copied and sent Plaintiffs' photos to Only Websites.

In the absence of direct evidence, Plaintiffs construct an elaborate fiction based on circumstantial evidence that they believe establishes "conclusively" that Mr. Kast copied and sent the photos to Only Websites. But assuming that Mr. McCulloch could browbeat Mr. Kast in cross-examination to confess that he in fact sent the photos to Only Websites despite the absence of any direct evidence to support that claim, no reasonable jury could look at these Exhibits and conclude that Mr. Kast copied the photos and gave them to Only Websites. In Exhibit H, Mr.

1   Kast asks if Only Websites "has a prototype [web site] that is similar" to the Wells Fargo web

2   site.   Nowhere does it say:  "Gosh, I love the photos in that web site, here they are, make sure

3   you put them in my site."   Nowhere does it say "copy the Wells Fargo web site."   Nowhere does

4   it say that Mr. Kast copied the photos and gave them to Only Websites to use.

5          Exhibit I has nothing whatsoever to do with Plaintiffs' photos.   Similarly, Exhibit J

6   discusses the headings to be used in the site and reflects Mr. Kast's request that Only Websites

7   use the same "drop down windows" format as the Wells Fargo site.   It says nothing at all about

8   the photos.   Exhibit K is the contract with Only Websites and states simply that Mr. Kast is

9   responsible for obtaining permission for the photos it provides to Only Websites.   No reasonable

10  juror could construe this document as an admission that Mr. Kast provided Plaintiffs' photos to

11  Only Websites (with or without releases).

12          Exhibit M is dated March 21, 2012 – eight months after the infringement occurred and

13  was written to Only Websites after the New York action had been filed.   In arguing that Only

14  Websites should indemnify Atherton Trust, Mr. Kast states that he provided the links to various

15  websites to Only Websites at their request:

16              I sent [Only Websites] several examples of sites one of which was
               the Wells Fargo private bank site which became the basic
17              prototype for the Atherton site. The WFPU site had the photos on
               it.  The development site should have been developed from scratch
18              not just a modification of the WGPB site and should never have
               been viewable by the public until completed.
19
20  No reasonable jury could find on the basis of this document that Mr. Kast copied the photos and

21  sent them to Only Websites.   To the contrary, the document attached as Exhibit 1 to the Kast

22  declaration clearly shows that Mr. Kast sent links to the various competitive web sites, not the

23  photos.   This is completely consistent with Mr. Kast's testimony.  (Kast Decl. 1 ¶¶ 4-6)(Docket

24  No. 54).

25  //

1    Exhibit N is the Only Websites "call log" that Mr. McCulloch cannot authenticate and

2    that is complete hearsay.  The memorandum claims that pages 6-7 prove "conclusively" that Mr.

3    Kast delivered the photos to Only Websites (Pl. Mem. at 12:1-20) ….. but they don't.  Not even

4    close.  The December 27, 2010 "entry" is an edited version of Exhibit J.  As discussed above,

5    this does not establish that Mr. Kast copied the photos and provided them to Only Websites.

6    Similarly, the January 28, 2011 entries do not discuss photos at all.  In any event, the record

7    establishes that Mr. Kast was at that time in the process of licensing photos for the web site from

8    Corbis and Shutterstock and that he provided them to Only Websites on January 30, 2011 with

9    instructions to use them on the web site.  (Kast Decl. 1 ¶¶ 8-9)(Exhibits 4, 5)(Docket No. 54).

10   (Curiously, these documents – which are inconsistent with Plaintiff's theory of liability ---- do

11   not appear on the Only Websites "call log," further underscoring why it is inadmissible:  it is at

12   best a selective summary of the communications between Mr. Kast and Only Websites).

