Law Offices of Robert K. Wright
Robert K. Wright (SBN 73235)
rkwlaw@earthlink.net
301 North Lake Avenue, Suite 700
Pasadena, CA. 91101
Telephone: (626) 796-2664
Fax: (626) 796-1601

NELSON & McCULLOCH LLP
Kevin McCulloch (*pro hac vice*)
kmcculloch@nelsonmcculloch.com
155 East 56th Street
New York, New York 10022
Telephone: (212) 355-6050
Fax: (646) 308-1178

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICKSON PRODUCTIONS, INC. and JIM ERICKSON,<br><br>    *Plaintiffs*,<br><br>    v.<br><br> KRAIG R. KAST,<br><br>    *Defendant*. | Case No. 5:13-CV-05472-HRL<br><br>ECF Case<br>Electronically Filed<br><br><br>Time: 10:00 a.m.<br>Date:  October 14, 2014<br>Judge:  Hon. Howard R. Lloyd<br>Courtroom: 2 (5th Floor)<br><br>Complaint Filed:  March 12, 2012<br>Case Transferred: December 3, 2012 |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KAST'S MOTION FOR SUMMARY JUDGMENT

---

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT                           - 1 -                    CASE NO. 5:13-CV-05472-HRL

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................1

TABLE OF AUTHORITIES ..........................................................................................................2

PRELIMINARY STATEMENT ....................................................................................................3

cOUNTERSTATeMENT OF UNDISPUTED FACTS .................................................................4

SUMMARY OF ARGUMENT ......................................................................................................6

ARGUMENT ..................................................................................................................................8

I.     DEFENDANT KAST'S MOTION IS UNTIMELY. ........................................................ 8

II.    APPLICABLE LEGAL STANDARD. ................................................................................ 9

III.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COPYRIGHT INFRINGEMENT CLAIMS AGAINST DEFENDANT KAST FOR COUNTS I AND II OF THE COMPLAINT. ..................................................................... 9

    A.   Elements of Plaintiffs' Copyright Claims. ..........................................................9

    B.   Kast Is Not Entitled To Summary Judgment On Plaintiffs' Infringement Claims Because, At A Minimum, Genuine Disputes Exist As To Material Facts. ............................................................10

    C.   Defendant's "Fair Use" Defense Is Frivolous. .................................................13

CONCLUSION ...........................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .................................................................................................................. 9

*Celotex v. Catrett*, 477 U.S. 317 (1986) ....................................................................... 8

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ................................................... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................................................................................................................. 8

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal. 2008) ..................................................................... 8, 9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) .................................................................................................................. 9

*Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959 (9th Cir. 1990) .................................................................................................................. 8

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) .............................................................. 8

Plaintiffs Erickson Productions, Inc. ("Erickson Productions") and Jim Erickson ("Erickson") (collectively "Plaintiffs"), by and through undersigned counsel, hereby submit this memorandum of law in opposition to Defendant Kraig Kast's ("Defendant" or "Kast") motion for summary judgment.

**PRELIMINARY STATEMENT**

For the reasons set forth more fully below, Kast's motion is untimely and should not be considered by the Court. In the event that the Court overlooks Kast's failure to file his motion by the deadline set by the Court, the record makes clear that Kast's arguments are without merit and do not support judgment as a matter of law in his favor.

Kast's motion pertains to the same claims and addresses the same questions of law and fact that are the subject of Plaintiffs' previously filed Motion for Partial Summary Judgment. (Dkt. No. 51.) Plaintiffs thus incorporate by reference here all arguments, analysis, facts, and evidence set forth in their timely-filed motion and the memorandum of law and declarations filed in support thereof, and Plaintiffs rely on these filings to oppose Kast's motion for summary judgment.

