UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERICKSON PRODUCTIONS, INC. and JIM ERICKSON,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>KRAIG R. KAST,<br><br>　　　　　Defendant. | Case No.  5:13-cv-05472 HRL<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE FAIR USE DEFENSE**<br><br>[Re: Dkt. 51] |

Plaintiffs Erickson Productions, Inc. and Jim Erickson sue for alleged copyright infringement. The court previously issued an order denying plaintiffs' summary judgment motion pertaining to the infringement claims. Upon consideration of the moving and responding papers, as well as the arguments of counsel, the court now issues this order granting plaintiffs' motion for summary judgment as to defendant Kraig R. Kast's fair use defense.[1]

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed.

Jim Erickson is a professional photographer who makes his living by licensing his photographs through his company, Erickson Productions, Inc. One of his clients is Wells Fargo Bank (Wells Fargo). Erickson says that Kast copied several of his photos from Wells Fargo's

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

1  website and used them without permission on the website for Kast's business, Atherton Trust.
2  Plaintiffs assert claims against Kast for copyright infringement, as well as for contributory and
3  vicarious copyright infringement.
4      That Erickson's photos were used on a version of Atherton Trust's website is not disputed.
5  Pointing out that the Atherton Trust website was designed by a third-party, Only Websites, Inc.
6  (OW), Kast nevertheless maintains that the use of the photos was a "fair use." Plaintiffs move for
7  summary judgment on the ground that the fair use defense does not apply to the facts of this case.
8  For the reasons discussed below, the court agrees.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See id. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only

point out 'that there is an absence of evidence to support the nonmoving party's case.'" Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. Id.

## DISCUSSION

Fair use is an affirmative defense that "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair." Monge v. Maya Magazine, Inc., 688 F.3d 1164, 1170 (9th Cir. 2012). As with all affirmative defenses, the defendant bears the burden of proof. Id. The doctrine is codified at section 107 of the Copyright Act, which provides:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107. The determination whether the fair use doctrine applies "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case

3

analysis." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577, 114 S. Ct. 1164, 127 L.Ed.2d 500 (1994). Additionally, the four statutory factors may not be treated in isolation; rather, "[a]ll are to be explored, and the results weighed together, in light of the purposes of copyright." Id. at 578. "The fair use doctrine thus permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." Id. at 577 (internal quotation marks omitted) (alteration in original).

"'Fair use is a mixed question of law and fact.'" Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1150 (9th Cir. 1986) (quoting Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 105 S. Ct. 2218, 2231, 85 L.Ed.2d 588 (1985)). Nevertheless, "[i]f there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." Id. at 1151.

### 1. First Factor—Nature of the Use

"The Supreme Court has stated that 'every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'" Monge, 688 F.2d at 1176 (quoting Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 451, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)). "Commercial use is a 'factor that tends to weigh against a finding of fair use' because 'the user stands to profit from exploitation of the copyrighted material without paying the customary price.'" Id. (quoting Harper & Row, 471 U.S. at 562, 105 S. Ct. 2218). However, even when "the use had a purely commercial purpose, the presumption of unfairness can be rebutted by the characteristics of the use." Hustler Magazine, Inc., 796 F.2d at 1152. The purpose of this inquiry is to determine "whether the new work merely 'supersede[s] the objects' of the original creation, ('supplanting' the original), or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" Campbell, 510 U.S. at 578-79, 114 S. Ct. at 1171 (citations omitted).

4

The more transformative the new work, the less significant other factors, like commercialism, become. Id.

      Kast now acknowledges that the use of the photos was commercial. He nevertheless contends that the commercial character of the use was minimal because he did not like the photos and never intended for them to be used in the final Atherton Trust website. His reliance on Sega Enterprises Ltd. v. Accolade, Inc., 977 F.2d 1512, 1522 (9th Cir. 2002) is misplaced. True, Sega observed that the "the commercial nature of a use is a matter of degree, not an absolute." 977 F.3d at 1522 (quotation and citation omitted). And, the Sega court did find that the first statutory factor weighed in the defendant's favor. But, Sega is factually inapposite. There, defendant did not simply copy plaintiff's copyrighted programming code. Rather, it used (i.e., disassembled) plaintiff's software in order to examine the unprotected functional elements of the program in order to develop or modify defendant's own games to be compatible with a particular gaming console. Under those circumstances, and because there was no other means of accessing the unprotected elements of the program, the Ninth Circuit agreed that defendant's use was for the purpose of fostering creative expression (i.e., developing new games) and that the commercial aspect of the use was "of minimal significance." Id. at 1523.

