Paul W. Reidl (SBN 155221)
paul@reidllaw.com
Law Office of Paul W. Reidl
241 Eagle Trace Drive
Half Moon Bay, CA 94019
(650) 560-8530

*Attorney for Defendant, Kraig R. Kast*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICKSON PRODUCTIONS, INC. and JIM ERICKSON, *Plaintiffs*, v. KRAIG R. KAST, *Defendant*. | Case No. 5:13-CV-05472-HRL **DEFENDANT'S TRIAL BRIEF** |

Defendant Kraig R. Kast hereby submits his trial brief in this case.

I.  **NATURE OF THE CASE**

The admissible evidence and testimony will show the following. It is not disputed that Plaintiffs own the copyright in the photos at issue in this case.

This is a copyright infringement case. Plaintiff Erickson is a photographer who owns a "stock photography" business that licenses his photographs to third parties. A substantial part of his business income is derived from compelling people who use his photos without permission to pay, or have their insurance carriers pay, damages for copyright infringement. Defendant is the

//

Managing Trustee of a Delaware statutory trust, Atherton Trust, which was in the financial planning business. He does not have any insurance to cover this claim.

Atherton Trust hired a web site design company, Only Websites, to build a "2.0" version of its web site. Only Websites used a Wells Fargo financial services website as the reference for the initial developmental version of the new Atherton Trust site. This contained three of Plaintiffs' photographs. Atherton Trust did not authorize Only Websites to copy these photos; it told Only Websites that it would use other photos and it licensed those from Plaintiffs' competitors. Only Websites was instructed to use these licensed photos in the final web site.

Without Atherton Trust's permission, Only Websites made the developmental version of the web site "live" on the internet even though it was non-functional, incomplete and contained numerous errors. This developmental site contained Plaintiffs' three photos which Only Websites had been previously instructed not to use. Plaintiffs' web crawler immediately detected them and they sent a demand letter to Atherton Trust. Mr. Kast immediately instructed Only Websites to remove the photos, and they were removed the day after the letter was received.

Plaintiffs were not satisfied by the immediate compliance; they wanted money – and lots of it. Mr. Kast responded angrily to what he perceived as an attempted shakedown. When Atherton Trust refused to pay, Plaintiffs sued Only Websites, Atherton Trust and Mr. Kast in the Southern District of New York for maximum statutory damages ($450,000) and their attorneys' fees and costs. The motions made by Atherton Trust and Mr. Kast to dismiss for lack of jurisdiction were granted. Plaintiffs' motion for default judgment against Only Websites was granted and Plaintiffs' motion for the award of maximum statutory damages and attorneys' fees is pending.

The parties have polar opposite views of the case, which is one reason why the day-long mandatory mediation was unsuccessful. Plaintiffs believe this is a slam-dunk case of wilful,

1  wanton and deliberate infringement by Mr. Kast so he should be ordered to pay them the
2  maximum statutory damages ($450,000) plus attorneys' fees and costs.

3  Mr. Kast believes he did not do anything wrong here. Atherton Trust was a victim of
4  Only Websites' incompetence and negligence. Only Websites copied the photos and put them
5  into the developmental site. Mr. Kast lacked the technical ability to do that (which is why he
6  hired a web development firm.) Atherton Trust did not authorize or condone the copying, use or
7  publication of the photos. To the contrary, it licensed the photos that were to be used on the web
8  site, gave them to Only Websites and told Only Websites to use them.

9  The amount of money demanded from Mr. Kast is irresponsibly disproportionate to what
10 occurred here even if secondary liability is found. In any event, Mr. Kast is now retired and
11 living on Social Security and does not have the assets to pay Plaintiffs $450,000 and their
12 attorneys' fees or even what they have demanded in settlement.

13 **II   ARGUMENT**

14 **A.   Summary of Argument**

15 The direct infringer was and could only have been Only Websites. It copied Plaintiffs'
16 photos and inserted them into the initial developmental version of the web site. The evidence will
17 show that Mr. Kast did not provide Plaintiffs' photos to Only Websites or ask that they be used.
18 To the contrary, the testimony will show that he rejected them immediately upon seeing the
19 initial draft of the developmental website and he licensed photos from Corbis and Shutterstock
20 that he provided to Only Websites for use on the web site. There is no vicarious liability because
21 neither he nor Atherton Trust benefitted financially from the use of Plaintiffs' photos on the
22 developmental web site. It was a draft that did not result in any business.

