UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ERICKSON PRODUCTIONS, INC, et al.,
Plaintiffs,
v.
KRAIG R. KAST,
Defendant.

Case No. 5:13-cv-05472-HRL

**ORDER GRANTING IN PART ERICKSON'S MOTION TO AMEND THE JUDGMENT**

Re: Dkt. No. 189 , 221, 231

**BACKGROUND**

Erickson Productions, Inc. and Jim Erickson (collectively referred to in the singular as "Erickson") sued Kraig Kast for copyright infringement, alleging that he used, without permission, three of Erickson's photographs on a website for Kast's business, Atherton Trust. Erickson and Kast expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636; Fed. R. Civ. P. 73. Erickson's infringement claims proceeded to a jury trial. The jury returned a verdict for Erickson and awarded statutory damages of $450,000. Judgment was entered accordingly. Kast appealed that judgment, and the appeal remains pending.

At trial, there was some evidence presented about trusts that Kast managed, including the Kraig Kast Living Trust and another one called the Black Oak Trust. With respect to the latter,

Kast testified that his fiancée, Mariellen Baker, was the beneficiary. In December 2015, several months after judgment was entered, Kast says he resigned as trustee of the Black Oak Trust and Baker became the successor trustee.

Meanwhile, Erickson proceeded with efforts to collect on the judgment. He propounded written judgment debtor discovery to which, he says, Kast never responded. Erickson also served subpoenas on Baker, as well as a number of financial institutions and other entities.[1]

Erickson now moves to amend the judgment to add judgment debtors, including Kast's birth name and alias (Warren Craig Rudinger) and various "doing business as" fictitious names; the "Kraig Kast Living Trust"; the "Black Oak Trust (a/k/a The Black Oak Trust, dated March 11, 1995)"; and Kast as "Trustee of the Black Oak Trust (a/k/a Kraig Kast, Trustee of The Black Oak Trust, dated March 11, 1995)." (Dkt. 189 at 2). Additionally, although she was not a party to the underlying litigation, Erickson moves to add Baker, as "Successor Trustee of the Black Oak Trust (a/k/a Mariellen Baker, Successor Trustee of the Black Oak Trust, dated March 11, 1995)" as a judgment debtor. (Id.). The basic premise of the motion is that Kast has used various aliases, "doing business as" fictitious names, and trusts in order to confound creditors and avoid paying the judgment. As for Baker and the Black Oak Trust, Erickson contends that they can be added to the judgment on the grounds that they are Kast's alter egos and that Baker is a successor to the debt.

Pursuant to an interim order, the parties submitted briefing on the question of this court's authority to entertain Erickson's motion to amend, in view of Kast's pending appeal. Erickson maintained that the requested relief would have no substantive impact on the appeal because, as oft-recited by California cases with respect to such motions, he does not seek to add new debtors, merely the true ones. Baker/Black Oak Trust, on the other hand, argued that the motion seeks to substantively amend the judgment to hold liable additional persons and entities who had no connection to this lawsuit. As for Kast, he suggested that this court should defer ruling on the

[1] Kast and Baker/Black Oak Trust have filed several motions to quash the subpoenas. The court will address those motions in a separate order.

motion to amend until after the Ninth Circuit decides his appeal and that the state court should address issues concerning trusts and alter ego liability.[2]

Although this court harbored some doubt as to the propriety of the relief Erickson sought, it nevertheless proceeded with full briefing and hearing on the merits of the motion to amend the judgment. In his reply brief, Erickson submitted a number of additional documents he said he recently obtained in response to subpoenas and which, he claims, show that Kast (1) created multiple "Black Oak" trusts on the same day, with only slightly different titles; (2) transferred various properties to a revocable trust, despite his claims that the properties were placed in an irrevocable one; and (3) treated the various trusts as his personal piggy bank. All this, says Erickson, was done in an effort to confuse creditors and avoid paying the judgment.

After briefing was submitted, and just a few days prior to the hearing on Erickson's motion to amend, Baker/Black Oak Trust filed a motion for leave to submit a supplemental brief addressing this court's subject matter jurisdiction to entertain Erickson's motion (Dkt. 221). Because the court has an ongoing duty to evaluate its subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3), at the motion hearing the court granted Baker/Black Oak Trust's request and accepted the proffered supplemental brief. Additionally, at the motion hearing, the court inquired whether it is required to obtain Baker/Black Oak Trust's consent to proceed before a magistrate judge in these post-judgment proceedings. Everyone was given an opportunity to present oral argument on the issues. Additionally, at his request, Erickson was given leave to submit a supplemental written response on the subject matter and magistrate jurisdiction issues. And, at their request, Baker/Black Oak Trust were given leave to submit a supplemental written response to the arguments and evidence in Erickson's reply on the motion to amend.

