UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERICKSON PRODUCTIONS INC, et al., Plaintiffs, v. KRAIG R. KAST, Defendant. | Case No. 5:13-cv-05472-HRL **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND FOR CONTEMPT** Re: Dkt. No. 263 |

Erickson Productions, Inc. and Jim Erickson (collectively, "Erickson") sued Kraig R. Kast for alleged infringement of the copyright in three photos owned by Erickson. Following a jury trial in 2015, Erickson obtained a judgment of $450,000. (Dkt. 118). After resolution of Erickson's post-judgment motion for fees and motion to amend the judgment, an amended judgment was entered in the amount of $636,186.58. (Dkt. 246). Kast has appealed both the original judgment and the amended one. Those appeals are pending. His motions to stay the judgment pending those appeals have been denied.[1]

In October 2015, Erickson served Kast with judgment debtor requests for the production of

---

[1] This court has jurisdiction to entertain the present motion, notwithstanding the pendency of the appeal. *Lara v. Sec'y of the Interior*, 820 F.2d 1535, 1543 (9th Cir. 1987) ("The district court may issue orders pending appeal to enforce its judgment.").

documents (Dkt. 296), but says that Kast has produced nothing in response. In December 2016, Erickson served Kast's fiancée, Mariellen Baker, with a subpoena duces tecum seeking post-judgment debtor discovery. Baker asserted objections and produced some documents, but not all that Erickson requested. Erickson maintains that her production is insufficient.

Meanwhile, Erickson served a raft of third party subpoenas on banks, title companies, and others for documents pertaining to various accounts, properties, and assets they say are linked to Kast. Documents obtained in response to those subpoenas, Erickson claims, reveal that Kast has been deliberately hiding and lying about his assets and income. In sum, Erickson says that although Kast claimed indigence in a prior in forma pauperis (IFP) application, he actually has considerable money and assets that he reportedly (with Baker's assistance) has shuffled between various shell companies and fictitious entities in an effort to avoid the judgment.

Erickson now brings a "Motion to Compel and for Order to Show Cause re: Contempt and Fraud on the Court." Although styled as a motion to compel post-judgment discovery, that aspect of the motion is presented as somewhat of an afterthought. Instead, the focus of the motion is on Erickson's request for an order holding Kast and Baker in contempt for their alleged shenanigans and "failure to comply with Plaintiffs' subpoena and discovery requests." (Dkt. 260 at 5). Among the sanctions sought are (1) a monetary penalty of $50,000; (2) an immediate accounting of all assets and properties purportedly owned by Kast or the Black Oak Trust; (3) an order granting an injunction against further disposition of assets by Kast, Baker, and the Black Oak Trust; and (4) an award of attorney's fees for costs incurred in bringing the instant motion. Kast and Baker have separately opposed the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the court rules as follows:

Erickson's motion for sanctions and a finding of contempt for failure to comply with discovery requests is denied without prejudice. Absent a prior order compelling the discovery in question, the court ordinarily does not hold a party in contempt or impose sanctions of the sort Erickson seeks for failure to comply with discovery requests. Erickson fails to convince that the court's rulings on prior motions to quash other subpoenas could or should be read as an order compelling the discovery now before the court.

Erickson nevertheless requests that the court, pursuant to its inherent authority, sanction Kast and Baker and hold them in contempt, based on an alleged course of conduct involving a number of purported shell companies and trusts, reportedly being used by Kast and Baker to avoid collection on the judgment. Erickson points out that, on their prior motion to amend the judgment, the court already concluded that Kast transferred certain real properties to a revocable Black Oak Trust that Kast owned/controlled, rather than to a purported irrevocable Black Oak Trust of which Baker is said to be the trustee and sole beneficiary. However, what the court is now being presented with is information about various other bank accounts and other entities, namely a California Trust Company (CTC), through which Kast and Baker allegedly are funneling money to make it appear as if Kast has no income or assets. Erickson argues that, despite claiming to be unemployed on his IFP application (Dkt. 127), Kast has held himself out as the president and managing trustee of CTC. (Dkt. 149, Ex. 8; Dkt. 215, Exs. 18-20). And, although Kast previously disclaimed co-mingling his personal finances with Baker's, and stated that Baker "knows nothing about his business," (Dkt. 239 at 5-6), Erickson points out that checks from a US Bancorp account held by CTC are being written from Baker to Kast, for thousands of dollars in "rent" and "loan" payments. (Dkt. 261, Ex. 7). Further, Erickson notes that the CTC checks bear the same address as a First National Bank account held by a Black Oak Trust, identifying "Kraig Rudinger Kast" as trustee. (*Id*., Ex. 3).

Kast and Baker deny any wrongdoing and argue that Erickson is misconstruing the documents. Kast maintains that, notwithstanding this court's prior ruling, the Black Oak Trust is an irrevocable trust of which Baker is the trustee and sole beneficiary. He denies owning CTC and says that being the president or managing trustee is not the same as being owner. Although he has told the court that CTC is a financial consulting company focused on helping senior citizens, Kast also claims that CTC is not an active business (he says the present litigation is to blame). Kast maintains that any check-writing authority he has is solely for bill-paying purposes and is by virtue of professional licenses he holds, his role as trustee, or the authorization of the pertinent trustee. As such, Kast says that statements in his prior IFP application are true. Erickson says that Kast is lying and that Baker is complicit in his deceit.

