Kraig Kast
PO Box 4612
Foster City, CA 94404
415-806-9292
Kraigru@hotmail.com

Pro Se Defendant

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

Oakland

| | |
|---|---|
| ERICKSON PRODUCTIONS INC & JIM ERICKSON | **District Court Case Number: 4:13-cv-05472 (Dkt 372-376)** |
| Plaintiff(s), | **Appeal Case Number: 15-16801** |
| vs | **MOTION FOR NEW TRIAL 59(a) OR ALTERNATIVELY A MOTION TO AMEND JUDGEMENT RULE 59(e)** |
| KRAIG KAST  et al. | |
| Defendant(s). | **Date: April 22, 2021** |
| | **Time: 1 PM** |
| | **Hon. Donna M. Ryu** |

1

MEMORANDUM OF POINTS AND AUTHORITIES

2      Defendant Kraig Kast hereby submits this Memorandum of Points and Authorities under

3   C.L.R. 7-4, in support of his motion for the court to order a new trial under FRCP 59 (a) or

4   Alternatively to amend the court's willfulness decision or to reduce the court's damages to a

5   more just amount under FCP 59 (e).

6      This motion for a new trial or to amend the judgment is made in response to the district court's

7   decision, dated February 12, 2021 (Dkt 380), regarding the remand from Ninth Circuit Court of

8   Appeals dated April 16, 2019 (Dkt 97-1).  The court held Kast was reckless and therefore willful

9   under the copyright law. The court also upheld the jury award in the amount of $450,000 against

10  Kast.

11     It is a manifest injustice for the court not to order a new trial when the Ninth Circuit's panel

12  said that the jury's willfulness instruction "was likely prejudicial to Kast".  It was a manifest

13  injustice for the court to make an excessive award in the amount of $450,000 against Kast given

14  the facts in the record. It is a manifest injustice for the court to hold Kast was reckless and

15  therefore willful based on inference about the record, all of these issues could be addressed in a

16  new trial.

17     In the alternative, Kast asks the court to amend its decision under FRCP 59 (e) to reflect that

18  (1) Kast was merely negligent, not reckless or willful and (2) that the excessive jury award of

19  $450,000 is reduced to an amount consistent with simple negligence, which is less than the

20  $11,250 damages the SDNY court imposed on Only Websites, the direct infringer.

21

22  Dated: March 11, 2021                    /s/ Kraig R. Kast

23                                           Defendant & Appellant Pro Se

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………  6

BACKGROUND…………………………………………………………  6

STANDARD OF REVIEW……………………………………………….  8

MOTION FOR NEW TRIAL Rule 59 (a)………………………………….  8

MOTION TO AMEND JUDGMENT Rule 59 (e)…………………………….  8

ARGUMENT………………………………………………………….  9

MOTION FOR A NEW TRIAL RULE 59 (a)……………………………….  9

JURY INSTRUCTION WAS PREJUDICIAL………………………………...  9

A NEW TRIAL IS REQUIRED BECAUSE THE DAMAGES ARE EXCESSIVE…………………  9

MOTION TO AMEND THE JUDGMENT RULE 59 (e)………………………………...  9

COURT'S DECISION IS BASED ON INCORRECT INFERENCE…………………………  10

SHOULD HAVE KNOWN IS NEGLIGENCE NOT WILLFULNESS……………………….  10

KAST'S ACTIONS DEMONSTRATE HE WAS NOT RECKLESS……………………….  13

WHY THE JUDGMENT REQUIRES REVERSAL…………………………………  14

THE COURT'S DECISION REQUIRES AMENDMENT……………………………….  17

KAST'S STATE OF MIND……………………………………………….  18

WHY THE AMOUNT OF THE JUDGMENT IS EXCESSIVE

AND MANIFESTLY UNJUST…………………………………………...  18

DAMAGES REQUIRE REDUCTION………………………………………..  20

CONCLUSION………………………………………………………..  21

TABLE OF AUTHORITIES

Atari Interactive, Inc. **v**. Redbubble**,** Inc.,No. 4:18-cv-03451       16,17

BMG Rights Mgmt- (US) LCC v. Cox Commc'ns, lnc.,881 F.3d 293, 310 (4th Cir. 2018)    12

BMW of North America, Inc. v Gore 517 US 559, 116 S. Ct 1589, 134 L. 2nd 809-Supreme Court, 1996      19,20

Capitol Records, Inc. v. Thomas-Rasset, 692 F.3d 899, 907, 2012 U.S. App., Copy. L. Rep.    20

Evergreen Safety Council v. RSA Network Inc., 697 F.3d 1221, 1228 (9th Cir. 2012)    13,14

Global-Tech Appliances, Inc. v. SEB 5.A.,563 U.S.754,770 (2011)     7,12,13,19

Kunzler v. Rubin, 2001 U.S. Dist. LEXIS 23142, *32-33, 2001 WL 34053243    9

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S. Ct. 189, 194, 85 L. Ed. 147 (1940).    9

Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336    13

Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co., 219 F.3d 895, 905 (9th Cir. 2000).    9

Playboy Enters. v. Webbworld Inc., 991 F. Supp. 543, 45 U.S.P.Q.2d (BNA) 1641    19