13   The bottom line is that there is no evidence that Mr. Kast "personally copied the Photos

14   from the Wells Fargo website and sent them to Only Websites."  (Pl. Mem. 20:21-22).  He

15   provided links to the Wells Fargo web site (and others) as examples of the general layout he

16   wanted for the Atherton Trust web site, but he never copied the photos.  Plaintiffs' theory makes

17   little sense in light of the evidence that upon seeing the photos in the initial developmental

18   version of the web site Mr. Kast decided they were not what he wanted, he licensed replacement

19   photos from Corbis and Shutterstock and copied and gave them to Only Websites for inclusion in

20   the site.  (Kast Decl. 1 ¶¶ 6-9).  Construing the evidence in the light most favorable to

21   Defendant, as the Court is required to do, the motion must be denied.  *See County of Tuolumne v.*

22   *Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir. 2001)(evidence must be construed in the

23   light most favorable to the non-moving party).

24   //

1      **b.      Assuming that the Court Finds That the Admissible Evidence**

2      **Establishes a Prima Facie Case of Direct Copying by Mr. Kast,**

3      **the Fact is Genuinely Disputed.**

4          If the Court concludes that the evidence is inadmissible and establishes a prima facie case

5  of direct infringement, that fact is genuinely disputed.  The only individuals who know whether

6  Mr. Kast actually copied the photos and gave them to Only Websites are Mr. Kast and Only

7  Websites. Mr. Kast is the only percipient witness to offer testimony.  His declaration

8  unambiguously states that he provided only hypertext links to Only Websites, that he did not

9  copy the photos, and that he did not have the technical ability to insert the photos into the

10  developmental website (Kast Decl.1 ¶¶ 4-9, 14-15)(Docket No. 54).  If the Court finds that

11  Plaintiff has made a prima facie case of direct infringement, this would create a genuine issue of

12  material fact.

13      **2.      Contributory Infringement (Claim 2)**

14          Contributory infringement occurs when a person: (1) has knowledge of another's

15  infringement and (2) either (a) materially contributes to or (b) induces that infringement.  *Perfect*

16  *10, Inc. v. Visa International Services Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *see Metro-*

17  *Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("one infringes

18  contributorily by intentionally inducing or encouraging direct infringement.")  The Court in

19  *Grokster* made it clear that inducement requires "affirmative steps taken to foster infringement."

20  As stated in the Ninth Circuit Civil Jury Instructions § 17.21:

21              A person is liable for copyright infringement by another if the
              person knows or should have known of the infringing activity and
22              [induces] [causes] [or] [materially contributes to] the activity.

23  //

24  //

### a.   There is no Evidence to Support a Verdict of Contributory Infringement

Plaintiffs argue that Mr. Kast is liable for contributory infringement because he "had actual knowledge of the copying" (Pl. Mem. at 12:22) and he was responsible for the decision to publish the website containing the photos (Id. at 12:26 – 13:25).  Plaintiffs characterize their evidence as "conclusively" establishing liability.  (Id. at 13:23).  Not so.

As with direct liability, Plaintiffs offer no direct evidence on any of the elements of contributory infringement.  Rather, they rely on circumstantial evidence to establish that, in their view, Mr. Kast did something incredibly irrational and stupid; knowing that he needed to license photos for the web site, he licensed photos, then copied Plaintiffs' photos without obtaining a license, told Only Websites to use the licensed photos when in fact he meant Plaintiffs' unlicensed photos, and then authorized the publication of the web site containing Plaintiffs' photos even though it was incomplete and even though it did not contain the photos he had licensed!  No reasonable jury could so conclude based on the record.

First, there is no evidence on the first element of the claim, namely, that Mr. Kast knew or should have known that using the photos in the initial version of the developmental site infringed Plaintiffs' copyright.  The evidence is to the contrary; he had a layman's belief that only publication of the photos without permission was prohibited. (Kast Decl. 1 ¶¶ 6, 9)(Docket No. 54).