The Court also should look past the irrelevant and unsupported arguments by Kast regarding his financial circumstances and Plaintiffs' motives in pursuing these claims. According to Kast's motion, he "does not have any insurance to cover this claim" and "is now retired and living on Social Security and does not have the assets to pay Plaintiffs $450,000 and their attorneys' fees."[1]  (Def. Mtn. at 5 & 6.)  Defendant's counsel then quips that: "This is immaterial to Plaintiffs" because, as according to the unsupported suppositions of Defendants' counsel, "a verdict of infringement is strategically important to their copyright enforcement business because they want to establish the principle that anyone who hires a web design firm is

---

[1] Kast's claims in this regard appear to be false. *See* McCulloch Decl. Ex. 2.

strictly liable for that firm's conduct." (*Id.* at 6.)   In addition to being replete with falsehoods and mistakes, none of this is remotely relevant to the question of whether Kast is liable for copyright infringement.

Although Mr. Kast's motives and personal financial situation may be relevant to the *damages* that a jury may award because statutory damages are available in this case and thus the jury must consider whether the damages award is sufficiently punitive, these factors have no bearing on the legal question of whether he is *liable* for copyright violations.  The Defendant's motives and financial circumstances are not relevant to determining liability because infringement claims under the Copyright Act present questions of strict liability and thus factors like malice, scienter, etc. are not relevant to the Court's analysis.

Although these issues are entirely irrelevant to the questions presented on Kast's motion, what Defendant's counsel appears to be trying to do is trying to create sympathy for his client in a desperate hope of gaining a favorable ruling on that basis alone.  The Court should not be duped by Kast's tactics.

## COUNTERSTATEMENT OF UNDISPUTED FACTS

Plaintiffs object to and oppose Kast's statement of proposed undisputed facts. (Def. Mtn. at 7-10.)  Kast's characterization of the record is inaccurate and most of his proposed "facts" are supported only by Kast's own self-serving declaration.  Plaintiffs thus refer the Court to Plaintiffs' Memorandum of Law for a more accurate accounting of the record.

For instance, Kast claims that as of the date of Plaintiffs' copyright notice letter dated July 12 ,2011, he "had not authorized the developmental web site to be published and available to be seen by actual and potential clients because it was incomplete, it did not work and it was full of errors." (Kast Decl. ¶ 11.)  In truth, however, Kast personally approved the "launch" of the live website on March 31, 2011.

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT                        - 4 -                    CASE NO. 5:13-CV-05472-HRL

According to Kast's own e-mails, he originally intended to launch the website on February 1, 2011 but apparently felt that aspects of the website were not complete and thus decided to delay the launch. *See* McCulloch 9/2/14 Decl. (Dkt. No. 53), Ex. N at 5 ("Our target launch was Feb. 1st now I will have to slip it to Feb. 15."). According to Kast, however, the delay was costing Kast substantial revenue and thus he personally instructed Only Websites to publish the website even though the design was not finished, stating in an e-mail dated June 8, 2011 that: "The project was rushed out on March 31st because it was so late and it was hurting my opportunity to earn revenue from the state court system otherwise, I would not have launched until the site was finished." McCulloch 9/2/14 Decl. Ex. Q (K199-K200) at 1.

Similarly, the July 21-22, 2011 e-mails attached as Exhibit 8 to Kast's declaration make clear that Kast was fully aware that Only Websites had launched the website while still working on a new website design. Indeed, Only Websites expressly refers to different URL addresses and the discussion makes clear that Kast not only was fully aware that the Atherton Trust website was live and operational, but that **he had actual control over all changes to the live website**:

> We sent you a completion of all the March edits we have on July 7. . . . They are located at http://www.athertontrust.com/new/  They are at the /new/ site until you approve them for the live http://www.athertontrust.com/ site.

Kast Decl. Ex. 8 at 1 (K260).

This evidence directly contradicts Kast's claim that, as of the date he received Plaintiffs' copyright notice letter on July 12, 2011, he "had not authorized the web site to be published and available to be seen by actual and potential clients on the internet." (Def. Mtn. at 9:11-12.)

Kast's July 21-22 exchange with Only Websites also is revealing because Only Websites specifically states:

> Concerning the possible changes because of the Wells Fargo copyright issues, please let me know if there are any definite changes you want to make or if we will wait to see if there is a judgment of copyright infringement.

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT                    - 5 -                    CASE NO. 5:13-CV-05472-HRL

*Id.* If Only Websites still was waiting for Kast's approval to remove Plaintiffs' photos on July 22, then Kast's claim in this motion that Plaintiffs' photos were removed from the website "the next day" after he received Plaintiffs' July 12, 2011 letter must be false.