      Here, plaintiffs' photos were used to develop defendant's commercial website. Kast says that, like the defendant in Sega who was not interested in the protected elements of the plaintiff's software, he was similarly disinterested in plaintiffs' photos. But, unlike Sega, Kast has not presented any evidence suggesting that the use challenged here was transformative or for the purpose of fostering creative expression. Thus, the court finds no basis to conclude that the admittedly commercial use was of "minimal significance." Indeed, it is undisputed that the entire photos were copied and used exactly as they appeared on Wells Fargo's site. While Kast may not have liked the photos, this was a purely commercial use, and this factor weighs in plaintiffs' favor. Even if, arguendo, the court were to find that the use of plaintiffs' photos was of "minimal significance" (thereby, according to Kast, lowering the weight to be attributed to this factor), the remaining three factors weigh in plaintiffs' favor and against application of the fair use defense.

### 2. Second Factor: Nature of the Copyrighted Work

Kast argues that the photos were not particularly valuable or meaningful *to him*. That misses the point. "The second statutory factor, 'the nature of the copyrighted work,' turns on whether the work is informational or creative." Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1118 (9th Cir. 2000). That is because "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." Harper & Row, 471 U.S. at 563, 105 S.Ct. at 2218. Moreover, "[p]hotos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright." Monge, 688 F.3d at 1177. This factor weighs in plaintiffs' favor.

### 3. Third Factor: The Amount Used

It is undisputed that the photos were copied and used in their entirety. Kast correctly notes that this fact does not preclude a finding of fair use *per se*, but it does weigh against a fair use finding. Worldwide Church of God, 227 F.3d at 1118.

### 4. Fourth Factor: Effect upon the Potential Market for or Value of the Photos

"Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." Harper & Row, 471 U.S. at 566-67 (citation and quotation omitted). "In determining whether the use has harmed the work's value or market, courts have focused on whether the infringing use: (1) tends to diminish or prejudice the potential sale of [the] work; or (2) tends to interfere with the marketability of the work, or (3) fulfills the demand for the original work." Hustler Magazine, Inc., 796 F.2d at 1155-56 (internal citations and quotations omitted).

Here, Kast contends that, at most, plaintiffs lost $300 in licensing fees for use of the three photos, which he emphasizes were only used as placeholders for the photos that appeared in the final version of the Atherton Trust website. But, "to negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'" Harper & Row, 471 U.S. at 568 (quoting Sony Corp., 464 U.S. at 451) (emphasis added). As discussed above, it is undisputed that Erickson makes his living by

licensing his photos, including the ones at issue here. Additionally, Jesse Hughes, the Director of Sales and Marketing for Erickson Productions, Inc., avers that plaintiffs require customers to pay at least a $100 licensing fee, even for internal layout or "placeholder" use of plaintiffs' photos. (Hughes Decl. ¶ 19).[2] Thus, if the use challenged here should become widespread, it is not difficult to conceive that it would adversely affect the potential market for plaintiffs' photos. Kast has presented no evidence to the contrary. This factor weighs in plaintiffs' favor.

Essentially, the gist of Kast's position is that, while this was a commercial use of plaintiffs' photos, the challenged use is, from his perspective, a "fair use" because the fact that the photos were used at all is OW's fault, and not his. That is not a "fair use" issue. And, under the circumstances presented here, the court agrees that the fair use defense does not apply.

## ORDER

Based on the foregoing, plaintiffs' motion for summary judgment is granted as to defendant's fair use defense.

**SO ORDERED**.

Dated:   October 28, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[2] As noted in the court's prior summary judgment order re the infringement claims, defendant's objections to the Hughes declaration are overruled.

7

5:13-cv-05472-HRL Notice has been electronically mailed to:

Kevin P McCulloch     kmcculloch@nelsonmcculloch.com, holland@nmiplaw.com, layala@nmiplaw.com

Paul William Reidl     reidl@sbcglobal.net

Robert K Wright     rkwlaw@earthlink.net