23 //
24 //

25 DEFENDANT'S TRIAL BRIEF        - 3 -         CASE NO. 5:13-CV-05472-HRL

### B. Direct Infringement (Count I)

Under the Copyright Act, direct infringement occurs when a person without permission reproduces, distributes, displays, or performs a copyrighted work, or prepares a derivative work based on a copyrighted work. 17 U.S.C. § 106. Direct infringement requires a plaintiff to show that it owns the works in question and that at least one of the exclusive rights under the Copyright Act was violated. *Perfect 10, Inc. v. CCBILL LLC*, 481 F. 3d 751, 768 (9th Cir. 2007)(infringement occurs when alleged infringer engages in activity listed in § 106); *A & M Records, Inc. v. Napster, Inc*., 239 F. 3d 1004 , 1014 (9th Cir. 2001)(the direct infringers were the users of the file-sharing web site); *O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1085 n. 3 (9th Cir.1989) ("The word `copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights. . . ."); *see also Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir.1987).

A plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement. *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc*., 907 F. Supp. 1361, 1369-70 (N.D. Cal.1995) (direct infringement requires a volitional act by defendant; automated copying by machines occasioned by others not sufficient); *CoStar Group, Inc. v. LoopNet, Inc.,* 373 F.3d 544, 555 (4th Cir.2004) ("Agreeing with the analysis in *Netcom*, we hold that the automatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an ISP strictly liable for copyright infringement under §§ 501 and 106 of the Copyright Act."). As stated in the Ninth Circuit's Civil Jury Instructions § 17.0:

> One who [reproduces] [prepares derivative works from] [distributes] [performs][displays] a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright

The testimony and evidence will show that Kast was not a direct infringer because he did not copy, reproduce or display the photos. He did not copy and provide them to Only Websites.

DEFENDANT'S TRIAL BRIEF                - 4 -                CASE NO. 5:13-CV-05472-HRL

1  He did not have the technical ability to put the photos into the developmental web site. Only

2  Websites copied the photos from the Wells Fargo web site and it was the only party that had the

3  technical capability to insert the photos into the Atherton Trust web site **it was building** and

4  publish it. If there was copyright infringement, Only Websites was the direct infringer not Mr.

5  Kast (and Plaintiffs already have a judgment against Only Websites).

### C. Secondary Liability

Plaintiffs have asserted that Mr. Kast is personally liable because he hired Only Websites on behalf of Atherton Trust and he was the primary contact with Only Websites. Plaintiffs would have the jury find that a person who hires a web designer is strictly liable for any direct infringement by the web designer but this has never been the law in this Circuit. Secondary liability requires more: some kind of material, volitional conduct by the defendant and/or financial benefit from the infringement. The testimony and evidence will show that there was neither.

#### 1. Contributory Infringement (Count II)

Contributory infringement occurs when a person: (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement. *Perfect 10, Inc. v. Visa International Services Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("one infringes contributorily by intentionally inducing or encouraging direct infringement.")  The Court in *Grokster* made it clear that inducement requires "affirmative steps taken to foster infringement." As stated in the Ninth Circuit Civil Jury Instructions § 17.21:

> A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and [induces] [causes] [or] [materially contributes to] the activity.

1    The evidence will show that Mr. Kast did not contributorily infringe Plaintiffs' copyright in its photos.  On the first element, there will be no evidence that Mr. Kast knew or should have known that Only Websites needed, and did not have, permission to use the photos in the initial draft of the developmental version of the website. As a layman, he did not know that putting the photos into the developmental version of the website without permission could be considered to be copyright infringement.  In any event, the testimony will be that he had no intention of using the photos in the initial version of the developmental web site or the final version of the web site. Only Websites sent him the initial developmental version of the web site containing the photos, he immediately rejected it, he began looking for appropriate photos and he ultimately licensed them for use on the site.

On the second element, the testimony and evidence will show that Mr. Kast did not engage in any volitional act that caused the infringement.  He did not provide the photos to Only Websites and he did not induce Only Websites to use them.  Mr. Kast always understood that the photos used in the published web site would need to be licensed. He did not approve Only Websites' initial version of the development site that contained Plaintiffs' photos, and so he found photos that were more suitable to his business, licensed them and instructed Only Websites to use them. He did not authorize the publication of the non-functional, incomplete developmental web site containing Plaintiffs' photos.  At bottom, he took no intentional "affirmative steps to foster infringement" of Plaintiffs' copyright. **To the contrary, the evidence and testimony will show that every step he took was a conscious one to avoid infringement; he licensed the photos he wanted Only Websites to use in the web site and told Only Websites to use them.**