Erickson filed his post-hearing supplemental brief on jurisdictional issues. Later that

[2] Kast also argued that Erickson's motion was brought too late because it was not filed within 28 days after entry of judgment under Fed. R. Civ. P. 59(e). The Ninth Circuit, however, has rejected that same argument, instead requiring that such motions be brought within a reasonable time. In re Levander, 180 F.3d 1114, 1121 n.10 (9th Cir. 1999). As will be discussed more fully below, Erickson argues that the full scope of Kast's alleged subterfuge with respect to the subject trusts and assets has only recently come to light.

evening, Baker/Black Oak Trust filed a post-hearing supplemental brief that did not address Erickson's reply arguments and evidence. Instead, Baker/Black Oak Trust chose to address subject matter and magistrate jurisdiction issues.[3] And, along with her supplemental post-hearing brief, she submitted a declination to proceed before a magistrate judge. (Dkt. 226).

During the pendency of this motion (involving several rounds of briefing on complex issues) and as made clear by Erickson's oral arguments presented, the focus of the motion shifted to whether the assets that Kast says are off-limits ever went to an irrevocable trust at all. As previewed above, Erickson contends that Kast transferred various properties to a revocable trust that he continues to own or control.

Having considered the moving and responding papers,[4] as well as the oral arguments presented, this court now grants in part Erickson's motion to amend as follows:

## DISCUSSION

### A. Subject Matter Jurisdiction

The question is whether Erickson's motion to amend the judgment falls within this court's ancillary jurisdiction. The Supreme Court has identified two purposes for which a court may exercise ancillary jurisdiction over a claim that would otherwise not fall within the court's jurisdiction: "'(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" Peacock v. Thomas, 516 U.S. 349, 354 (1996) (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379–380, 114 S.Ct. 1673, 1676, 128 L.Ed.2d 391 (1994)). Arguing that he is seeking to collect on the judgment, Erickson says it is the second purpose that applies here. See id. at 356 ("We have

---

[3] Erickson moves to strike Baker/Black Oak Trust's post-hearing supplemental brief on the ground that the brief does not address any of the issues for which leave to file that brief was given (Dkt. 231). As discussed above, however, the court has a continuing duty to evaluate its jurisdiction; and, the court did solicit views concerning magistrate judge jurisdiction. Accordingly, the court has accepted and considered Baker/Black Oak Trust's post-hearing supplemental brief. Erickson's motion to strike is denied.

[4] The court conditionally sealed a number of documents submitted by Erickson, primarily to protect information such as Social Security numbers, account numbers, and the like. This order only discusses information from those documents that are part of the public record in this matter.

reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments.").

As between those cases where ancillary jurisdiction exists and those where it doesn't, caselaw teaches that the key inquiry is whether the judgment creditor merely seeks to collect a judgment or whether it seeks to hold a new party directly liable for the original judgment on new claims or theories. If it is the latter, courts have generally found that there is no ancillary jurisdiction, absent an independent basis for federal jurisdiction. Deciding where a case falls within this framework necessarily requires analysis of the nature of the postjudgment claims and allegations asserted in a particular case.

For example, in Peacock, after unsuccessful attempts to collect the judgment, the judgment creditor filed a new suit in federal court against the judgment debtor (a corporate entity) and the debtor's officer, alleging that the officer conspired to siphon the debtor's assets to prevent satisfaction of the judgment. In concluding that the district court did not have ancillary jurisdiction over that matter, the Supreme Court reasoned that ancillary jurisdiction may not be exercised to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. 516 U.S. at 357. However, the Court declined to address arguments that the new action was simply an attempt to collect the judgment because neither the parties nor the lower courts had ever characterized the suit in that way. And, indeed, the judgment creditor expressly stated that the new action was not one to collect the judgment, but rather to pierce the corporate veil in order to establish the officer's liability for the judgment against the debtor. Id. at 357 n. 6.

Several months after Peacock was decided, the Ninth Circuit addressed the issue in Thomas, Head, & Greisen Employees Trust v. Buster, 95 F.3d 1449 (9th Cir. 1996). There, the judgment creditor brought supplementary proceedings against the debtor to collect on the judgment and then subsequently filed an amended complaint adding as defendants several individuals and entities who were not parties to the original action or judgment. These additional defendants were included in the supplementary proceedings on allegations that the debtor had fraudulently transferred various properties to them in an effort to avoid paying the judgment. In

concluding that the district court had subject matter jurisdiction over the supplementary proceedings, the Ninth Circuit began with the principle that "[t]here can be little question that federal courts generally possess the power to protect their judgments by setting aside fraudulent conveyances of the judgment debtor." Id. at 1453. That power, the court observed, "derives from the long-recognized principle that a federal court may assert authority over non-federal claims 'when necessary to give effect to the court's judgment.'" Id. (quoting Finley v. United States, 490 U.S. 545, 551, 109 S. Ct. 2003, 2008, 104 L.Ed.2d 593 (1989)). The court went on to find that Peacock was inapposite because, unlike in Peacock, the judgment creditor was not attempting to hold the additional individuals and entities liable for the original judgment, but sought "only to disgorge from them, as alleged fraudulent transferees, the property [the debtor] wrongfully transferred to them." Id. at 1454.