3

Neither side has provided the court with a principled approach to discern where the truth lies on this motion. Erickson is adamant that their interpretation of the subpoenaed documents is the only plausible and truthful one. However, Erickson told the court at oral argument that they did not receive full responses to their subpoenas to banks and other entities. And, by Erickson's own account, Kast has produced no documents and Baker's production remains unsatisfactory. Kast has not yet been deposed, and neither has Baker. On the record presented, the court is unprepared to impose the requested sanctions/contempt, particularly where, as here Erickson seeks these drastic remedies against a nonparty. This ruling is, however, without prejudice to Erickson.

Nevertheless, Erickson's showing has at least raised legitimate suspicions about the extent of comingling of Kast's and Baker's finances. At the motion hearing, Baker acknowledged that by virtue of her personal relationship with Kast, there is some intermingling insofar as they are running a household together. However, Kast also told the court that Baker uses the CTC account as a way to write checks to pay her personal bills. And, on a separate motion for preliminary injunction, Erickson has presented documents showing that Kast and Baker have been writing checks (Kast from a First National Bank of Northern California account held by a Black Oak Trust; Baker from a U.S. Bank account held by CTC) for up to one or two thousand dollars per month to a third account held by another fictitious business entity, Wellington Alexander. That suggests that the comingling of Kast's and Baker's business and personal interests may go beyond that which either one of them is willing to let on. Baker argues that the court's prior ruling on her motion to quash a portion of a subpoena served on U.S. Bancorp essentially means that her personal finances and business are irrelevant, private, and none of Erickson's business. Nevertheless, Baker has not moved to quash the subpoena served on her. And, on this motion, the court is unable to simply accept Baker's word as to what is purely personal vis-à-vis Kast.[2] Erickson is entitled, on post-judgment discovery, to obtain information about where the boundaries (if any) lie. *See Textron Fin. Corp. v. Gallegos*, No. 15CV1678-LAB (DHB), 2016

---

[2] Depending on what further discovery may reveal, the court may need to reassess its prior ruling on the US Bancorp subpoena as to what is purely personal to Baker and what may be linked to Kast.

4

WL 4077505, at *3 (S.D. Cal., Aug. 1, 2016) (stating that while inquiry into the assets and finances of a third party by a judgment creditor generally is not permitted, such discovery is permissible "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them.") (citation omitted).

For that reason, the court will order both Kast and Baker to produce at least some of the discovery requested in Erickson's subpoenas. Baker's objections based on relevance, privacy, and the alleged separate nature of her financial and business matters are overruled in view of Erickson's evidence suggesting the intermingling and intertwined financial relationship between her and Kast. Documents claimed to be privileged or otherwise protected (e.g., the attorney-client privilege or the attorney work product doctrine) need not be produced; however, any such documents must be described on a privilege log setting forth at least the following information: (1) the general nature of the document; (2) the identity and position of all author(s); (3) the date the document was written; (4) the identity and position of all addressees and recipients; (5) the document's present location; and (6) the specific privilege or protection being claimed.

Kast shall produce documents responsive to the following requests in Erickson's subpoena to him:

- **Request 16**: "All documents related to any alleged debts owed by Kast to any third parties, including but not limited to alleged debts owed to Mariellen Baker."
- **Request 17**: "All documents related to any loans, transfers, or other conveyances of any money or financial benefits to or involving to Mariellen Baker, including but not limited to any gifts."
- **Request 21**: "All documents related to any loans, transfers, or other conveyances of any money or financial benefits to or involving to Mariellen Baker, including but not limited to any gifts"; however, the court limits the temporal scope of this request to documents from 2015 to the present.
- **Request 28**: "Any document giving Defendant a power of attorney to sign checks or other instruments for payment of money on any account."

- **Request 53**: "Documents sufficient to identify any business or other corporate entities or trusts created, owned, controlled by Kast or in which he was a beneficiary or trustee, or from which he obtained any financial benefits, or over which exercised any control over trust assets, or in which he held any managerial or supervisory position"; however, the court limits the temporal scope of this request to documents from 2015 to the present.

Baker shall produce documents responsive to the following requests in the subpoena served on her:

- **Request 7**: "Any documents related to or concerning any payments made by You or Black Oak Trust to any third parties . . . that benefitted Kast (or any business or entity affiliated in any way with Kast), including but not limited to rent payments, car payments, insurance premiums, credit card bills, and any other expenses"; however, the court limits the temporal scope of this request to documents from 2015 to the present.
- **Request 23**: "Any documents detailing any debts currently or previously owed by Kast to You or the Black Oak Trust."
- **Request 31**: "Any documents detailing any rental income related to any properties owned by either You, Kast, or Black Oak Trust."
- **Request 58**, modified as follows: Documents sufficient to show any money, assets, or other financial benefits provided to You by Kast or any business or trust with which Kast is affiliated in any way, including but not limited to Atherton Trust, Black Oak Trust, Kraig Kast Living Trust, and California Trust Co.

Kast's and Baker's production shall be completed by June 11, 2018. Any privilege logs must be produced by that same date.

To the extent there are other specific requests for discovery in the subject subpoenas that Erickson wishes to compel, they must bring a motion to compel that discovery, which identifies the particular requests at issue, details the basis for Erickson's contention that they are entitled to

the requested discovery, and demonstrates how proportionality requirements are satisfied.

SO ORDERED.

Dated: May 21, 2018

HOWARD R. LLOYD
United States Magistrate Judge