St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63, 67, 40 S. Ct. 71, 64 L. Ed. 139 (1919)    20

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 427-29 (2003)    19

Swinton v. Potomac Corp-,27A F Sd 794, 803 (9th Cir. 2001)    12

Unicolors Inc. v.Unrban Outfitters Inc. 853 F 3rd 980-Court of Appeals 9th Circuit 2017    7,17

Unicolors,853 F.3d at 992    12

USAchem, Inc. v. Sands, 185 U.S.P.Q. (BNA) 387, 1975 U.S. Dist    19

VHT, Inc. v. Zillow Grp., 918 F.3d 723,748 (9th Cir. 2019)    14

VHT,9I8 F.3d at748    14

Video Views v. Studio 21, 925 F.2d    12

1   Wei Zhang v. American Gem Seafoods, Inc. 339 F.3d 1020 (2003)                8

2   Weisgram v. Marley Co., 528 U.S. 440, 120 S. Ct. 1011, 1020-21, 145 L. Ed. 2d    9

3                                    **EXHIBITS**

4

5   EXHIBIT 1 Atherton Trust Only Websites Contract

6   EXHIBIT 2 Only Websites Damages

## INTRODUCTION

In the Internet era, the vast majority of copyright infringement lawsuits are filed against small businesses and individuals, with the remainder against large corporations.  Small businesses and individuals are easy targets because small businesses will pay rather than fight, even if they didn't know they anything wrong.

To be held to be a contributory infringer is serious, it can destroy a person's reputation, stigmatize them for life, wreak havoc with their personal life, destroy a lifetime of work, financially gut their retirement and prevent them from earning a living in their chosen field, all of which has happened to Kast over the last nine years of this litigation. Even though none of the three State of California departments who license Kast found he did anything wrong. Being branded a willful infringer is a financial death sentence for someone in Kast's profession. For this reason, finding willfulness should not be based on subjective inference only tangible evidence.

## BACKGROUND

On April 16, 2019, the Ninth Circuit's panel vacated the jury's vicarious infringement and willfulness finding against Kast in appeal 15-16801, found Kast to be a contributory infringer and remand the question of whether Kast was willful on the existing record to the California Northern District. The panel said on Pg. 3, a finding of willfulness requires a showing of recklessness, willful blindness, or actual knowledge, and merely negligent conduct is not willful. The panel held that the district court erred when it instructed the jury that it could find that defendant's infringement was willful if he "should have known" that his acts infringed plaintiffs' copyright.

The panel said on Pg 19 "Negligence is a less culpable mental state than actual knowledge, willful blindness, or recklessness, the three mental states that properly support a finding of

willfulness. See Global-Tech Appliances, 563 U.S. at 770; Unicolors,853 F.3d at 992. "[A] willfully blind defendant is one who takes *deliberate actions* to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not." Global-Tech Appliances,563 U.S. at 769-10 (citations omitted). Thus, Kast is correct that the judge permitted the jury to find willfulness on the basis of a lesser mental state than our cases demand.

Kast didn't know in December 2010 there was any risk, because the OW contract he signed in 2010 was the same contract he signed in 2006. When OW built the 2006 iteration of site, they supplied licensed photos. Thus, there was no reason for Kast to believe tOW would not provide licensed photos in 2010.

The panel held that Kast was contributorily liable, but it did not state exactly what Kast did that led them to that conclusion. The panel also said "neither the record nor the trial transcript reveals whether Kast directed Only Websites to include the photos or whether Only Websites did so unilaterally". Kast contends that OW included the placeholder photos in his development website unilaterally to speed development. Kast told OW on January 31, 2011 why the photos OW proposed were inappropriate for Atherton Trust's (AT) use on its development website, that the photos needed to "be more casual" like those on Wells Fargo's (WF) website. It showed that Kast didn't know OW had not licensed the photos.

The panel remanded the question of whether Kast was willful with actual knowledge, willfully blind or recklessness *in the record* to the California Northern District Court. Throughout its decision the panel provided guidance to the District Court about what its decision should be.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Based on the law and the evidence, Kast was not willful however, Kast may have been negligent. Despite the record and the panel's guidance that Kast was merely negligent, the District Court subjectively decided Kast was reckless based on inference, not evidence in the record, *the court did not find Kast had actual knowledge or was willfully blind.* The district court upheld the jury's excessive $450,000 award.

   This motion for a new trial under FRCP 59 (a) or to amend under FRCP 59(e) is to correct errors of law and fact and to prevent a manifest injustice.

STANDARD OF REVIEW

MOTION FOR A NEW TRIAL JURY INSTRUCTION WAS PREJUDICIAL

   Rule 59 (a) does not specify the grounds on which a motion for a new trial may be granted; instead, it allows such a motion to be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The general grounds for a new trial are that the verdict is *against the weight of the evidence,* that the *damages are excessive*, or that the trial was otherwise unfair, and that *substantial errors* occurred in the admission or rejection of evidence or the *giving or refusal of jury instructions*. See <u>Wei Zhang v. American Gem Seafoods, Inc</u>. 339 F.3d 1020 (2003).