Second, as for the second element, the evidence does not even come close to establishing that Mr. Kast authorized the publication of the web site containing the photos.  There is no dispute that Mr. Kast was contractually responsible for the content of the web site; that's why he provided content to Only Websites and he licensed the photos from Corbis and Shutterstock.  (Id. at ¶¶ 8-9).  There is also no dispute that Only Websites dragged their heels in completing the site and Mr. Kast was angry about that; this is why he suspended payment for several months. (Id. ¶

1   10 and Exhibit 6).  But the evidence does not establish (as asserted by Plaintiffs) that Mr. Kast

2   engaged in the irrational act of authorizing Only Websites to make the site available to the public

3   when it was incomplete. (*See* Pl. Mem. at 13:11-22).  It is not surprising that the underscored

4   statement in the memorandum that "Kast instructed Only Websites to publish the website even

5   though the design was not finished" contains no citation to the record.  (Id.  at 13:14-15).  There

6   is no evidence to support it.

7          Again Plaintiffs base their claim on the hearsay, unauthenticated "call log" they obtained

8   from Only Websites. But the Court will not find any logged call (or whatever the Exhibit

9   purports to be) in which Mr. Kast told Only Websites to make the site available to the public.  It

10  simply is not there.[8]  Plaintiffs cite to Exhibit Q (id. at 13:19), which discussed the "transition of

11  the site from alpha to beta" that purportedly occurred in March but this also does not provide

12  direct evidence that the site was available to be seen by the public (and, curiously, it also does

13  not appear on the inadmissible "call log.")[9]  As Mr. Kast explained in his declaration, he did not

14  authorize the web site to become available to the public because it was incomplete (Kast Decl.1

15  ¶ 11)(Docket No. 54)(Kast Decl. 2 ¶ 5); no reasonable businessman would have made an

16  incomplete work-in-progress available to the public for any reason.

17          In any event, none of this establishes that Mr. Kast engaged in any volitional act that

18  caused the infringement.  He did not provide the photos to Only Websites and he did not induce

19  Only Websites to use them.  (Kast Decl.1  ¶ 6)(Docket No. 54).  Mr. Kast always understood that

20

21  [8]    In fact, the "call log" ends in March 2011 yet the record unambiguously establishes that
    work on the web site continued into July and August 2011 when Mr. Kast finally approved it to
22  be made available to the public (without Plaintiffs' photos).  (Kast Decl. 1 ¶¶ 10-13 and Exhibits
    6-8).

23  [9]    Implicit in counsel's testimony and argument about Exhibit Q is the assumption that the
    "beta version" was the final version of the site that was to be made available to the public.  This
24  is not true; the "beta" version was the step before the publication of the site.  Exhibit Q reflects
    Mr. Kast's complaint that Only Websites started on the "beta" version of the site before the
    "alpha" version was working.  (Kast Decl. 2 ¶¶ 2-3).

that the photos used in the published web site would need to be licensed.  (Id. ¶¶ 2, 6).  He did not approve Only Websites' initial version of the development site that contained Plaintiffs' photos, and so he found photos that he liked, licensed them and instructed Only Websites to use them. (Id. ¶¶ 6-8).  He did not authorize the publication of the non-functional, incomplete developmental web site containing Plaintiffs' photos.  (Id. ¶ 11).  At bottom, he took no intentional "affirmative steps to foster infringement" of Plaintiffs' copyright. To the contrary, **every step he took was a conscious one to avoid infringement**; he licensed the photos he wanted Only Websites to use in the web site and told Only Websites to use them.  When all of the facts are considered, it is clear that Plaintiffs have not established a prima facie case of contributory liability.[10]  Construing the record in the light most favorable to Mr. Kast, the motion must be denied.

          **b.**      **Assuming that the Court Finds That the Admissible Evidence Establishes a Prima Facie Case of Contributory Infringement, the Facts are Genuinely Disputed.**

      Defendant's summary judgment motion and the attached evidence show that Mr. Kast instructed Only Websites to use the licensed photos for the web site and that he did not authorize its publication.  If the Court believes that the admissible evidence establishes a prima facie case of contributory infringement, the only testimony of record from a percipient witness -- Mr. Kast's -- is sufficient to establish a triable issue of fact.