Perhaps the only factual allegation that appears true is Kast's concession, *finally*, that "[u]nder the written agreement with Only Websites, Atherton Trust was responsible for obtaining the permissions to use any photos it selected for the web site[.]" (Def. Mtn. at 8:5-6.) As Kast's agreement with Only Websites provides, the "Client agrees to provide content and other material" for the website design and the "Client is responsible for obtaining copyright releases and licenses on all photographs it sends to Provider." *See* Kast Decl. Ex. 1 at 1 & 2 (also *see* McCulloch 9/2/14 Decl. Ex. K). A representative of Only Websites also advised Kast that "[t]he contract clearly states that all photos on the website are the responsibility of the owner of the website." *See* McCulloch Decl. 9/2/14 Ex. L (K332).

Ironically, however, Kast's concession on this point, along with the above-cited exchanges between Kast and Only Websites, directly supports Plaintiffs' claims that Kast was responsible for the content of the infringing website and also exercised direct and personal control over the conduct of Only Websites. These factors require a finding that, at a minimum, Kast is liable for contributory and vicarious infringement.

## SUMMARY OF ARGUMENT

First, Kast failed to file his dispositive motion by the deadline required under the Case Management Order entered by the Court on April 22, 2014 which, taken together with Local Rule 7-2(a) required that the parties file any dispositive motions no later than September 2, 2014. Kast failed to file his motion by the deadline set by the Court, and his motion offers no explanation or possible justification for his dilatory filing. The Court should not entertain Kast's

untimely filing and instead should strike the motion in its entirety.

In the event that the Court addresses Kast's motion on its merits, the record precludes granting summary judgment to the Defendant. In fact, the record conclusively establishes that Kast is liable for both direct and secondary copyright infringement.

Kast offers essentially only one argument against Plaintiffs' claims for direct infringement: namely that he did not copy or display Plaintiffs' photos. But that is false. Kast is registered owner of the Atherton Trust website and thus he is personally liable for the content on that website. Kast's motion offers no evidence for the Court to reach any other conclusion.

Kast's motion also fails to show that he is not liable, as a matter of law, for contributory or vicarious infringement. As shown on Plaintiffs' timely-filed motion, Kast exercised direct, personal, and complete control over the content and launch of the Atherton Trust website. Kast offers no evidence even suggesting that Only Websites acted on its own in copying and publishing Plaintiffs' photos without permission. On the contrary, the record shows that (1) Kast sent Only Websites a link to the Wells Fargo website and encouraged Only Websites to use this design in creating his website; (2) Kast acknowledged in written correspondence with Only Websites that he sent a "package" of materials to OW that included Plaintiffs' photos; (3) Kast's contract provided that he was responsible for the content of the website; (4) Kast exercised control over every minute design aspect of the website, including font choices; (5) Kast personally controlled the decision as to whether and when to launch the website; and (6) Kast obviously stood to benefit financially from the Atherton Trust website. Each of these facts is indisputable, and each is a factor that supports a finding that Kast is liable for secondary infringement as a matter of law.

Kast's motion also contends that the "fair use" defense should apply here. For the reasons set forth in Plaintiffs' motion, the fair use defense cannot possibly apply in this context

and Kast obviously has asserted this defense to unnecessarily multiply these proceedings.

**ARGUMENT**

**I.  DEFENDANT KAST'S MOTION IS UNTIMELY.**

The Case Management Order entered by the Court on April 22, 2014 (Dkt. No. 44) set the deadline for the last day for a hearing on dispositive motions for October 7, 2014. This deadline is significant because this Court's Local Rules require that "all motions must be filed, served and noticed in writing on the motion calendar of the assigned Judge for hearing not less than 35 days after filing of the motion." Civil L.R. 7-2(a). Accordingly, the deadline to file a dispositive motion was September 2, 2014 (35 days before the deadline for hearings on dispositive motions). Ignoring this deadline, Kast filed his motion on September 8, 2014 and noticed a hearing on his motion for October 14, 2014, dates which do not comply with the Court's order.