Stated somewhat differently, the Plaintiffs would have the jury find Mr. Kast engaged in an elaborate ruse specifically designed to rip off Plaintiffs: when he said he did not want to use

1  Plaintiffs' photos he meant the opposite, when he licensed photos from Corbis and Shutterstock

2  he never intended to use them, that when he instructed Only Websites to use the licensed photos

3  he meant the opposite, **and that he did all of this this in order to avoid paying Plaintiffs the**

4  **license fees that he paid to Corbis and Shutterstock!**

### 2. Vicarious Infringement (Count II)

Vicarious copyright infringement requires a plaintiff to prove that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity. *Perfect 10, Inc. v. Visa International Services Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). In other words, "One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Golden-Mayer Studios, Inc. v. Grokster, Ltd,* 545 U.S. 913, 930, 125 S.Ct. 2764 (2005); *see Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259, 263 (9th Cir. 1996). "Financial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (*quoting A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001)) (internal quotation marks omitted). The second element of the vicarious infringement test requires showing a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps*." See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1110 (N.D. Cal. 2008) As stated in the Ninth Circuit's Civil Jury Instructions § 17.20:

> A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.]

The evidence and testimony will show nothing but responsible behavior by Mr. Kast and the Atherton Trust. There is no evidence that either profited from any infringement. Moreover, the evidence and testimony will show that he could not have profited from any infringement

because the web site containing the photos never worked properly, could not be found by actual or potential customers because it had no metatags, and could not have generated income for anyone because it was non-functional.

In short, this is not a case like *Grokster*, *Napster* or *Fonovia* where the defendant was profiting from the infringing activity and turning a blind eye toward it; the exact opposite occurred here.  The Atherton Trust did not make any money on the web site when it contained the photos and neither did Mr. Kast.

### D. Damages

The testimony and evidence will show that any infringement was innocent.  Ninth Circuit Civil Jury Instruction § 17.26.  In fact, Mr. Kast always understood that any photos used in the web site required a license and he licensed the photos that he wanted to use.  Thus, at best the damages should be $200 per photo.  Defendant believes it is entitled to its attorneys' fees to deter these kinds of excessive claims against innocent defendants.

The testimony and evidence will show that the amount of damages being sought by Plaintiffs is grossly disproportionate and many multiples of the license fee paid by Wells Fargo for the use of the photos on its site or than what Mr. Kast paid to Corbis and Shutterstock for the photos he intended to use.  There is no direct evidence of wilful conduct that would justify an enhanced damages award. The evidence and testimony will show that Mr. Kast did not know that by inserting the photos into the first draft of the web site Only Websites was infringing Plaintiffs' copyrights. Without knowledge there can be no finding of willfulness.  Ninth Circuit Civil Jury Instruction § 17.27.  Knowing this, Plaintiffs seek to point to Defendant's refusal to pay damages, his vigorous attempts to litigate the case, and his objections in discovery, as "evidence"

//

//

from which the jury can infer that he knew he was infringing on Plaintiffs' copyrights. Defendant has filed a motion in limine to preclude this evidence and testimony on various grounds.

Respectfully submitted,

**LAW OFFICE OF PAUL W. REIDL**

By: *[signature: Paul Reidl]*

Dated: January 29, 2015

Paul W. Reidl (CA Bar No. 155221)
LAW OFFICE OF PAUL W. REIDL
241 Eagle Trace Drive
Half Moon Bay, California 94019
Telephone: (650) 560-8530
paul@reidllaw.com

*Attorney for Defendant Kraig R. Kast*

## CERTIFICATE OF SERVICE

I, Paul W. Reidl hereby certify that on January 29, 2015, I served a true and correct copy of the foregoing

## DEFENDANT'S TRIAL BRIEF

on the following counsel of record by e-mail via the Court's CM/ECF filing system:

Law Offices of Robert K. Wright
Robert K. Wright (SBN 73235)
rkwlaw@earthlink.net
301 North Lake Avenue, Suite 700
Pasadena, CA. 91101

and

NELSON & McCULLOCH LLP
Kevin McCulloch
kmcculloch@nelsonmcculloch.com
155 East 56th Street
New York, New York 10022

/s/ Paul W. Reidl
Paul W. Reidl (SBN 155221)
paul@reidllaw.com
Law Office of Paul W. Reidl
241 Eagle Trace Drive
Half Moon Bay, CA 94019
(650) 560-8530

*Attorney for Defendant*