In applying these principles here, this court first addresses Erickson's arguments as to Kast. For the reasons to be discussed, the court concludes that it has subject matter jurisdiction over Erickson's motion as to Kast and finds it unnecessary to reach Erickson's allegations as to Baker.

**B. Motion to Amend re Kast**

Erickson says that Kast has used various aliases and fictitious names in order to avoid paying the judgment. And, despite Kast's claims to the contrary, Erickson contends that Kast transferred various properties, not to an irrevocable trust, but to a revocable one of which he is the identified grantor or trustee with complete control over the trust assets. The relief sought by Erickson's motion as to Kast's strikes this court as nothing more than an attempt to collect on the judgment. Under the precedents discussed above, this court concludes that it has subject matter jurisdiction over Erickson's motion to amend the judgment as to Kast.

In responding to this court's interim order, Kast suggested that Erickson's motion should be decided by the state court---an argument that this court construes as a request that the court decline to exercise ancillary jurisdiction. There is no dispute that the exercise of ancillary jurisdiction is discretionary. See Thomas, Head, & Greisen Employees Trust, 95 F.3d at 1453 (stating that the power to protect judgments by setting aside fraudulent conveyances "derives from

the long-recognized principle that a federal court *may* assert authority over non-federal claims when necessary to give effect to the court's judgment.") (citation omitted) (emphasis added). Nevertheless, "[w]ithout jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" Peacock, 516 U.S. at 356 (quoting Riggs v. Johnson Cnty., 6 Wall. 166, 187, 18 L.Ed. 768 (1868)). And, while Erickson could pursue proceedings against Kast in the state court, this court finds that would not serve the interests of judicial economy or efficiency. Accordingly, the court will not decline to exercise jurisdiction.

Erickson seeks to amend the judgment to add Kast's aliases and fictitious business names. Erickson submits evidence that Kast has used his birth name "Warren Craig Rudinger" (or variations of it) on bank accounts. (Dkt. 191, Declaration of Kevin McCulloch ISO Motion ("McCulloch Decl.") ¶ 4, Ex. 2; Dkt. 215, Declaration of Kevin ISO Reply ("McCulloch Reply Decl.") ¶ 2, Ex. 1). Erickson has also presented evidence that Kast registered a number of fictitious "doing business as" names in California. (McCulloch Decl. ¶¶ 5-6, Exs. 3-4). The alias and businesses are not separate legal entities; they are merely Kast by other names. Global Concierge Holdings v. Charbo, No. CV 13-5203-RGK MANX, 2013 WL 6241589, at *4 (C.D. Cal. Dec. 3, 2013) ("Use of a fictitious business name does not create a separate legal entity"); Pinkerton's, Inc. v. Super. Ct., 49 Cal. App. 4th 1342, 1348, 57 Cal. Rptr. 2d 356, 360 (1996) (same); see also Mad Dogg Athletics, Inc. v. NYC Holding, 565 F. Supp.2d 1127, 1130 (C.D. Cal. 2008) (stating that in cases involving fictitious business entities, post-judgment amendments are similar to clerical error corrections). The court grants Erickson's motion to amend the judgment to add Kast's birth name/alias Warren Craig Rudinger and the fictitious business names "Atherton Trust," "Atherton & Associates," "Atherton Insurance Services," "The Atherton Company," "Atherton Investment Advisors," and "CB Real Estate Wealth Management."

Erickson also seeks to amend the judgment to add: "Kraig Kast Living Trust and Black Oak Trust (a/k/a The Black Oak Trust, dated March 11, 1995)" and "Kraig Kast, Trustee of the Black Oak Trust (a/k/a Kraig Kast, Trustee of The Black Oak Trust, dated March 11, 1995)." (Dkt. 189 at 2). This court is told that there is no longer a Kraig Kast Living Trust (at least, not by

that name). And, Kast says that he resigned as trustee of the Black Oak Trust; that Baker is now the trustee and beneficiary; and that the Black Oak Trust is irrevocable, so its assets are not subject to Erickson's judgment anyway. See Laycock v. Hammer, 141 Cal. App.4th 25, 30, 44 Cal. Rptr.3d 921 (2006) (stating that in order to reach the assets held by a trust, a judgment creditor must show that, notwithstanding the trust's terms, the trust is revocable). As discussed, Erickson contends that, in order to confuse and avoid creditors, Kast created multiple "Black Oak Trusts" on the same day, with only slightly different titles, and transferred various properties to a revocable "Black Oak Trust" over which he maintains complete control, despite his claims that the properties were placed in an irrevocable one.