MOTION TO AMEND THE JUDGEMENT

   This motion to amend under Rule 59 (e) is based on the Ninth Circuit case law that if such a motion is necessary to correct manifest errors of law *or fact* upon which the judgment rests; if such motion is *to prevent manifest injustice*; or if the amendment is justified by intervening change in controlling law. as well.

right to appeal should the court deny Kast's request for a stay, Kast has also filed a notice of appeal pending the court's decision on his Rule 59 motions regarding the remand.

ARGUMENT

## 1.  MOTION FOR A NEW TRIAL 59(a)

In Kast's case, a new trial should be ordered because the panel said the jury instructions were *likely prejudicial to Kast* when the jury found Kast to be willful. A new trial will also determine whether Kast was negligent or willful. A new trial will enable a more just amount of damages to be assessed if any. Kast's request for a new trial hits all of the basis for why a court will order a new trial.

Case law says the general grounds for a new trial are that the verdict is *against the weight of the evidence*, that the *damages are excessive*, or that the *trial was otherwise unfair*, and that substantial *errors occurred in the admission or rejection of evidence* or the *giving or refusal of jury instructions.* Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S. Ct. 189, 194, 85 L. Ed. 147 (1940). The court may grant a motion for a new trial upon a finding that erroneously admitted evidence undermines Kunzler's case. Kunzler v. Rubin, 2001 U.S. Dist. LEXIS 23142, *32-33, 2001 WL 34053243 to a degree putting the outcome in doubt; that evidence [*33] was admitted that was *unduly prejudicial* to the IRS Weisgram v. Marley Co., 528 U.S. 440, 120 S. Ct. 1011, 1020-21, 145 L. Ed. 2d 958 (2000). A new trial is necessary if the jury's verdict is the result of passion or *prejudice.* Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co., 219 F.3d 895, 905 (9th Cir. 2000).

Clearly Kast's case demands a new trial based on the prejudicial jury instructions, that the tangible evidence puts the court's willfulness decision in doubt and that the amount of the damages is excessive.

### 1B. A NEW TRIAL IS REQUIRED BECAUSE THE DAMAGES ARE EXCESSIVE

See damages argument 3A and 3B that follows on Page _____

## 2.  MOTION TO AMEND

The Ninth Circuit says a motion to amend under Rule 59(e) can be filed if amendment is necessary to correct manifest errors of law *or fact* upon which the judgment rests; if such motion

is *to prevent manifest injustice*; or if the amendment is justified by intervening change in controlling law. *Boaz v. Mutual Life Ins. Co. of New York* (C.C.A.8th, 1944) 146 F.(2d) 321 makes clear that the district court possesses the power to amend the verdict and damages.

## II. THE COURT'S DECISION IS BASED ON INCORRECT INFERENCE

The panel's remand asked the court to determine if Kast was willful based on what is factually in the record. The court erred by using inference to find evidence of recklessness and therefore willfulness where there was no tangible evidence of Kast's wrong doing.

## II A. SHOULD HAVE KNOWN IS NEGLIGENCE NOT WILFULNESS

When the court used inference to draw a conclusion it's actually saying, for Kast avoid breaking the law, Kast should have known that because the placeholder photos on his company's development website were the same photos as on the site being emulated, Kast should have known the photos on his website were not licensed by the developer, which makes him liable. That Kast should have known that because the photos were same on both sites that he should have demanded that OW provide proof in writing that they had licensed the photos or be found to be liable. That Kast had to have a written policy that required him to demand in writing from OW that the photos, text, navigation, design and functionality of his website didn't infringe on any other website at every stage of development or be found to be liable.  That his answering a questionnaire about his competition makes him liable under the copyright law. That Kast providing a hypertext link to OW makes him liable under the copyright law. That Kast believing the Only Websites (OW) contract he signed, that required Kast to license photos, but was not sufficiently clear to this court that OW had too also license photos, was an inducement to violate the law, which makes him liable under the copyright law. That the contract he willingly signed with OW was one sided, that OW didn't have to license photos, but Kast did makes him liable.

That Kast giving OW his opinion about what he liked and didn't like about the design, navigation, placement of text or photos on another website makes him liable under the copyright law. That saying he wanted his website to emulate another website, makes Kast liable under the copyright law. The worst part of the court's decision is that Kast should have known, that not knowing any of the above would make him liable for $450,000 when he wasn't the direct infringer. The court's decision sets a broad dangerous precedent, that should be reconsidered.

The court erred when it inferred throughout its decision that Kast should have known what he didn't know. The court saying Kast should have known means Kast had constructive knowledge which equates to simple negligence, which as the panel stated is not a legal standard for recklessness.

The court erred when it said by inference that Kast had constructive knowledge that OW didn't license the photos and that he intended to use the photos, which made him reckless and willful. However, based on the below excerpt from the panel Kast could not be willful or reckless if he should have known.

The panel said in its decision on pg 20, that a "should have known" instruction conveys the concept of "constructive knowledge." Black's Law Dictionary (10th ed. 2014) ("Constructive knowledge" is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person."). The problem for Erickson is that "constructive knowledge" is distinct from, and less culpable than, any of the mental states that support a finding of willfulness. Erickson cited extensively from non-binding, out-of-circuit, and district court authorities indicating that constructive knowledge can support a willfulness finding, but all are incompatible with our repeated requirement of actual knowledge, willful blindness, or recklessness. We have never held merely negligent conduct to be willful, and we decline to do so now.