//

---

[10]     Plaintiffs' memorandum also asserts that Mr. Kast had to know that the developmental site had been published because it resolved on the domain name www.athertontrust.com and not at a developmental link.  (Pl. Mem. at 13:8-10).  This is another example of counsel testifying about a hearsay statement of Only Websites in the "call log" without any testimony of the people who knew what was going on.  As Mr. Kast explains, the old site located at that domain name was supposed to stay public until he approved the new site so that Atherton Trust would continue to have a web presence.  He always accessed the developmental site through a link provided by Only Websites.  He did not know that at some point Only Websites, without his permission, replaced the old site with the developmental site. (Kast Decl. 1 ¶ 11; Kast Decl. 2 ¶¶ 4-5).

**3.      There is no Evidence to Support a Verdict of**

**Vicarious Infringement (Claim 3)**

Plaintiffs lump contributory and vicarious infringement together as if they are the same thing. They are not.  Again, when the Ninth Circuit Civil Jury Instructions are considered it is clear that Plaintiffs have not discharged their burden.

Vicarious copyright infringement requires a plaintiff to prove that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.  *Perfect 10, Inc. v. Visa International Services Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).  In other words, "One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Golden-Mayer Studios, Inc. v. Grokster, Ltd,* 545 U.S. 913, 930 (2005); *see Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259, 263 (9th Cir. 1996).  "Financial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (*quoting A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001)) (internal quotation marks omitted).  The second element of the vicarious infringement test requires showing a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps." *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 591 F. Supp. 2d 1098, 1110 (N.D. Cal. 2008). As stated in the Ninth Circuit's Civil Jury Instructions § 17.20:

> A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise the infringing activity, [whether or not the person knew of the infringement.]

Plaintiffs have offered no evidence – admissible or otherwise -- that Mr. Kast "profited directly" from the infringement.  The evidence is that he did not. (Kast Decl. 1 ¶ 16)(Docket No. 54).  He made no money off the developmental web site before or after it became visible to the

public.  Potential customers could not even find it because it did not have metatags.  (Id. ¶ 11).

Summary judgment on this Claim must be denied due to a failure of proof.  If the Court finds

that Plaintiffs have made a prima facie case, then the testimony of Mr. Kast as the only

percipient witnesses is sufficient to create a genuine factual issue.

> **D.**   **Assuming that the Court Finds That Summary Judgment for Defendant is**
>    **Inappropriate, the Court Should Deny the Motion for Summary Judgment**
>    **on the Fair Use Defense**

This Court has already considered Defendant's fair use defense in the context of a motion

to strike.  While it granted the motion, the Court did not hold that the fair use defense could not

be applied in this case.  In fact, it gave Defendant the opportunity to re-plead it.  (Order of April

23, 2014 at 7:7)(Docket No. 45).

In response, the Defendant in good faith filed a lengthy pleading detailing why the fair

use defense was appropriate here and addressing some of the issues raised by the Court in its

Order.  (Amended Answer at 7:21-8:26).  In analyzing the defense, it is important to bear in

mind that this is Mr. Kast's defense, not Only Websites', and the facts as analyzed by Plaintiffs

must be considered in that context.  Viewed from that perspective, there is a genuine issue of

material fact that requires the defense to be put to the jury.

The analysis involves a weighing and balancing of the four factors in Section 107 of the

Copyright Act.  15 U.S.C. § 107.  These are not exclusive factors; rather, the defense is an

"equitable rule of reason" that is intended to ameliorate the harshness of the Act.  *Harper &*

*Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 560 (1985).  The defense assumes that

there is an infringement.  When the factors are weighed and balanced here, a reasonable jury

could find that Mr. Kast's "use" (to the extent he is personally liable for infringement) was "fair"

under the Act.