Under Federal Rule of Civil Procedure 16(d), the Court's scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). As the Ninth Circuit has noted, a "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992). Rather, scheduling orders "are the heart of case management" and are intended to alleviate case management problems. *Koplve v. Ford Motor Co.,* 795 F.2d 15, 18 (3rd Cir. 1986). Therefore, courts require that parties must "diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson v. Laureate, Inc.,* 186 F.R.D. 605, 607 (E.D. Cal. 1999).

Defendant has offered no explanation for his untimely filing but rather ignores the issue entirely in the hopes that the Court will overlook the deadlines set in its own orders. Even if

Kast had addressed the issue, there is no reasonable excuse for failing to comply with the deadlines set by the Court months ago.

Because Kast's filing is untimely under the Case Management Order, the Court should reject it outright and either strike it from the docket or deny the motion as untimely.

## II.   APPLICABLE LEGAL STANDARD.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party "bears the initial responsibility for informing the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then "present some evidence establishing each element of [his] claims on which [he] would bear the burden of proof at trial." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted). A party opposing summary judgment must come forward with specific evidence to show a disputed issue of fact. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

## III.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COPYRIGHT INFRINGEMENT CLAIMS AGAINST DEFENDANT KAST FOR COUNTS I AND II OF THE COMPLAINT.

### A.   Elements of Plaintiffs' Copyright Claims.

To prevail on their direct copyright infringement claim (Count I), Plaintiffs must establish (1) ownership of a valid copyright and (2) that Defendant violated any of their exclusive rights in the copyrighted Photos. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *Louis Vuitton*, 591 F. Supp. 2d at 1104.

Contributory infringement "requires (1) knowledge of another's infringement and (2)

either (a) material contribution to the infringement or (b) inducement of the infringement." *Louis Vuitton*, 591 F. Supp. 2d at 1106. A defendant is liable for contributory infringement "if the defendant engages in personal conduct that encourages or assists the infringement" activity. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001).

"Vicarious copyright infringement requires (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Louis Vuitton*, 591 F. Supp. 2d at 1110 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). "Whereas contributory infringement is based on tort law principles of enterprise liability and imputed intent, vicarious infringement's roots lie in the agency principles of respondeat superior." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

### B. Kast Is Not Entitled To Summary Judgment On Plaintiffs' Infringement Claims Because, At A Minimum, Genuine Disputes Exist As To Material Facts.

Kast's Amended Answer does not dispute that the copying and use of Erickson's Photos on the Atherton Trust website occurred or that such uses occurred without permission. Instead, Kast contends that he is not liable for direct infringement because he was not responsible for the copying of the Photos and, in a desperate attempt to avoid liability, also alleges that any unauthorized copying should be deemed a "fair use" merely because the Atherton Trust website was not operational or were not yet published to a "live" website. Both of these arguments are baseless and contradicted by all evidence in the record.

First, e-mail correspondence produced by Kast in discovery establishes that Kast was personally responsible for the content of the Atherton Trust website and personally copied the Erickson Photos from the Wells Fargo website and sent them to his website developer. For instance, Kast stated in one of his initial e-mails to Only Websites in December 2010 that he was requesting a website that was "similar" to the Wells Fargo website. *See* McCulloch 9/2/14 Decl.

Ex. H (K09-K011) at 3.  Subsequent e-mails from that same time confirm that, as requested by Kast, Only Websites designed the Atherton Trust based on the Wells Fargo site and then Kast made changes to the Wells Fargo design.  *See* McCulloch 9/2/14 Decl. Ex. I (K045).

The e-mail exchanges between Kast and Only Websites also repeatedly reflect that Kast was personally responsible for the "content" of the Atherton Trust website.  *See* McCulloch 9/2/14 Decl. Ex. J (K049-K050) at 1.  In fact, Kast's agreement with Only Websites states that the "**Client agrees to provide content and other material**" for the website design and provides that "**Client is responsible for obtaining copyright releases and licenses on all photographs it sends to Provider**."  McCulloch 9/2/14 Decl. Ex. K (K033-K036) at 1, 2.  A representative of Only Websites also advised Kast that "[t]he contract clearly states that all photos on the website are the responsibility of the owner of the website."  *See* McCulloch 9/2/14 Decl. Ex. L (K332).