Federal Rule of Civil Procedure 69(a) pertains to the execution of judgment and provides that "[t]he procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Rule 69(a) "empowers federal courts to rely on state law to add judgment-debtors." In re Levander, 180 F.3d 1114, 1120-21 (9th Cir.1999). California Code of Civil Procedure § 187 permits a court to amend a judgment to add judgment debtors:

> As a general rule, 'a court may amend its judgment at any time so that the judgment will properly designate the real defendants.' . . . . Judgments may be amended to add additional judgment debtors on the ground that a person or entity is the alter ego of the original judgment debtor. . . .'Amendment of a judgment to add an alter ego "is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. . . . 'Such a procedure is an appropriate and complete method by which to bind new . . . defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit.

Greenspan v. LADT, LLC, 191 Cal. App.4th 486, 508, 121 Cal. Rptr.3d 118 (2010) (quoting Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conference Ctr. Bd., 41 Cal. App.4th 1551, 1554-55, 49 Cal. Rptr.2d 286 (1996)). "California courts have applied the alter ego doctrine to trusts." In re Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010) (citing Torrey Pines Bank v. Hoffman, 231 Cal. App.3d 308, 282 Cal. Rptr. 354, 359 (1991)). While a trustee may be added as a judgment debtor, a trust itself is not subject to the alter ego doctrine because it is not a legal entity. Greenspan, 191 Cal. App.4th at 496.

There are four California properties in question---three in Foster City and one in Valley Center. They will be referred to here as the "Beach Park" property; "De Soto" property; "East Court" property; and "Valley Center" property.

It is undisputed that the Kraig Kast Living Trust was a revocable trust established on March 11, 1995, with Kast as the grantor or trustee with "all rights to all income, profits and control of the trust property" during his lifetime. (Dkt. 213-1, Declaration of Kraig R. Kast ISO Baker's Opposition ("Kast Decl.") ¶ 3, Ex. 1). The parties have submitted deeds showing that three of the properties at issue---De Soto, Beach Park, and East Court---were placed in the Kraig Kast Living Trust in 2005. (McCulloch Reply Decl. ¶ 23, Ex. 22; Kast Decl. ¶¶ 5-7, Exs. 2-4).

On this record there also seems to be no controversy that on December 11, 2007, the Kraig Kast Living Trust was amended. The import of those purported amendments, however, is disputed.

According to Kast, he amended and restated the Kraig Kast Living Trust, changing the name to "The Black Oak Trust," converting it to an irrevocable trust, and adopting a new 100-page trust document. (Kast Decl. ¶¶ 12-14, Ex. 6; Dkt. 213-2 Declaration of Mariellen Baker ISO Opposition ("Baker Decl.") ¶ 2). The trust document identifies Kast as the settlor and initial trustee and Baker as the sole lifetime beneficiary and designated successor trustee. (Kast Decl. ¶ 13, Ex. 6, Art. 2; Baker Decl. ¶ 2). Kast and Baker aver that Kast has never been the beneficiary of this trust. (Id.). Kast further states that the Beach Park, De Soto, and East Court properties (formerly held in the Kraig Kast Living Trust) and the Valley Center property (subsequently acquired by Kast later in December 2007), were all placed in this irrevocable Black Oak Trust pursuant to an "Addendum A" to the trust document. (Kast Decl ¶¶ 12, 16, Ex. 6 Section 1.04, Addendum A). The "Addendum A" is a one-page document that says "Properties included in the Black Oak Trust," followed by a list of the four properties at issue and by what appears to be Kast's signature and the date December 30, 2007. (Id.). Kast says that, before putting the De Soto property in the irrevocable Black Oak Trust for Baker, he refinanced that property (Kast Decl. ¶¶ 21-22); and, at oral argument, he said that the proceeds were used to the buy the Valley Center property. He says that deeds subsequently were recorded to reflect the December 11, 2007 and

United States District Court
Northern District of California

December 30, 2007 actions as follows: February 20, 2008 for the Valley Center property; March 12, 2008 for the De Soto property; and on February 3, 2012 for the East Court and Beach Park properties. (Kast Decl ¶¶ 18, 22, 24, 25, Exs. 9, 12, 13, 16).