As the panel went on to say, a "should have known" instruction does not fit within this framework because it is a negligence standard. To say that a defendant "should have known" of a risk, but did not know of it, is to say that he or she was "negligent" as to that risk. ,See Global-Tech Appliances, Inc. v. SEB 5.A.,563 U.S.754,770 (2011); see also BMG Rights Mgmt- (US) LCC v. Cox Commc'ns, lnc.,881 F.3d 293, 310 (4th Cir. 2018) ("The formulation 'should have known' reflects negligence"); Swinton v. Potomac Corp-,27A F Sd 794, 803 (9th Cir. 2001) (noting that "should have known" is a negligence standard); ("District court determination, notwithstanding jury verdict of willfulness, that defendant's infringement by publicly showing adult videos was not willful for lack of notice of plaintiff's rights in videos in question, is affirmed.") Video Views v. Studio 21, 925 F.2d 1010, Copy. L. Rep. (CCH) P26686, 17 U.S.P.Q.2d (BNA) 1753 (7th Cir. 1991), reh'g denied, 1991 U.S. App. LEXIS 6056 (7th Cir. Apr. 16, 1991), cert. denied, 502 U.S. 861, 112 S. Ct. 181, 116 L. Ed. 2d 143 (1991).

As the panel said, " the jury instruction was phrased in the disjunctive, that is, the jury was Asked whether Kast "knew" of, should have known of, or was reckless with regard to Only Websites' infringement. Thus, implicit in a finding under the "should have known" prong would be a conclusion that Kast did not, in fact, know of the risk or fact of infringement. See Global-TechAppliances,563 U.S. at 770 (explaining that a negligent defendant, by definition, does not know of a risk.

Negligence is a less culpable mental state than actual knowledge, willful blindness, or recklessness, the three mental states that properly support a finding of willfulness. See Global-Tech Appliances, 563 U.S. at 770; Unicolors, 853 F.3d at 992. "[A] willfully blind defendant is one who takes *deliberate* actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such

Defendant's Rule 59(a) & 59(e) Motion                    Case No. 4:13-cv-05472 DMR

wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not." <u>Global-Tech Appliances</u>,563 U.S. at 769-10 (citations omitted). Thus, Kast is correct that the judge permitted the jury to find willfulness on the basis of a lesser mental state than our cases demand. Kast may have acted negligently, but he certainly was not reckless. Therefore, this court having applied the *should have known* standard should amend its decision to reflect that Kast may have been merely negligent, not reckless."

## II B. KAST'S ACTIONS DEMONSTRATE HE WAS NOT RECKLESS

By Kast actions and his discussions with OW in January 2011 and then his licensing the photos he wanted to use on February 1, 2011, a full five months before Erickson's cease & desist, Kast showed his mental state (intent) was not to violate any laws.

Kast showed he was "reasonable in holding such a belief" that he was acting in compliance with the law and his mental state was that he was in compliance with the law. In this case, Kast proved by his immediately asking OW to delete Erickson's temporary placeholder photos, that he did not ignore Erickson's copyrights, when he had actual knowledge of Erickson's copyrights. <u>Peer Int'l Corp. v. Pausa Records, Inc.,</u> 909 F.2d 1332, 1336 (holding that defendant who ignored revocation of its license to copyrighted work, and continued to use work after revocation, willfully infringed that work) this case is contrasted by Kast being proactive in asking OW to remove Erickson's photos from the development website and believing that he had not infringed on Erickson's photos; *see* also <u>Evergreen Safety Council v. RSA Network Inc.,</u> 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.") Kast didn't use the photos and

nothing Kast or OW did prior to the cease & desist gave Kast a reason to believe that OW infringed on Erickson's copyrights, Kast's actions did not rise to the level in the Evergreen case where NO willfulness was determined even after the defendant was notified; *see also VHT, Inc. v. Zillow Grp.,* 918 F.3d 723,748 (9th Cir. 2019) (same). Prior to receiving Erickson's C & D and thereafter, Kast reasonably believed he was not infringing on Erickson's copyrights that is why he has fought so hard and sacrificed so much to prove his innocence over the last nine years.

## II C. WHY THE JUDGMENT REQUIRES REVERSAL

The panel said "the erroneous willfulness jury instruction was likely prejudicial to Kast, so remand is required. See Chuman,76F.3d at 294 and the panel's decision. The panel also said, while the evidence may have established that Kast was negligent, *it is not clear by a preponderance of the actual evidence in the record* that this court established recklessness, willful blindness, or actual knowledge. Thus, Kast's conduct was not sufficiently egregious to justify the severe $450,000 punitive sanction imposed against him. It is a manifest injustice for the court to find Kast was reckless and willful based on constructive knowledge or that he had actual knowledge of OW's infringement.  Kast presented evidence that he did not know Only Websites was or might be infringing. Kast's contract with Only Websites suggests that Kast *reasonably* believed it was Only Websites' responsibility to obtain licenses for Erickson's photos. See VHT,9I8 F.3d at748 ("[C]ontinued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." (citing Evergreen Safety Council v. RSA Network Inc.,697 F.3d l22l ,1228 (9th Cir. 2012)). Several of Kast's other actions also suggest that he was not reckless with respect to Erickson's rights: he obtained licenses for the photos that he supplied to Only Websites, and promptly removed the infringing photos when Erickson asked. If the jury had been properly instructed, it might well have refused to find Kast

Defendant's Rule 59(a) & 59(e) Motion    Case No. 4:13-cv-05472 DMR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

willful on this record. A "knew or had reason to know" instruction could be satisfied by a negligence finding via its second prong, so the contributory infringement finding does not necessarily mean the jury would have found that Kast was actually aware of, or willfully blind or reckless with respect to, Only Websites' infringement."