1        The first factor is whether the copying was for a commercial purpose.  The undisputed

2   evidence shows that Mr. Kast did not do the copying, and at the time Only Websites did the

3   copying the web site was being built and not available to the public.  (Kast Decl. 1 ¶ ¶ 5-

4   6)(Docket No. 54).  Mr. Kast immediately set out to license replacement photos and he did so,

5   instructing Only Websites to put them into the draft of the web site.  (Id. ¶ ¶ 6-9).  So while the

6   "use" was "commercial" in a general sense, it was minor as a matter of degree.  *See Sega*

7   *Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1512, 1522 (9th Cir. 2002).  And here, as in the *Sega*

8   case, Only Websites only copied the photos as an intermediate step to build the web site to Mr.

9   Kast's specifications (which did not include the use of the photos).  The photos were copied for a

10  "non exploitive purpose" such that the commercial use was "of minimal significance."  Id. at

11  1523.  There was nothing unfair in what Mr. Kast did; he acted responsibly and licensed photos

12  for use in the final site.  As in *Sega,* a reasonable jury could find that this factor weighs in favor

13  of Mr. Kast.

14        The second factor is the nature of the work, which in this case are stock photos (which if

15  the Court credits the Hughes Declaration) are licensed by Plaintiffs to third parties for a nominal

16  sum.  (Hughes Decl. at ¶¶ 3, 18 ).  That is their business.  From Mr. Kast's standpoint, the photos

17  were of no value to him because they projected the wrong image for the site; he did not select

18  them. (Kast Decl. 1 ¶ 7)(Docket No. 54).   A reasonable jury could find that the photos

19  themselves were not of particular value or uniqueness.

20        The third factor is whether the entirety of the photos was copied.  There is no dispute that

21  Only Websites copied the entirety of the photos.  However, this does not preclude a finding of

22  fair use, especially where (as here) the ultimate use of the works was to be non-existent.  *Sega,*

23  977 F.2d at 1526-1527.  Again, from the standpoint of Mr. Kast, there is no dispute that he never

24  intended to use the photos in the final web site; that is why he licensed replacement photos.

25

1    The fourth factor is the effect on the potential market for the photos. Here, from Mr.

2   Kast's standpoint, there was none: the photos were to be replaced with the licensed photos in the

3   final web site. And when Only Websites published the photos, they were removed immediately.

4   Again, if the Court credits the Hughes Declaration, the amount of money in terms of lost license

5   fees for the use in the original draft of the website was $300. (Hughes Decl. at ¶ 19). The photos

6   are still available to be licensed for the license fee set forth in the draft declaration. Although

7   Mr. Hughes purports to testify that a license is necessary to keep track of the photos, this is

8   belied by the fact that Plaintiffs had no problem immediately finding their "watermark" on the

9   photos when Only Websites published them without Mr. Kast's permission. (Kast Decl. 1 ¶

10  11)(Docket No. 54). That precipitated the demand letter and the gigantic monetary demand that

11  led to this motion. While counsel asserts that allowing the fair use defense here would "destroy

12  Plaintiffs' business" (Pl. Mem. at 20:5) that is ridiculous – and even Mr. Hughes in his unsigned

13  declaration does not make that statement. The hyperbolic assertion that Mr. Kast is asking the

14  Court to rule as a matter of law that anyone can copy a photo for a comp use (id. at 20:1-4) is

15  also wrong; Mr. Kast asserts that in this case on these facts and given his level of involvement in

16  the copying without his permission by Only Websites in the initial developmental draft of the

17  web site, a reasonable jury could find that the use to the extent he is personally liable was "fair."