Although Kast has failed (or refused) to produce all of his correspondence with Only Websites, the communications he has produced leave no doubt that Kast personally copied Erickson's Photos from the Wells Fargo website.  Indeed, Kast admitted in an e-mail to Only Websites on March 21, 2012 that he personally copied the content from the Wells Fargo website, including Plaintiffs' Photos, and sent that content to Only Websites to use in the development of the Atherton Trust website:

> The photos were part of a package that Clayton asked me to send to OW [Only Websites] which were examples of the types of websites that were used in my industry segment.  I sent Rocket several examples of sites one of which was the Wells Fargo Private bank ["WFPB"] site which became the base prototype for the Atherton site.  The WFPB sample site had three photos on it.

McCulloch Decl. Ex. M (K333-K337) at 1.

Records maintained by Only Websites identified as "call logs" also confirm that, on December 27, 2010, Kast explicitly instructed Only Websites to use "the content throughout the site as on the following page in the Wells Fargo site." McCulloch Decl. Ex. N ("OW Call Log")

at 5. And the call log from January 28, 2011 confirms that Kast himself delivered the photo and text content to Only Websites. *Id.* at 6-7. Following that call, Only Websites noted that "what [Kast] wants [is] very specific and detailed like the Wells Fargo site." *Id.* at 7.

This evidence directly contradicts Kast's contention that he did not copy Plaintiffs' photos and was not responsible for the photos being displayed on the Atherton Trust website. At a minimum, this evidence creates a genuine issue of dispute as to whether Kast did in fact copy Plaintiffs' photos and deliver them as "part of a package" that he delivered to Only Websites.

This evidence also creates a genuine dispute as to whether Kast, regardless of whether he did the actual copying, still is personally liable for the illegal publication of Plaintiffs' photos on a website that he owned. As the record shows, the Atherton Trust website was registered to a "Bob Wilson" but this appears to be an alias as the e-mail address for the registrant is kraigru@hotmail.com (which is for Kraig Rudinger, which is one of Mr. Kast's various aliases). *See* McCulloch Decl. Ex. 1.

Second, Kast also was responsible for the decision to publish the website. As shown above, Kast not only was aware that the website had launched, but he controlled that decision and also controlled whether any additional edits to the "new" website were pushed to the "live" website. Again, this evidence casts serious doubt on Kast's claim that he was not aware of or responsible for the decision to publish the Plaintiffs' photos. At a minimum, a genuine dispute exists on this crucial issue.

Because both of these factors relate to both direct and secondary forms of liability, the Court must deny Kast's motion and either grant Plaintiffs (timely) motion for summary judgment or, at the very least, permit these claims to proceed to trial.

### C. Defendant's "Fair Use" Defense Is Frivolous.

Defendant's pleadings also assert that Kast cannot be liable because his conduct is protected under the "fair use" doctrine under the Copyright Act. As set forth fully in Plaintiffs' motion, this defense is frivolous and must be rejected as a matter of law. (Dkt. No. 51 at 14-20.) Rather than address the issue again, Plaintiffs hereby incorporate those arguments by reference herein.

### CONCLUSION

Plaintiffs thus respectfully request that the Court STRIKE or DENY the Defendant's untimely and meritless motion for summary judgment.

Dated:  September 22, 2014
          New York, New York

                                        Respectfully submitted,

                                         s/ Kevin P. McCulloch
                                        NELSON & McCULLOCH LLP
                                        Kevin P. McCulloch (*pro hac vice*)
                                        155 East 56th Street
                                        New York, New York 10022
                                        T: (212) 355-6050
                                        F: (646) 308-1178
                                        kmcculloch@nelsonmcculloch.com

                                        -and-

                                        Law Offices of Robert K. Wright
                                        Robert K. Wright (SBN 73235)
                                        rkwlaw@earthlink.net
                                        301 North Lake Avenue, Suite 700
                                        Pasadena, CA 91101
                                        Telephone: (626) 796-2664
                                        Fax: (626) 796-1601

1 *Attorneys for Plaintiffs*

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28