Kast says he placed these four properties in trust for Baker as a way of paying back $470,000 in personal loans. (Kast Decl. ¶¶ 9-11; Baker Decl. ¶¶ 4-6). To that end, Kast submits a document titled "Promissory Note," bearing what appear to be Kast's and Baker's signatures made at various times, and purporting to confirm this arrangement. The document is initially dated June 6, 2006 and contains handwritten updates dated September 2, 2006 and September 12, 2006. (Kast Decl. ¶¶ 9-11, Ex. 5).

As trustee, Kast says that he engaged in activities, in the ordinary course of trust business, that were done for trust purposes. For example:

- He carried out three refinancing transactions for: an East West Bank Loan, closed May 6, 2011, for the East Court property (Kast Decl ¶¶ 27-34, Dkt. 213-3 Biché Decl ¶¶ 4-7); a loan obtained from Behrooz and Laurie Shahab, closed April 10, 2015, for the East Court property (Kast Decl ¶¶ 35-37; Biché Decl ¶¶ 8-9); and a loan obtained from Anthony and Valerie Vacarella, re the Beach Park property (Kast Decl ¶¶ 38-40, Biché Decl. ¶¶ 10-11);
- The De Soto property was sold on October 19, 2012, Kast says, to reduce debt and generate funds for trust purposes (Kast Decl. ¶ 41).

Kast says he resigned as trustee of the Black Oak Trust on December 31, 2015 (several months after judgment was entered here), and Baker became the successor trustee. (Kast Decl. ¶ 15, Ex. 6 section 3.02(a); Ex. 7; Baker Decl. ¶ 3). And, Baker says that in her capacity as trustee, she sold the Valley Center property on November 2, 2016, to reduce debt and generate funds for trust purposes. (Baker Decl. ¶¶ 7-10).

In sum, Kast maintains that as of December 30, 2007 (several years before Erickson filed this litigation), the subject properties were placed in an irrevocable trust for Baker to satisfy her personal loans to him and that all trustee transactions respected the irrevocable trust.

Erickson argues that documents he obtained show a different story---namely, that there

United States District Court
Northern District of California

were several "Black Oak Trusts" created on December 11, 2007; that the subject properties were placed in a revocable "Black Oak Trust" that Kast owns and controls; and that Kast continued to exercise ownership and control over the properties even after he resigned as trustee of the alleged irrevocable "Black Oak Trust" he says he established to repay Baker's loans.

Here, Erickson presents documents indicating that on December 11, 2007, Kast actually executed three separate trust declarations, each with different beneficiaries and terms and using subtly different titles, but all containing the phrase "Black Oak Trust":

- One document, entitled "Second Amended Living Trust/Black Oak Trust to the Kraig R. Kast Living Trust,"[5] changes the name of the trust to "the Black Oak Trust, dated March 11, 1995." It also identifies individuals who will become successor trustees and beneficiaries in the event of Kast's death. Otherwise, this "Second Amended" document states that "the terms of [the Kraig R. Kast Living Trust] declaration shall remain in full force and effect." (McCulloch Reply Decl. ¶ 3, Ex. 2). This document will be referred to as the "Second Amended Living Trust/Black Oak Trust" document.
- A second December 11, 2007 document purports to create an irrevocable trust by the name "Kraig R. Kast, Trustee of the Black Oak Trust dated December 11, 2007." Although only a few pages of this document have been presented to the court, the pages that have been submitted indicate that Kast is the settlor and trustee. (McCulloch Reply Decl. ¶ 5, Ex. 4). This document will be referred to as the "December 11, 2007 Black Oak Trust."
- A third December 11, 2007 document bears the title "The Black Oak Trust" and appears to create an irrevocable trust by the alternate names "Kraig R. Kast, Trustee of the Black Oak Trust dated December 11, 2007" or "Kraig R. Kast, Trustee of the Black Oak Trust dated March 11, 1995." Baker is identified as the

[5] According to the terms of this document, the provisions of the "First Amendment" to the Kraig R. Kast Living Trust were made on March 26, 2005 and "are hereby revoked and shall be of no further force and effect." (McCulloch Reply Decl. ¶ 3, Ex. 2).

lifetime beneficiary of the trust. (McCulloch Reply Decl. ¶ 4, Ex. 3). This would appear to be the same trust document Kast and Baker claim established the irrevocable trust to repay Baker's loan.[6] This document will be referred to as the "Baker/Black Oak Trust."