The district court failed to prove or show in the record that Kast received any financial benefit by being reckless, common sense says why would Kast act recklessly if there was nothing to be gained, no money, no visitors, no contracts, nothing, obviously he would not. It is a manifest injustice to use inference to establish constructive knowledge against a defendant with an allegation of willfulness. Willfulness is the most severe and extreme statutory damage in copyright law, before being assessed it demands tangible evidence that the defendant broke the law, subjective inference is inadequate to support a preponderance of the evidence to find willfulness.

It is a manifest injustice to find Kast was reckless when he had no control over OW, its employees, its computers, its software or its network connections TR203:15-17. It is a manifest injustice for a contributory infringer to be financially penalized a greater amount of money than the direct infringer, Only Websites (OW) was assessed statutory damages of $11,250 by SDNY. The Ninth Circuit referred to the OW SDNY case on Page 6 footnote 2 of its decision and the district court also referenced the SDNY decision, so the court was aware of the damages assessed against OW and should have reduced Kast's damages to less than the amount OW was penalized. It is a manifest injustice for the jury and this court to impose the $450,000 statutory damages based on Kast's behavior and state of mind, when the jury and all courts agree he was not the direct infringer. It is a manifest injustice not to apply the same legal standard, whether the underlying liability rests on a vicarious liability willfulness theory or a contributory liability willfulness theory. It is a manifest injustice under the case law decided by the Supreme Court to impose the $450,000 statutory damages on Kast, when Erickson's license fee was $300, which equates to over 1500 times the license fee. It is a manifest injustice to a contributory infringer to

award statutory damages in excess of 18 times the amount assessed against the direct infringer.
Kast raised the argument that the $450,000 in statutory damages were excessive under case law
in his opening appeal opening brief, rather than through a Rule 50 motion to preserve his
argument that the $450,000 statutory damage award was unconstitutional. It is a manifest
injustice to impose a statutory damage award of $450,000 when Erickson didn't produce one
document to support what he claimed were his license fees. It is a manifest injustice to impose
$450,000 statutory damages on Kast, when the panel said its "*likely the jury instruction was
prejudicial to Kast".* Supporting Kast's arguments against the $450,000 punitive damages, the
9th circuit said "*Kast's actions may not have risen to the level of willfulness".* It is a manifest
injustice to impose the maxim fine on Kast when the court found Kast was reckless, which is the
lowest possible bar to support a finding of willfulness.  It is a manifest injustice to fine Kast
$450,000 when there is no evidence that Kast was "actually aware" that Only Websites had not
paid Erickson a license fee when they downloaded the photos onto their servers. It is a manifest
injustice to fine Kast the maximum penalty when Kast was not willfully blind to OWs
infringement. It is a manifest injustice to apply the low preponderance of evidence standard to
arrive at the maximum punitive damages under willfulness. It is a manifest injustice for a jury or
court to find that Kast was a direct, vicarious or contributory infringer without stating
specifically what Kast did to violate the law. It is a manifest injustice to find Kast was willfully
reckless when the court did not find Kast had actual knowledge or was willfully blind to OW's
direct infringement.

   Willfulness is so extreme a penalty that it demands more than the subjectivity of inference to
support constructive knowledge, to find recklessness it should require factual and tangible proof
that a defendant had actual knowledge, acted recklessly or engaged in willful blindness to be
established on the record.

   In a case decided in 2021 in California Northern District, Atari Interactive,
Inc. v. Redbubble, Inc., No. 4:18-cv-03451 the court said Atari fails to establish either
knowledge or willful blindness to infringement of Atari's copyrights. *Nor did Redbubble act with*

Defendant's Rule 59(a) & 59(e) Motion                                    Case No. 4:13-cv-05472 DMR

1   *reckless disregard, since it promptly removed infringing listings and began to police for Atari's*

2   *content.* Kast did the same thing as Redbubble, he promptly removed Erickson's photos and

3   policed OW to assure only the photos he licensed were on the development and final published

4   AT website therefore, Kast like Redbubble was not reckless.

5                    II D. THE COURT'S DECISION REQUIRES AMENDMENT

6       The District Court did not find that Kast had actual awareness or actual knowledge of Only

7    Websites' infringement.  The District Court did not find that Kast was willfully blind. The

8   district court found Kast to be reckless.

9

10      The district court erred when drew repeated inferences that Kast was reckless because he was

11  aware of what content was on the WF website. The court saying that Kast was familiar with the

12  WF site is not proof that when he saw the same photos on the AT development site that he knew

13  or should have known to ask OW for proof they licensed the photos. Why would Kast think a

14  professional website developer would not license the photos they put, even temporarily, on a

15  client's development website, he wouldn't and didn't.