18      These factors are not exclusive, and the defendant's good faith can be considered in

19  determining whether the defense is appropriate. *See Campbell v. Acuff-Rose Music, Inc.,* 510

20  U.S. 569, 585 n.18 (1994); *Fisher v. Dees,* 794 F.2d 432, 437 (9th Cir. 1986). There is no

21  question but that Mr. Kast acted in extreme good faith. He never asked Only Websites to use

22  Plaintiffs' photos, he never gave them to Only Websites, he immediately decided that they were

23  unsuitable for the Atherton Trust web site, he understood that he could not use photos unless

24  they were licensed, he procured licenses for the photos he intended to use in the web site and he

25

1   provided those to Only Websites.  If he is liable for Only Websites' incompetence on a

2   technicality, this factor weighs strongly favor of his assertion of a fair use defense.  This would

3   further the interests of the Copyright Act because its Draconian terms were never intended to

4   force  innocent people who did everything they were required to do (such as obtaining

5   permissions for the photos they planned to use) and who relied on third party contractors to

6   execute their instructions to pay hundreds of thousands of dollars in damages and attorneys' fees

7   to stock photographers.

8          On balance, and construed most favorably to Mr. Kast, a reasonable jury could find that

9   the factors are neutral or weigh in his favor.  The motion should therefore be denied.

10  **V.      CONCLUSION**

11         When  stripped  of  all  the  innuendo  and  rhetoric,  and  the  assertions  of  counsel

12  masquerading as "evidence," Plaintiffs have failed to show through admissible evidence the

13  absence of a genuine issue of material fact on their Claims or the Fair Use Defense.  The entirely

14  of the record shows that Mr. Kast did the responsible thing every step of the way by licensing

15  photos for use in the web site.  Plaintiffs never explain why, in light of that undisputed facts, Mr.

16  Kast would have used, or approved of Only Websites' use of, Plaintiffs' photos in the web site

17  that was made available to the public or why he would have approved the publication of an

18  unfinished, non-functional web site.  It simply makes no sense.  This is especially so in light of

19  the undisputed fact that he licensed photos for the web site.

20         At bottom, the record contains the testimony of only one percipient witness, Mr. Kast,

21  and it contradicts the testimony and argument of Plaintiffs' counsel in all material respects.

22  Thus, the success of Plaintiffs' case rests on making Mr. Kast out to be a villain and a liar but the

23  Court cannot decide his credibility on this motion; it must decide the motion based on the

24  //

25

1  admissible evidence.  And while Plaintiffs' counsel labors mightily to make lemonade out of

2  lemons, the facts and the evidence make it very clear that Mr. Kast did nothing wrong here.

3       The motion should be denied.

4            Respectfully submitted,

5            **LAW OFFICE OF PAUL W. REIDL**

6

7       By: _____

8

9  Dated: September 16, 2014
     Paul W. Reidl (CA Bar No. 155221)
     LAW OFFICE OF PAUL W. REIDL

10       241 Eagle Trace Drive
     Half Moon Bay, California 94019
     Telephone: (650) 560-8530
     paul@reidllaw.com

11       *Attorney for Defendant, Kraig R. Kast*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## <u>CERTIFICATE OF SERVICE</u>

2

I, Paul W. Reidl hereby certify that on September 16, 2014, I served a true and correct

3

copy of the foregoing

4

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

5

on the following counsel of record by e-mail via the Court's CM/ECF filing system:

6

Law Offices of Robert K. Wright
Robert K. Wright (SBN 73235)

7

rkwlaw@earthlink.net
301 North Lake Avenue, Suite 700

8

Pasadena, CA. 91101

9

and

10

NELSON & McCULLOCH LLP
Kevin McCulloch

11

kmcculloch@nelsonmcculloch.com
155 East 56th Street

12

New York, New York 10022

13

14

/s/ Paul W. Reidl
Paul W. Reidl (SBN 155221)

15

paul@reidllaw.com
Law Office of Paul W. Reidl

16

241 Eagle Trace Drive
Half Moon Bay, CA 94019

17

(650) 560-8530

18

*Attorney for Defendant*

19

20

21

22

23

24

25