In sum, these documents indicate that on December 11, 2007, Kast executed three different "Black Oak Trust" documents---and the purportedly irrevocable Baker/Black Oak Trust apparently was to be known by the names that appear to be similar, if not identical, to the other two December 11, 2007 Black Oak Trusts of which Kast is the identified settlor or grantor/trustee with control over the trust property. Notably, the Second Amended Living Trust/Black Oak Trust document did not change the revocable nature of the Kraig R. Kast Living Trust.

Erickson says that other documents show that the four properties Kast reportedly transferred to the irrevocable Baker/Black Oak Trust actually were transferred to himself (i.e., the Second Amended Living Trust/Black Oak Trust of which he maintains control). For example, with respect to the property deeds that Kast and Baker say he recorded to confirm transfer of the properties to the Baker/Black Oak Trust:

- A February 20, 2008 grant deed transfers the De Soto property from "Kraig R. Kast, A Single Man" to "Kraig Rudinger Kast, a trustee of the Black Oak Trust, Dated March 11, 1995." (McCulloch Reply Decl. ¶ 7, Ex. 6; Kast Decl. ¶ 22, Ex. 12).
- Another February 20, 2008 grant deed shows that the Valley Center property (i.e., the one Kast acquired about 2 weeks after creating the various December 11, 2007 "Black Oak" trusts) was transferred "into or out of [the grantor's] ***revocable*** trust" by "Kraig R. Kast, A Single Man" to "Kraig Rudinger Kast, Trustee of the Black Oak Trust, Dated March 11, 1995." (McCulloch Reply Decl. ¶ 9, Ex. 8) (emphasis added).
- A February 3, 2012 quitclaim deed shows that the East Court property was

[6] As discussed more fully below, however, Erickson points out that there are discrepancies in the document submitted by Kast and Baker.



United States District Court
Northern District of California

transferred from "KRAIG RUDINGER KAST" to "KRAIG R. KAST, as Trustee under the DECLARATION OF THE BLACK OAK TRUST, Dated 3/11/95." This deed states that the property is being transferred "into a ***Revocable Trust***." (McCulloch Reply Decl. ¶ 8, Ex. 7; Kast Decl. ¶ 31, Ex. 16) (emphasis added).

- Another February 3, 2012 quitclaim deed transfers the Beach Park property from "KRAIG RUDINGER KAST, as Trustee under the DECLARATION OF THE KRAIG KAST LIVING TRUST, dated 3/11/95" to "KRAIG R. KAST, as Trustee under the DECLARATION OF THE BLACK OAK TRUST, Dated 3/11/95." This deed, too, says that the property is being transferred "into a ***Revocable Trust***." (McCulloch Reply Decl. ¶ 6, Ex. 5; Kast Decl. ¶ 25, Ex. 13) (emphasis added).

In view of the similar names of the various December 11, 2007 "Black Oak" trusts---it is somewhat ambiguous which one actually was receiving the property. But, the fact that at least three of the deeds expressly say that the subject properties were being placed into a revocable trust suggests that the properties were being transferred, not to the Baker/Black Oak Trust, but to the revocable Second Amended Living Trust/Black Oak Trust of which Kast is the grantor/trustee with control over all trust property. Kast says that the reference to "revocable" trusts in those deeds was just a mistake, saying he paid no particular attention to that word in the deeds. (Kast Decl. ¶ 20). However, the court finds that Kast's assertions are not credible since (1) he executed several December 11, 2007 "Black Oak Trust" documents, purporting to create both revocable and irrevocable trusts; and (2) the alleged mistake occurred no less than three different times in deeds recorded over a period of several years.

Erickson argues that still other documents provide further reasons to doubt Kast's and Baker's arguments that Kast intended to put the subject properties into the purported irrevocable Baker/Black Oak Trust. For example, with respect to the purchase of the Valley Center property:

- A promissory note shows that Kast completed the purchase of the Valley Center property on December 14, 2007, several days after he created the multiple "Black Oak" trusts. (McCulloch Reply Decl. ¶ 10, Ex. 9).
- Nevertheless, the Sale Closing Escrow Instructions show that Kast "direct[ed] that

title to the Property be vested as follows: "Kraig R. Kast, an unmarried man." (Id. ¶ 22, Ex. 21 at 1).

- Kast also purchased title insurance from First American Title Insurance Company (First American), and the policy, dated December 28, 2007, stated that Kast personally was the buyer and excluded coverage if title was vested "other than" in "Kraig R. Kast, an unmarried man." (Id. ¶ 12, Ex. 11 at 2-3).
- The mortgage note, issued by J.P. Morgan/Chase ("Chase"), was also to Kast personally. (Id. ¶ 10, Ex. 9.)