16      There is no tangible evidence in the record that Kast was reckless. The court repeatedly cited

17  <u>Unicolors Inc. v.Urban Outfitters Inc.</u> 853 F 3rd 980-Court of Appeals 9th Circuit 2017  to support

18  its reckless decision, but there are striking differences between these two cases Urban Outfitters

19  is a direct infringer, Kast is not. Urban Outfitters is a multi-hundred million dollar global

20  corporation with a long history of sourcing fabrics and producing products which is its core

21  business. By contrast, Kast's Atherton Trust was a bootstrapped startup financial services

22  company that never had any revenue. It's not like Atherton Trust was a company selling photos

23  and not trying to find out if the photos were copyrighted. Urban Outfitter's has control over its

24  employees, creative designs, facilities, computers, software and networks, Kast had no control

25  over OWs employees, facilities, computers, software or networks. Urban Outfitters should have

26  the necessary checks and balances to assure they operate within the law and did not violate

27  anyone's copyrights. Lacking expertise and technical abilities an individual like Kast must hire a

28

vendor whose core business is building websites to accomplish the task. It's reasonable for Kast to trust that the subject matter experts in a vendor's operations know what is legal and illegal. The court said "Kast had no policy to even investigate or attempt to determine whether particular photos are subject to copyright". The court is saying Kast, and most small business people, should have known that they needed a written policy to explain and guide them to what a vendor should or should not do when building a small startup business' website to avoid being sued for recklessness, that is an unreasonable expectation. The court says Kast should have known there was a "substantial and unjustified risk" that OW copied the photos from Wells Fargo's website, how would Kast know that? As the panel said, there is nothing in evidence who copied the photos or where they came from, whether from Erickson or Wells Fargo's website or another Internet location and who copied the photos. At the time Kast hired OW he had no knowledge they had ever violated a copyright law before. No one, Kast included, would think that a vendor with whom they had done business before, would intentionally violate their own contract, the same contract that Kast had signed years before without incident, and put themselves and their customers in legal jeopardy?  The court should amend its judgment to find Kast was negligent, not reckless or willful.

### III.    KAST'S STATE OF MIND

 Kast's state of mind was to finish a website so he could offer his services to protect the health and wellbeing of disabled and elderly people (which never materialized due to this predatory lawsuit). If the lower standard of "good faith knowledge" doesn't apply then the preponderance of the evidence standard can't apply here either. There is nothing in the record that Kast's state of mind was to do anything illegal, including not paying a license fee for photos or to ignore Erickson's cease & desist or to believe OW would violate its own contract.

### IV.    WHY THE AMOUNT OF THE JUDGMENT IS EXCESSIVE
### AND MANIFESTLY UNJUST

Erickson stated the license fee for a developer (like OW) was $100 per photo TR121:12-20.

Cases dating back decades support reduced damages whether the court finds recklessness or simple negligence. As applied to this case: "a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not." *Global-Tech Appliances*, 563 U.S. at 769-70 (citations omitted) ( "for copying and selling plaintiff's images to internet subscribers, court awards statutory damages of $1000 per image"); ("lack of willfulness of infringement results in award of statutory minimum damages of $250 per infringement.") USAchem, Inc. v. Sands, 185 U.S.P.Q. (BNA) 387, 1975 U.S. Dist. LEXIS 13983 (D.N.M. Feb.5, 1975); Playboy Enters. v. Webbworld Inc., 991 F. Supp. 543, 45 U.S.P.Q.2d (BNA) 1641 (N.D. Tex. 1997), aff'd, 168 F.3d 486 (5th Cir. 1999)); BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996) that limited damages to 10 to 1 and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 427-29 (2003) (striking down a $145 million award because it was excessive in relation to actual damages) and others.

 As the panel said in its decision, the question of "actual knowledge" v. "should have known" is unresolved in multiple courts although, *the Ninth Circuit has generally required actual knowledge.* panel pg 14-17. There is nothing in the record that Kast had any *actual knowledge* that OW had not paid Erickson a license fee. In fact, this court did not find Kast had actual knowledge. Further, there is nothing in the record that Kast took any deliberate actions to avoid knowing that OW didn't pay a license fee for Erickson's photos, which is why this court did not find willful blindness. Add to that Kast was not aware a license fee was required for a development non-public website, was not aware who owned the photos and was not aware of where OW had gotten the photos Kast can't be reckless. But, the court erroneously found Kast was reckless even though Kast licensed the photos he wanted and as soon as he got the cease & desist he had the offending photos removed, those are hardly the acts of a person who acted recklessly. The only reasonable conclusion is that Kast was negligent, but he was not reckless.

1

### V. DAMAGES REQUIRE REDUCTION

2

The Supreme Court long ago declared that damages awarded pursuant to a statute violate due

3

process only if they are "so severe and oppressive as to be wholly disproportioned to the offense

4

and obviously unreasonable " *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67, 40 S. Ct.

5

71, 64 L. Ed. 139 (1919). see also Capitol Records, Inc. v Thomas-Rasset, 692 F 3d

6

899,907,2012 U.S. App.