At oral argument, Kast stated that the property purchase had to be done this way because the bank would not finance the purchase in the name of a trust. Even so, this court has not been presented with evidence that Kast ever changed the title insurance policy or the mortgage note to reflect that he no longer held title to the property. When viewed together with the subsequent February 20, 2008 deed transferring the Valley Center property "into or out of [the grantor's] ***revocable*** trust" by "Kraig R. Kast, A Single Man" to "Kraig Rudinger Kast, Trustee of the Black Oak Trust, Dated March 11, 1995," the evidence strongly suggests that Kast had no intention at the time of vesting title to this newly acquired property in an irrevocable trust.

But wait, says Erickson, there's more:

- Erickson presents a December 20, 2007 note that Kast faxed to the First American escrow officer, Carolyn Koontz ("Koontz"), which states: "Please find attached the 2nd Amendment to my Living Trust. When putting the Foster City and Valley Center homes back in the trust, please use the name Black Oak Trust." (McCulloch Reply Decl. ¶ 11, Ex. 10). The referenced "2nd Amendment to my Living Trust," says Erickson, could only mean the Second Amended Living Trust/Black Oak Trust document that simply renamed Kast's revocable living trust "Black Oak Trust, dated March 11, 1995." And, Erickson argues that the instruction to put the properties "back in the trust" suggests that Kast meant that the properties were to be placed, not in a newly-created irrevocable trust, but rather to his revocable trust, to which he transferred the De Soto property in March 2005 and later transferred



United States District Court
Northern District of California

back to himself on December 4, 2007 for refinancing. (Id. ¶¶ 23-24, Exs. 22 & 23).

- Erickson also presents a document indicating that Koontz prepared a grant deed transferring the De Soto property from "Kraig R. Kast, A Single Man" to "Kraig Rudinger Kast, a trustee of The Black Oak Trust, Dated March 11, 1995" on February 11, 2008, according to Kast's instructions and using the name of the revocable trust declaration he had sent her. (Id. ¶ 7, Ex. 6).

Erickson posits that Koontz worked for First American (Kast's title insurance company), and so would have (1) noticed if Kast intended to make a transfer that would have voided his insurance; and (2) been aware of the need to file a Preliminary Change of Ownership Report ("PCOR") as required under Cal. Rev. & Tax Code §480 for transfers to an irrevocable trust. But, says Erickson, there is no evidence that a PCOR was ever recorded.

As for the alleged "Addendum A" that Kast says effectively placed the four subject properties in the purportedly irrevocable Baker/Black Oak Trust, Erickson argues that the document is rife with evidentiary problems:

- The document purports to be signed by Kast on December 30, 2007, but Kast offers no evidence, other than his own declaration, that the document was executed on that date.
- Erickson says that this "Addendum A" was not included in any copies of the trust declaration produced in response to his subpoenas for property transactions by Black Oak Trust prior to 2015. (McCulloch Reply Decl. ¶ 25).
- The Baker/Black Oak Trust declaration itself states that the properties to be included in the trust are listed in "Schedule A," not "Addendum A." (Kast Decl. ¶ 12, Ex. 6 at 16, §1.04).
- Although the record indicates that Kast had other amendments to his trusts notarized, this "Addendum A" listing the properties that he purportedly is relinquishing to an irrevocable trust is not notarized. (Compare McCulloch Reply Decl. ¶ 3, Ex. 2 and Kast Decl., ¶ 12, Ex. 6). Kast argues that while notarization is allowed, it is not required. Nevertheless, Erickson says the lack of notarization is

notable.

Further, Erickson points out that there are discrepancies in the Baker/Black Oak Trust declaration presented by Kast and Baker and the copy of that document Erickson says he received from First American in response to his subpoena. To begin, the document Kast and Baker present to the court does not include any of the referenced schedules, including "Schedule A," which the declaration expressly states was "attached to this agreement." (Kast Decl. ¶ 12, Ex. 6). Instead, Kast submitted the "Addendum A," the reliability of which Erickson says is questionable and which is missing from the copy Erickson says it obtained from First American. Additionally, in the Baker/Black Oak Trust documents submitted by both Kast and Erickson, the document begins on page 5, indicating that at least 4 pages preceding the table of contents is missing. (McCulloch Reply Decl. ¶ 3, Ex. 2; Kast Decl., ¶ 12, Ex. 6).

Additionally, the Baker/Black Oak Trust declaration presented by Kast is entirely different than the alternative, purportedly irrevocable "December 11, 2007 Black Oak Trust" that identifies Kast as the settlor and trustee that Erickson says he received in response to another subpoena. (McCulloch Reply Decl. ¶ 5, Ex. 4).