7

In addition, the district court did not address any of the damages arguments raised by Kast in

8

his opening brief, most importantly whether the $450,000 in statutory damages is constitutional

9

under the Eighth and the Fifth Amendments which it is not, and whether case law supports the

10

maximum, which it does not or whether the court has the right by law to reduce the amount of

11

damages, which it does using a remittitur. The appropriate amount of damages for simple

12

negligence using a remittitur would be $750 per photo, which is 7.5 times Erickson's actual

13

license fee for a developer which is within the range the Supreme Court said was appropriate in

14

BMW of North America, Inc. v Gore 517 US 559, 116 S. Ct 1589, 134 L. 2nd 809-Supreme

15

Court, 1996 which was a damages award greater than ten times the actual loss is excessive.

16

In this case, the district court accepted Erickson's employee's statement that Erickson charged

17

from $3,450 up to $14,500 to license each photo even though Erickson didn't produce any

18

business records to prove those prices or that anyone ever paid that amount. Erickson's

19

employee, Hughes, also testified that for a developer's license Erickson charged $100 each

20

TR_121:12-20. As OW is a developer and the photos were only to be used temporarily as

21

placeholders during development and they were on a development website created by a

22

developer, the appropriate amount of damages should be based upon $100 per photo. The court's

23

$450,000 statutory damages award is excessive and unconstitutional under the Eighth

24

Amendment because it is an excessive fine and cruel and unusual punishment inflicted on Kast

25

26

27

28

and it is excessive based on the Due Process section of the Fifth Amendment as well as the case law referenced above. As Kast was merely negligent the amount of the damages should be reduced to an amount less than the $11,250 assessed against the direct infringer, Only websites.

CONCLUSION

The Court should amend it's finding of willfulness to find Kast was simply negligent in the interest of being fair and just and reduce the amount of the award to $2250 which reflects Kast's true lesser level of contribution to Only Website's infringement or alternatively to order a new trial where non-prejudicial jury instructions and the facts can be presented to determine if Kast was willful.

Dated: March 11, 2021                                   /s/ Kraig R. Kast
                                                        Defendant & Appellant Pro Se

CASE NO. 4:13-cv-05472

IN THE UN ITED STATES DISTRICT FOR NORTHERN CALIFORNIA

OAKLAND

DEFENDANT'S MOTION UNDR FRCP 59 (a) and 59( e)

EXHIBIT 1

ATHERTON TRUST and KAST CONTRACT WITH ONLY WEBSITES



# Step 4: Review & Sign

Please review the details below for accuracy. If the information is accurate please agree by checking the box at the bottom of the page and click Accept Agreement.

## Customer Details

| | |
|---|---|
| Company/ Firm Name: | Atherton Trust |
| Email/ Login: | kraig.kast@athertontrust.com |
| Name: | Kraig Kast |
| Address: | 177 Bovet Road, 6th Floor |
| City/ State/ Zip: | San Mateo, CA 94402 |

## Package Review

**Package**
*None - Ask about options*

**SEO**
*None - Ask about options*

**Add Ons**
*Renewal/Custom price charge*

**Update Packages**
*None - Ask about options*

## Package Overview

**Package**
*None selected - Ask about our options*

**SEO**
*None selected - Ask about our options*

**Add Ons**
*Renewal/Custom price charge - Custom*

**Update Packages**
*None selected - Ask about our options*

### Invoice

| Item | Quantity | Rate | Total |
|---|---|---|---|
| Renewal/Custom price charge | 1 @ | $1,497.00 | $1,497.00 |
| Grand Total: $1,497.00 | Due: $1,497.00 (100% down) | | |

### Legal Agreement

**LEGAL AGREEMENT**

This agreement ("Contract") is a legally binding document between Only Websites, Inc. ("Provider") and all of our customers. Acceptance of and/or use of our services constitutes your agreement to be bound by

the terms of this Contract. Furthermore, if you are the recipient of any service provided by our companies, you are legally bound by the Contract upon execution hereof. Read the Contract carefully before signing to ensure that you understand and agree to all provisions below.

**QUESTIONS**

If you have questions or concerns regarding the Contract please discuss it with our customer service department at service@onlywebsites.com or service@lawfirmsites.com depending on which company is providing your services.

**SERVICE AGREEMENT**

This contract is made and becomes effective on the date of execution, by and between you ("Client") and Provider. The Contract is for a 12-month period and can be renewed every 12 months after that point. Client will be renewed for the same package as previously contracted for, unless Provider is notified otherwise prior to the payment of the renewal fee.

Provider agrees to supply Client the services agreed upon between Provider and Client as detailed in the customer invoice. Client's invoices are incorporated into the Contract by this reference.

Client represents and warrants that (i) Client is at least eighteen (18) years of age, (ii) Client possesses the legal right and ability to enter into this Contract, and (iii) the performance of Client's obligations and use of the Services by Client, its customers and users, will not violate any applicable laws, regulations or the rules and regulations or cause a breach of any Contract with any third parties or unreasonably interfere with other Clients' use of Services. Client assumes all risks related to processing of transactions related to electronic commerce. Client agrees to give Provider accurate, complete and updated information required by the registration of the Provider service (Client Registration Data), including Client's legal name, address, telephone number(s), and applicable payment data (e.g., credit card number and expiration date). Client agrees to notify Provider within thirty (30) days of any changes in Client's Registration Data.