Erickson also presents evidence indicating that Kast claimed to hold the properties in his own name, even after having purportedly transferred them to the Baker/Black Oak Trust. For example, Erickson submits a "Wealth Advisory and Business Consulting Fee for Services Agreement," with SG Private Wealth Advisors ("SG"). (McCulloch Reply Decl., ¶ 17, Ex. 16). The agreement says that it is effective as of December 29, 2010, i.e., several years after Kast reportedly transferred the subject properties to an irrevocable trust. The agreement states that Kast agreed to pay SG 1% of the purchase or refinance price for any properties. The two identified properties are the Beach Park and De Soto properties, as to which Kast applied for loans. (Id. (Schedule 2)). Each loan application states that "title will be held" in the name of "Kraig R. Kast" and that the "manner in which Title will be held" was "unmarried man." (Id.). Each application also identifies "Kraig R. Kast" as the borrower. Neither Kast nor Baker have presented any evidence that these investments were for the benefit of a trust.

And, Erickson says that still other documents he obtained strongly suggest that Kast has

not only continued to exercise control over the properties, but has also acted in a manner to avoid creditors. For example, in an email dated June 20, 2016---i.e., six months after Kast resigned as trustee of the Baker/Black Oak Trust---from Kast to Laura Biché (identified as a mortgage advisor who assisted Kast with prior loans re the East Court and Beach Park properties) Kast says he is considering selling the "Townhouse and Beach Park Condo":

> I'm thinking that selling is the only way to protect the equity. If I lose the appeal then their next step is to try to break up the trust. ***If the court doesn't accept your/our refi explanation then the court could rule fraudulent transfer and block a sale and pay them.***

(McCulloch Reply Decl. ¶ 18, Ex. 17 (emphasis added)). And, some two months later---i.e., about 8 months after Kast resigned as trustee of the Baker/Black Oak Trust---another email from Kast to Biché:

> Please remember, I don't have a personal bank account so it can't be attached by the crazy woman. Everything is in the name of the Corporation or Trust and the trust owns the corporation. If they want bank statements from me personally I can't give them to a lender ***because they don't exist by design***.

(Id. ¶ 21, Ex. 20) (emphasis added).[7]

Neither Kast nor Baker have responded to these exhibits submitted by Erickson. Indeed, at oral argument, when probed by the court about them and the assertions Erickson makes---and especially why there apparently are two entirely different "Black Oak Trust" documents purporting to establish irrevocable trusts (one naming Baker as beneficiary and successor trustee; the other identifying Kast as the settlor and trustee)---neither Baker nor Kast had an answer. Baker said that she had historically only been given the Baker/Black Oak Trust document. She claimed to have no knowledge about the other two December 11, 2007 documents and said that she had never before seen either one. As discussed above, the court granted Baker's request for leave to submit supplemental briefing about Erickson's reply documents and arguments; but, she apparently chose not to address them.

[7] Erickson says that the "crazy woman" referenced in this email is Diana Reinecker, who has submitted papers with this court in connection with unrelated post-judgment matters, identifying herself as another one of Kast's judgment creditors.

As for Kast, although he confirmed that he had received and read all of Erickson's motion papers, he told the court that he could not comment about them because he did not bring the papers with him to the hearing. When the court described some of the differences between the two purported irrevocable "Black Oak" trust documents, Kast said he could not answer because he did not have the documents in front of him. And, when further pressed by the court to respond to some of the other assertions made by Erickson (e.g., that he continued to claim ownership of the properties, even after purportedly transferring them to the Baker/Black Oak Trust), Kast again said he could not comment and referred the court to his written opposition papers, saying that he had no more to add.

Based on the foregoing, and in view of the unrefuted evidence submitted by Erickson in his reply brief, the court finds that there has not been a transfer of the subject properties to an irrevocable trust, but rather, to a revocable trust (i.e. the Second Amended Living Trust/Black Oak Trust) of which the record shows that Kast remains the grantor and trustee with all rights to income, profits and control of the trust property during his lifetime. And, on this record, it appears that Kast has used the purported conveyances to the Baker/Black Oak Trust as a ruse to avoid payment of the judgment as to Erickson. Accordingly, in addition to Kast's birth name/alias and fictitious business names, Erickson's motion to amend the judgment as to Kast is granted to add Kast as Trustee of the Black Oak Trust (a/k/a Kraig Kast, Trustee of The Black Oak Trust, dated March 11, 1995).

In view of the foregoing, the court finds it unnecessary to address Erickson's motion to amend the judgment to add Baker/Black Oak Trust as a judgment debtor. Because Baker is not and has never been a party to these proceedings, the court concludes that obtaining her consent to proceed before the undersigned is not required.

SO ORDERED.

Dated: October 5, 2017

HOWARD R. LLOYD
United States Magistrate Judge