Client agrees to provide content and other material by agreed upon deadlines set forth in writing before Client's website begins, as well as throughout the development process. Client recognizes he or she will

be asked to sign off on work completed and approved, including the design, development and finalization of the website.

With this, client consents that the remaining balance due to the Provider will be automatically processed 30 days from the signing of this contract. Once the process of developing the Client's website has begun no refund of the initial payment will occur. If a delay on the part of the client during the development process sets back the 30- day completion schedule, client agrees final payment will still be processed.

Hosting of the website is preferred to be on Provider's servers for daily backup and security purposes. It is not a requirement. If Client currently has a pre-paid hosting plan, Provider will make every effort to accommodate by offering to match current hosting prices. A complimentary year of hosting and updates will be available for a period of 12 months from the day the final invoice is due, or 30 days from the signing of this contract. This excludes any client contracted for our template-based website service.

Client agrees after approval of the finalized site, they will receive an hour of updates and support per month. If additional time is needed, a $89 per hour charge may apply. This charge is situational and will be discussed upon receipt of each update. All monthly charges, including marketing, begin 30 days after contract signature. The 1 hour of updates per month are not included in the $499 website package.

Client is responsible for obtaining copyright releases and licenses on all photographs it sends to Provider. Limit of 2 photographs provided by Provider for every page except the home page.

CONTINUED USE OF THE SERVICES AND/OR PRODUCTS CONSTITUTES AGREEMENT WITH THIS CONTRACT IN ITS ENTIRETY. BY USING THE SERVICES, CLIENT AGREES TO BE BOUND BY ALL TERMS ASSOCIATED WITH SAID SERVICES DETAILED IN THIS CONTRACT.

If a marketing or search engine optimization package has been agreed to in this contract, Client agrees to pay monthly for 12 months starting 30 days after contract is signed. There are no refunds for search engine optimization payments as services have already been provided when payment is made.

Cancellation Policy - If client wishes to cancel it must contain a signature and be in a written form by either fax or letter after the 12

month agreement has expired. 30 days prior notice is required for all cancellations.

I agree that if I have any problems or questions regarding my services that I will contact Provider for assistance, and I agree that I will not dispute any charge from Provider unless I have already attempted to rectify the situation directly with Provider. In the event of any dispute regarding this agreement, the parties agree that the laws of the state of Utah shall govern. In any dispute requiring a mediator, arbitrator or the courts, the prevailing party is entitled to an award of its reasonable attorneys fees, costs and expenses.

Enter your name: _____
Kraig Kast
Dec 13, 2010
*Authorized Representative*
Please type your initials into the box below to indicate acceptance of the contract.

☐ (Required Field)

By putting your initials here, you are accepting the terms and conditions of the contract and understand that you are signing this contract electronically.

Thank you! We appreciate your business!

CASE NO. 4:13-cv-05472

IN THE UN ITED STATES DISTRICT FOR NORTHERN CALIFORNIA

OAKLAND

DEFENDANT'S MOTION UNDR FRCP 59 (a) and 59( e)

EXHIBIT 2

ONLY WEBSITES JUDGEMENT DAMAGES

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ERICKSON PRODUCTIONS, INC. and
JIM ERICKSON

                                    Plaintiffs,

                    -against-

ONLY WEBSITES, INC.

                                    Defendant.

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2016

## 12 CIVIL 1693 (PGG) (KNF)

## DEFAULT JUDGMENT

Whereas on September 2, 2015, the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, having issued a Report and Recommendation ("R&R") recommending that this Court award Plaintiffs $11,250.00 in damages, $350.00 in costs, and $45,152.00 in attorneys' fees; Plaintiffs filed objections to the R&R, arguing that (1) the damages award is inadequate; (2) the across-the-board cut in attorneys' fees recommended by Judge Fox is unwarranted; and (3) Judge Fox inadvertently miscalculated the attorneys' fees reduction by applying 60% reduction instead of 40% reduction he recommended, and the matter having come before the Honorable Paul G. Gardephe, United States District Judge, and the Court, on March 31, 2016, having rendered its Order adopting Judge Fox's September 2, 2015the R&R, but modifies the portion fo the R&R calculating attorneys' fees to reflect a 40% reduction, revising the attorneys' fee award to properly calculate a 40% across-the-board reduction, amount to $67,728.00, and directing the Clerk of the Court to enter judgment in favor of Plaintiffs as against Only Websites in the amount of $79,328.00 plus post-judgment interest to be calculated by the Clerk of the Court, and to close this case, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Order dated March 31, 2016, Judge Fox's September 2, 2015 Report and Recommendation is adopted by the Court ; the attorneys' fee award is revised to properly calculate a 40% across-the-

board reduction, amounting to $67,728.00; and judgment is hereby entered in favor of Plaintiffs as

against Only Websites in the amount of $79,328.00 plus post judgment interest pursuant to 28

U.S.C. 1961.

**Dated:**  New York, New York
March 31, 2016

RUBY J. KRAJICK

Clerk of Court

BY:

Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON